## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE CHEROKEE NATION,<br>a federally-recognized Indian tribe,<br>THE CHICKASAW NATION, a<br>federally-recognized Indian tribe, and<br>THE CHOCTAW NATION,<br>a federally-recognized Indian tribe, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. CIV-19-1198-D |
| THE CITIZEN POTAWATOMI NATION,<br>a federally-recognized Indian tribe, and<br>THE MUSCOGEE (CREEK) NATION,<br>a federally-recognized Indian tribe, | ) ) ) ) ) | |
| Plaintiffs-in-Intervention, | ) ) | |
| v. | ) ) | |
| J. Kevin Stitt, in his official capacity as the<br>Governor of the State of Oklahoma, | ) ) ) | |
| Defendant. | ) ) | |

## PLAINTIFFS THE CHEROKEE NATION, CHICKSAW NATION, AND CHOCTAW NATION'S ANSWER TO DEFENDANT'S COUNTERCLAIMS

Plaintiffs the Cherokee Nation, Chickasaw Nation, and Choctaw Nation ("the Tribes") hereby answer as follows the Defendant's counterclaims, ECF No. 15 at 21-39:

All allegations of the Defendant's counterclaims, whether express or implied, or contained in numbered paragraphs or other text, footnotes, or headings, are denied, except to the extent such allegations are specifically admitted in this Answer.

1.      The first sentence of paragraph 1 is the Defendant's description of the relief he purports to seek by counterclaiming against the Tribes, to which no response is required.

To the extent a response is required, the Tribes admit that the Defendant is J. Kevin Stitt, in his official capacity as Governor of the State of Oklahoma, and that the Defendant has alleged a counterclaim against the Tribes; the Tribes deny that the Defendant has alleged multiple counterclaims against the Tribes; the Tribes deny that the State of Oklahoma ("State") is the real party in interest in this action and that Defendant has brought his counterclaims "*ex rel.* State of Oklahoma;" and to the extent this paragraph alleges that the Defendant is entitled to the relief he seeks, the Tribes deny that is so.  The Tribes admit that the second sentence and footnote 4 contain Defendant's description of and quotations from the text of the Indian Gaming Regulatory Act, but deny that the description and quotations are complete or comprehensive.

2.     Answering the first sentence of paragraph 2:  the Tribes admit that the *Gaming Compacts* (the "Compacts") are between the State and each of the Tribes individually, and that the Compacts cover the conduct of Class III gaming activities, including electronic gaming, but not pari-mutuel wagering; the Tribes deny that the Compacts expired on January 1, 2020; the Tribes deny the assertion in footnote 5 that the Gaming Compacts are expired.  The Tribes deny the second sentence of paragraph 2 of the Counterclaim.  Answering the third sentence of paragraph 2:  the Tribes admit that they are parties to Off-Track Wagering Compacts ("OTWCs") with the State that are in effect; the Tribes deny that the OTWCs are the only Tribal-State gaming compacts in effect between the State and the Tribes; the Tribes deny that the OTWCs regulate any activities not specifically referenced in the OTWCs; and the Tribes deny any implication that their

Compacts are not presently in effect and do not presently authorize Class III gaming, including electronic gaming. The Tribes deny the fourth sentence of paragraph 2.

3.      The Tribes deny that the State is seeking a judicial declaration or any other relief on Defendant's alternative counterclaim, deny that paragraph 3 describes the relief that the Defendant purports to seek on his alternative counterclaim, deny that Part 15.B. of the Compact "requires good faith renegotiation of certain compact terms within 180 days of the expiration or any renewal of the Gaming Compacts," and deny that the Defendant is entitled to the injunctive relief he purports to seek on his alternative counterclaim.

4.      The paragraphs of the counterclaim incorporated by reference in paragraph 4 are admitted or denied to the extent described in the general denial and paragraphs 1-3 of this Answer.

5.      The Tribes deny the first two sentences of paragraph 5, and specifically deny that the State is the real party in interest and has ratified and/or joined this civil action and Defendant's counterclaims pursuant to Fed. R. Civ. P. 17(a)(3). Answering the third sentence of paragraph 5, the Tribes admit that the State of Oklahoma is a state of the United States and possesses certain sovereign authority, but deny that the State possesses sovereign authority over Indians and Indian tribes in Indian country and deny that it possesses unspecified "federally-recognized and delegated authorities under IGRA." Answering the fourth sentence of paragraph 5, the Tribes deny that any interest Oklahoma may have in the subjects described in this sentence is relevant to the resolution of the Defendant's counterclaims, and otherwise lack sufficient knowledge or information to

form a belief about the truth of the allegation made in the fourth sentence because it contains no facts, and therefore deny the fourth sentence.

6.     Answering the first sentence of paragraph 6, the Tribes admit that the Defendant is the Governor of the State of Oklahoma, was duly elected in 2018, and brings his counterclaim in his official capacity, but deny that he does so "*ex rel.* State of Oklahoma." The Tribes deny the second sentence of paragraph 6.

7.     Paragraph 7 is admitted.

8.     Paragraph 8 is admitted.

9.     Paragraph 9 is admitted.

10.     The Tribes admit the first sentence of paragraph 10, except that they deny any implication that the Compacts are not presently in effect. Except to the extent that the second sentence of paragraph 10 alleges that the Compacts were in effect on December 31, 2019 and are presently in effect, and that footnote 6 quotes the decision in *Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (2014), the Tribes deny the second sentence, including the allegation that 25 U.S.C. § 2710(d)(3)(A) contains the quoted language and that the quoted language provides jurisdiction over the Defendant's counterclaims, and deny footnote 6.

11.     In response to paragraph 11 and footnote 7, the Tribes deny that the Defendant's counterclaims arise under federal law, and deny that jurisdiction over the Defendant's counterclaims is proper under 28 U.S.C. § 1362 because the Tribes "have been recognized by the Secretary of the Interior."

12.     The Tribes lack sufficient knowledge or information to form a belief about the truth of the allegations made in paragraph 12 because it contains a bare conclusion of law, uninformed by allegations of fact, and therefore deny paragraph 12.

13.     The paragraphs of the counterclaims incorporated by reference in paragraph 13 are denied or admitted to the extent described in the general denial and paragraphs 1-12 of this Answer.

14.     Answering the first sentence of paragraph 14, the Tribes admit that the Chickasaw Nation-Oklahoma OTWC referenced therein was entered into in 2000 and admit that pari-mutuel betting on horse races is a Class III gaming activity.  In further response to the first sentence, the Tribes deny that paragraph 14 accurately describes the off-track wagering activities authorized by the 2000 Chickasaw Nation-Oklahoma OTWC and deny that the OTWCs entered into with the Tribes regulate any activities not specifically referenced in the OTWCs.  The Tribes deny the second sentence of paragraph 14 to the extent it refers to the Chickasaw Nation-Oklahoma OTWC entered into in 2000.

15.     Answering the first sentence of paragraph 15, the Tribes admit that the Choctaw Nation-Oklahoma OTWC was entered into in 2001 and admit that pari-mutuel betting on horse races is a Class III gaming activity.  In further response to the first sentence, the Tribes deny that paragraph 15 accurately describes the off-track wagering activities authorized by the Choctaw Nation-Oklahoma OTWC and deny that the OTWCs entered into with the Tribes regulate any activities not specifically referenced in the OTWCs.  The Tribes admit the second sentence of paragraph 15.

16.     Answering the first sentence of paragraph 16, the Tribes admit that the Cherokee Nation-Oklahoma Off-Track Wagering Compact was entered into in 2010 and admit that pari-mutuel betting on horse races is a Class III gaming activity.  In further response to the first sentence, the Tribes deny that paragraph 16 accurately describes the off-track wagering activities authorized by the Cherokee Nation-Oklahoma OTWC and deny that the OTWCs entered into with the Tribes regulate any activities not specifically referenced in the OTWCs.  The Tribes admit the second sentence of paragraph 16.

17.     Answering paragraph 17, the Tribes admit that the Cherokee Nation and Choctaw Nation OTWCs are in effect, as is the Chickasaw Nation-Oklahoma OTWC entered into in 2003, deny that the 2000 Chickasaw Nation-Oklahoma OTWC referenced in paragraph 14 of the counterclaims is in effect, deny that paragraph 17 accurately describes the off-track wagering activities authorized by the OTWCs, and deny that the OTWCs regulate any activities not specifically referenced in the OTWCs.

18.     The Tribes admit that Brad Henry was the Governor of the State in 2003, and was involved, along with other state leaders, in the development of the State Tribal Gaming Act ("STGA"), including the model tribal gaming compact ("Model Compact"), but otherwise deny paragraph 18.  Any implication that only "nontribal racetracks" may be authorized to conduct electronic gaming by the State is denied.

19.     The Tribes deny any implication made in paragraph 19 that they conduct Class III gaming under the Model Compact, which was simply an offer to the Tribes, which if accepted would constitute a gaming compact between the tribe and the state for purposes of IGRA.  The Tribes deny that under the Model Compact and the Compact as signed by

the Tribes, certain Class III or "covered games" are defined as alleged in paragraph 19.

Part 3.5. of the Model Compact and the Compact as signed by the Tribes defines "covered

games" as

> An electronic bonanza-style bingo game, an electronic amusement game, an
> electronic instant bingo game, nonhouse-banked card games; any other
> game, if the operation of such game by a tribe would require a compact and
> if such game has been: (i) approved by the Oklahoma Horse Racing
> Commission for use by an organization licensee, (ii) approved by state
> legislation for use by any person or entity, or (iii) approved by amendment
> of the State-Tribal Gaming Act; and upon election by the tribe by written
> supplement to this Compact, any Class II game in use by the tribe, provided
> that no exclusivity payments shall be required for the operation of such Class
> II game . . . .

The Tribes admit footnote 8.

20.     Answering the first sentence of paragraph 20, the Tribes state that the Model

Compact was simply an offer of a gaming compact, which if accepted would constitute a

gaming compact between the tribe and the state for purposes of IGRA, and that the Tribes'

rights to conduct the covered games, and to benefit from the limitations imposed on the

conduct of those games by organizational licensees and others, are held under their

Compacts and pursuant to federal law. *See* 25 U.S.C. § 2710(d)(2)(C).  Furthermore, the

State bound itself to the limitations imposed on the conduct of gaming by organizational

licensees and others by entering into the Compact and by enacting the limitations set forth

in the STGA.  The Tribes deny the first sentence to the extent that it alleges otherwise.

Answering the second sentence of paragraph 20, the Tribes deny that they were provided

"substantial exclusivity" under the Model Compact as that "substantial exclusivity" is

provided to the Tribes under the Compacts and pursuant to the STGA.  The Tribes admit

that under the Compact they agreed to pay fees to the State as provided under Part 11.A.

of the Compact, "so long as the state does not change its laws after the effective date of

this Compact to permit the operation of any additional form of gaming by any such

organization licensee."  The Tribes admit footnote 9, but only to the extent that it quotes

the state statutes referenced therein.

21.    The Tribes admit that the Model Compact was offered to the Tribes by the

State, admit that the Tribes' Compact provides that the Compact's initial term became

effective upon satisfaction of the requirements stated in Part 15.A. of the Compact, and

admit that the Compact further provides that its term automatically renews on January 1,

2020, if the condition set forth in Part 15.B. of the Compact is met.  The Tribes admit that

paragraph 21 quotes Part 15.B. of the Model Compact and Tribes' Compact.  The Tribes

otherwise deny paragraph 21.

22.    The Tribes deny the first sentence of paragraph 22 except to admit that it was

necessary for the State to provide "substantial exclusivity" to the signatory tribes in order

to obtain the approval of the Secretary of the Interior ("Secretary") for the payment of fees

to the State by the Tribes under the Tribes' Compacts.  Answering the second sentence of

paragraph 22, the Tribes admit that the State agrees in Part 11.E. of the Model Compact

and Tribes' Compact not to "permit the nontribal operation of any machines or devices to

play covered games or electronic or mechanical gaming devices otherwise presently

prohibited by law within the state in excess of the number and outside of the designated

locations authorized by the State-Tribal Gaming Act," and that if the State breaches that

commitment, it must pay liquidated damages to the Tribes.  The Tribes otherwise deny the

8

second sentence of paragraph 22, including any implication that the Compact is no longer in effect.

23.     Answering the first and second sentences of paragraph 23, the Tribes admit the Model Compact was enacted into state law in the STGA but deny that this was done after the provisions of the Model Compact "were fully negotiated," and deny any implication that they conduct Class III gaming under the Model Compact, which was simply an offer to the Tribes, which if accepted would constitute a gaming compact between the tribe and the state for purposes of IGRA.  The Tribes deny that the definition of "Compact" cited in paragraph 23 is found in Part 3.5. of the Tribes' Compacts or the Model Compact.  Answering the third sentence of paragraph 23, the Tribes admit that the STGA permits Class III gaming to be conducted by Indian tribes if they accept the State's offer as set forth in the Model Compact and the Compact is approved under IGRA and admit that the STGA permits the operation of a certain number of player terminals for the play of "authorized games" by organization licensees at racetrack locations in counties with certain populations, with the number of player terminals for the play of authorized games based on the population of the county in which the racetrack location operates  Okla. Stat. tit. 3A § 262(C)(1)-(2).  Answering the fourth sentence of paragraph 23, the Tribes admit that Okla. Stat. tit. 3A § 262(C) defines "authorized games" to include the games described in the fourth sentence, which are fully defined as:

> electronic amusement games as defined in this act, electronic bonanza-style bingo games as defined in this act and electronic instant bingo games as defined in this act, and any type of gaming machine or device that is specifically allowed by law and that an Indian tribe in this state is authorized to utilize pursuant to a compact entered into between the state and the tribe

in accordance with the provisions of the Indian Gaming Regulatory Act and any other machine or device that an Indian tribe in this state is lawfully permitted to operate pursuant to the Indian Gaming Regulatory Act.

The Tribes otherwise deny the second and third sentences of paragraph 23, including any implication that organization licensees must be "non-tribal" entities in order to operate "authorized games" at horse racetracks under the STGA.

24.     The Tribes admit that Okla. Stat. tit. 3A § 262(A) authorizes the Oklahoma Horse Racing Commission ("OHRC") to license organization licensees which meet the requirements of Okla. Stat. tit. 3A § 262(C) to engage in "authorized gaming," once four Indian tribes enter the Compact, those Compacts are approved by the Secretary, and notice of the Secretary's approval is published in the Federal Register.  The Tribes otherwise deny the first sentence of paragraph 24.  The Tribes admit the second sentence of paragraph 24.

25.     Paragraph 25 is admitted.

26.     Paragraph 26 is admitted.

27.     The first sentence of paragraph 27 is admitted.   Answering the second sentence of paragraph 27, the Tribes lack sufficient knowledge or information to form a belief about the truth of these allegations and therefore deny.

28.     The Tribes lack sufficient knowledge or information to form a belief about the truth of the allegation of paragraph 28 and therefore deny.

29.     The Tribes admit that on December 17, 2004, the Principal Deputy Assistant Secretary of the Interior-Indian Affairs ("AS-IA") sent a letter to Governor Kenneth Blanchard of the Absentee Shawnee Tribe of Oklahoma, announcing the Secretary had approved the Absentee Shawnee Compact, and, *inter alia*, concluding that the exchange of

fees for substantial exclusivity in gaming would confer an economic benefit on the tribe. The Tribes otherwise deny paragraph 29, including any implication that the Secretary interpreted or purported to interpret the meaning of Part 15.B. of the Compact in that letter.

30.     Paragraph 30 is admitted.

31.     The first sentence of paragraph 31 is admitted.  As to the second sentence of paragraph 31, the Tribes admit that on December 28, 2004, the AS-IA sent a letter to Chief Floyd Leonard of the Miami Tribe of Oklahoma, announcing the Secretary had approved the Miami Compact and, *inter alia*, concluding that the exchange of fees for substantial exclusivity in gaming would confer an economic benefit on the tribe.  The Tribes otherwise deny paragraph 31, including any implication that the Secretary interpreted or purported to interpret the meaning of Part 15.B. of the Compact in that letter.

32.     The first sentence of paragraph 32 is admitted.  As to the second sentence of paragraph 32, the Tribes admit that on December 28, 2004, the AS-IA sent a letter to Principal Chief Chad Smith of the Cherokee Nation, announcing the Secretary had approved the Cherokee Compact and, *inter alia*, concluding that the exchange of fees for substantial exclusivity in gaming would confer an economic benefit on the tribe.  The Tribes otherwise deny paragraph 32, including any implication that the Secretary interpreted or purported to interpret the meaning of Part 15.B. of the Compact in that letter.

33.     The Tribes admit that the Secretary published notice of the Absentee Shawnee, Comanche, Miami, and Cherokee Compacts in the Federal Register on January 27, 2005, and admit that this triggered the OHRC's authority under Okla. Stat. tit. 3A

§ 262(A) to issue organization licenses to organization licensees who meet the criteria of Okla. Stat. tit. 3A § 262(C).  Paragraph 33 is otherwise denied.

34.     The first sentence of paragraph 34 is admitted.  Answering the second sentence of paragraph 34, the Tribes admit that on January 12, 2005, the AS-IA sent a letter to Governor Bill Anoatubby of the Chickasaw Nation, announcing the Secretary had approved the Chickasaw Compact and, *inter alia*, concluding that the exchange of fees for substantial exclusivity in gaming would confer an economic benefit on the tribe.  The Tribes otherwise deny paragraph 34, including any implication that the Secretary interpreted or purported to interpret the meaning of Part 15.B. of the Compact in that letter.

35.     Paragraph 35 is admitted.

36.     Answering the allegations of the first three sentences of paragraph 36, the Tribes admit that on July 5, 2019, the Defendant sent the Tribes a letter containing the statements quoted in those sentences, but deny the description of those statements that appears in the first three sentences is full or accurate and deny any implication that the Defendant's statements about the meaning or legal effect of the Compact are correct.  The Tribes deny the fourth sentence of paragraph 36, including any implication that "governmental action" as described in Part 15.B. had not already occurred by July 5, 2019 and deny that the Defendant has any independent authority to determine whether the Compact would or has automatically renewed, which is determined under the plain language of Part 15.B. of the Compact.

37.     The Tribes admit that on July 8, 2019, the *Tulsa World* published an editorial, purportedly written by the Defendant and stating his belief that the Compacts would not

automatically renew on January 1, 2020, and containing the statements quoted in paragraph 37, but deny that the Compacts "were set to expire on January 1, 2020 . . . ." As to any allegation made in paragraph 37 about the Defendant's state of mind or intent, the Tribes lack sufficient knowledge or information to form a belief about the truth of such allegation and therefore deny it.

38.     The Tribes admit that on July 12, 2019, they and other tribes passed a resolution containing the statements quoted in paragraph 38, but deny that paragraph 38 fully and accurately describes that resolution.

39.     The Tribes admit that on August 13, 2019, the Defendant sent tribes, including the Tribes, a letter that included the statements quoted in the first and third sentences of paragraph 39, but deny that these statements fully and accurately describe that letter, and otherwise deny the first and third sentences.  Answering the second sentence of paragraph 39, the Tribes admit that the Defendant purported to designate the Oklahoma Attorney General to participate in negotiations on his behalf; the Tribes deny that the Oklahoma Attorney General participated in negotiations "on behalf of Oklahoma."  To the extent paragraph 39 alleges the Defendant's intent in sending the August 13, 2019 letter, alleges the Defendant's intent in purporting to designate the Oklahoma Attorney General to participate in negotiations and purporting to propose a goal for the negotiations in his August 13, 2019 letter, and alleges that the Oklahoma Attorney General was "temporarily designated" by the Defendant, the Tribes lack sufficient knowledge or information to form a belief about the truth of such allegations and therefore deny them.

40.     Answering the first sentence of paragraph 40, the Tribes deny that their position on the auto-renewal of the Compact, as set forth in the August 28, 2019 letter referenced in paragraph 40, "reiterated a flawed belief."  The Tribes admit that on August 28, 2019, they and other tribes issued a joint letter that includes the statements quoted in paragraph 40, but deny that paragraph 40 fully and accurately describes that letter.

41.     The Tribes admit that on September 3, 2019, they did not meet with the Oklahoma Attorney General or anyone else who purported to be the Defendant's designee.

42.     The Tribes admit that on September 19, 2019, the Oklahoma Attorney General sent the Tribes a letter containing the statements referenced or quoted in paragraph 42.  To the extent paragraph 42 alleges the Oklahoma Attorney General made statements in the letter at the Defendant's direction, or that he was acting on "on behalf" of the Defendant, the Tribes lack sufficient knowledge or information to form a belief about the truth of such allegations and therefore deny them.

43.     The Tribes admit that on October 2, 2019, they and other Tribes sent a letter to the Oklahoma Attorney General responding to his letter of September 19, 2019, noting that the September 19, 2019 letter "does not contain a substantive proposal, which we still await, that complies with Part 15 of the compact," and stating that

> [o]nce the State has committed to the automatic renewal of the compacts, the Tribes and State should take the opportunity through intergovernmental engagement to discuss matters of mutual interest.  The plain terms of our renewing gaming compacts provide the appropriate path for our doing so.

The Tribes otherwise deny paragraph 43.

44.     The Tribes admit that on or about October 3, 2019, the Oklahoma Attorney General encouraged the Tribes to meet with him on October 19, 2019.  To the extent paragraph 44 alleges the Oklahoma Attorney General made statements "on behalf" of the Defendant to encourage the Tribes to attend a meeting on October 19, 2019, the Tribes lack sufficient knowledge or information to form a belief about the truth of such allegations and therefore deny those allegations.  The Tribes otherwise deny paragraph 44.

45.     The Tribes admit that on October 15, 2019, they and other tribes sent a letter to the Oklahoma Attorney General, containing the statements quoted in paragraph 45.  The Tribes deny that paragraph 45 fully and accurately describes that letter and otherwise deny paragraph 45.

46.     The Tribes admit that on October 28, 2019 leaders from the Tribes and other tribes, and the Oklahoma Attorney General and other state employees, met to discuss the auto-renewal of the Compact.  To the extent paragraph 46 alleges that the Oklahoma Attorney General and other state employees were acting as "[r]epresentatives of Oklahoma," "Oklahoma," or "Oklahoma's representatives," the Tribes deny these allegations.  The Tribes deny that paragraph 46 fully and accurately describes the October 28, 2019 meeting and otherwise deny the allegations of paragraph 46.

47.     The Tribes admit that on November 5, 2019, they and other tribes sent a letter to the Oklahoma Attorney General containing the statement quoted in paragraph 47, but deny that paragraph 47 fully and accurately describes that letter.  The Tribes admit that in that letter, the Tribes and other tribes stated that during the October 28, 2019 presentation, the Oklahoma Attorney General

15

> communicated the State does, in fact, dispute the automatic renewal of the compact. The State's understanding of the renewal was communicated and you provided an outline of your proposal for arbitration.

The Tribes deny that the Oklahoma Attorney General was acting on behalf of "the State" at the October 28, 2019 meeting.

48.     The Tribes admit that on or about December 18, 2019, the Defendant purported to offer an extension of the Compact. The Tribes deny any implication that the Compact would not, and did not, automatically renew on January 1, 2020 on the terms set forth in Part 15.B. of the Compact and deny that the Defendant had authority to offer an extension of the Compact. As to any allegation made in paragraph 48 about the Defendant's state of mind or intent, the Tribes lack sufficient knowledge or information to form a belief about the truth of such allegation and therefore deny it. The Tribes otherwise deny paragraph 48.

49.     The Tribes admit that they did not accept the Defendant's purported offer of an "extension." The Tribes deny any implication that the Compact would not, and did not, automatically renew on January 1, 2020 on the terms set forth in Part 15.B. of the Compact and deny that the Defendant had authority to offer an extension of the Compact. The Tribes otherwise deny paragraph 49.

50.     The Tribes admit that they filed suit against the Defendant on December 31, 2019 and that their Complaint contains the statements quoted in paragraph 50.

51.     Paragraph 51 is denied. The Tribes admit that all of the electronic gaming that organization licensees have been or are authorized to conduct was authorized "after Oklahoma voters approved State Question 712 on November 2, 2004, [and] after the

effective date of the Tribes' Gaming Compacts." To the extent that paragraph 51 implies that the Compacts automatically renew only if the State authorizes organization licensees to conduct gaming in addition to that authorized by the STGA, that implication is specifically denied.

52.     Paragraph 52 is denied.

53.     Paragraph 53 is denied.

54.     The Tribes admit that they continue to conduct Class III electronic gaming on Indian lands, but deny that they are doing so without valid gaming compacts or in violation of federal law, deny that state law has any application to their conduct of Class III gaming under the Compact, and deny that by conducting Class III gaming under the Compact they are violating state law.

55.     The paragraphs incorporated by reference in paragraph 55 are admitted or denied as described in the general denial and paragraphs 1-54 of this Answer.

56.     Paragraph 56 is admitted.

57.     Paragraph 57 is admitted, except that the quoted text appears in 25 U.S.C. § 2710(d)(7)(A)(ii).

58.     Paragraph 58 is admitted.

59.     The Tribes deny that the OTWCs regulate any activities not specifically referenced in the OTWCs.

60.     The Tribes deny that the excerpt from the Compact that is quoted in paragraph 60 states the term of the Compact, which is set forth in Part 15.B. of the Compact as follows:

> This Compact shall have a term which will expire on January 1, 2020, and at that time, if organization licensees or others are authorized to conduct electronic gaming in any form other than pari-mutuel wagering on live horse racing pursuant to any governmental action of the state or court order following the effective date of this Compact, the Compact shall automatically renew for successive additional fifteen-year terms . . . .

61.     The Tribes deny that the excerpt from Part 15.B. of the Compact that is quoted in paragraph 61 is full and accurate and otherwise incorporate their answer to paragraph 60.

62.     The Tribes admit that organization licensees conducted electronic gaming on January 1, 2020, but deny that Oklahoma voters authorized them to do so in 2004, pursuant to State Question 712, approving the STGA.

63.     Paragraph 63 is denied.

64.     Paragraph 64 is denied, including the allegation that "the condition precedent for automatic renewal has not been met."

65.     Paragraph 65 is denied.

66.     The Tribes deny that their Compacts have expired and deny that their conduct of Class III gaming, including electronic gaming, on and after January 1, 2020 is unlawful and causes irreparable harm to the Defendant or the State.

67.     The Tribes deny that they are or were conducting Class III gaming in the absence of valid gaming compacts, deny that they are or were in violation of 25 U.S.C. § 2710(d)(1)(C) or (d)(3)(A) for that or any other reason, and deny that 25 U.S.C. § 2710(d)(1)(C) and (d)(3)(A) indicate or suggest otherwise.

68.     Answering the first sentence of paragraph 68, the Tribes admit that 18 U.S.C. § 1166(a) contains the words quoted in that sentence but deny that the quoted words completely and accurately describe 18 U.S.C. § 1166 or 1166(a).  The Tribes further deny that 18 U.S.C. § 1166(a) has any application to gaming conducted under a Tribal-State compact approved by the Secretary that is in effect, as the Tribes' Compacts are.  The Tribes deny the second sentence of paragraph 68, including any implication that the State has jurisdiction to enforce any of the state laws referenced in this sentence.

69.     Paragraph 69 is denied, including any implication that the State has jurisdiction to enforce any of the state laws referenced in this sentence.

70.     Paragraph 70 is denied.

71.     Paragraph 71 is denied.

72.     Paragraph 72 is denied.  The Tribes also deny that Defendant is entitled to the relief requested in paragraph 72.

73.     Paragraph 73 is denied.

74.     Paragraph 74 is denied.  The Tribes also deny that Defendant is entitled to the relief requested in paragraph 74.

75.     Paragraph 75 is denied.  The Tribes also deny that Defendant is entitled to the relief requested in paragraph 75.

76.     Paragraph 76 is denied.  The Tribes also deny that Defendant is entitled to the relief requested in paragraph 76.

77.     Paragraph 77 is denied.  The Tribes also deny that Defendant is entitled to the relief requested in paragraph 77.

78.     Paragraph 78 is denied.  The Tribes also deny that Defendant is entitled to the relief requested in paragraph 78.

79.     Paragraph 79 is denied.  The Tribes also deny that Defendant is entitled to the relief requested in paragraph 79.

## AFFIRMATIVE DEFENSES

1.     The Court lacks subject matter jurisdiction because the Tribes are immune from Defendant's counterclaims under the doctrine of tribal sovereign immunity.

2.     This Court lacks subject matter jurisdiction because neither 25 U.S.C. § 2710(d)(3)(A), nor 28 U.S.C. § 1362, on which Defendant relies in paragraphs 10 and 11 of the counterclaims, nor any other provision of IGRA or federal law, including specifically 25 U.S.C. § 2710(d)(7)(A)(ii), provides jurisdiction over the Defendant's counterclaims.

3.     The Defendant's counterclaims are not ripe.

4.     The Defendant lacks standing to allege his counterclaims.

5.     The Defendant lacks a cause of action for his counterclaims.

6.     The Defendant has waived or relinquished any right to seek to renegotiate Parts 11.A. and E of the Compact.

7.     The Defendant's counterclaims fail to state claims on which relief can be granted.

8.     The Defendant's counterclaims are moot.

Wherefore, the Tribes respectfully request that the Court dismiss Defendant's counterclaims with prejudice.

Respectfully submitted,

Dated:  February 12, 2020            By:      /s/ Robert H. Henry
                                              Robert H. Henry, OBA No. 4111
                                              512 N. Broadway, Suite 230
                                              Oklahoma City, OK 73102
                                              Lead Counsel for the Cherokee,
                                                Chickasaw and Choctaw Nations
                                              Phone no.: 405-516-7824
                                              Fax no.: 405-516-7859
                                              E-mail:  rh@rhhenrylaw.com

                                              Frank S. Holleman, *pro hac vice*
                                              Douglas B. L. Endreson
                                              Sonosky, Chambers, Sachse,
                                                Endreson & Perry, LLP
                                              1425 K. Street, NW Suite 600
                                              Washington DC 20005
                                              Counsel for the Cherokee, Chickasaw and
                                                Choctaw Nations
                                              Phone no.: 202-682-0240
                                              Fax no.: 202-682-0249
                                              E-mail: fholleman@sonosky.com
                                                      dendreson@sonosky.com

                                              Sara Hill, OBA No. 20072
                                              P.O. Box 1533
                                              Tahlequah, OK 74465
                                              Counsel for Cherokee Nation
                                              Phone no.: 918-207-3836
                                              Fax no.: 918-458-6142
                                              E-mail:  sara-hill@cherokee.org

                                              Stephen Greetham, OBA No. 21510
                                              4001 N. Lincoln Blvd
                                              Oklahoma City, OK 73105
                                              Counsel for Chickasaw Nation
                                              Phone no. 580-272-5236
                                              E-mail:  stephen.greetham@chickasaw.net

                                              Bradley Mallett, OBA No. 15810
                                              P.O. Box 1210
                                              Durant, OK 74702
                                              Counsel for Choctaw Nation
                                              Phone no.: 580-380-3024
                                              E-mail:  bmallett@choctawnation.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of February 2020, I electronically filed the foregoing document with the Clerk of Court using the ECF System which will transmit notification of the electronic filing to the parties entitled to receive such notice.

*/s/ Frank S. Holleman*
Frank S. Holleman