UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEROKEE NATION, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| and | )<br>) |
| THE CITIZEN POTAWATOMI NATION, *et al.* | )<br>)<br>) |
| Intervenors, | )<br>) |
| v. | )   Case No. CIV-19-1198-D<br>) |
| J. KEVIN STITT, in his official capacity as Governor of the State of Oklahoma, | )<br>)<br>) |
| Defendant. | ) |

**REPLY OF THE KIALEGEE TRIBAL TOWN IN
SUPPORT OF ITS MOTION INTERVENE**

On February 14, 2020, the Kialegee Tribal Town ("Tribe") filed a motion to intervene in this case. (Doc. No. 59). On February 18, 2020, four tribal parties ("Respondents") filed a response objecting to the Tribe's Motion to Intervene. (Doc. No. 60). The Tribe replies in support of its Motion to Intervene as follows.

**ARGUMENT & AUTHORITY**

**1. The Tribe has an approved gaming compact.**

Respondents' objection to Tribe's intervention stems from an argument that the Tribe may not have a gaming compact. (Resp. at 3 (Doc. No. 60)). The Tribe does not dispute that it does not currently conduct Class III gaming. But the Tribe

does have an approved Model Tribal Gaming Compact. Kialegee Compact, 76 Fed. Reg. 42,722 (July 19, 2011) (attached as Exhibit 1). The Tribe, therefore, has the same gaming compact as every other tribe in this litigation and should be allowed to engage in mediation and to litigate its dispute against the Governor regarding the compact's renewal provision. Additionally, the Tribe is currently seeking to establish its rights to conduct Class III gaming under its approved compact. Until this dispute is resolved through mediation or finally decided by this Court, the Tribe's opportunities for gaming will remain clouded by uncertainty.

**2.      The Tribe's extension is not relevant to its Motion to Intervene.**

The objecting parties also argue the Tribe should not be allowed to intervene because it signed the Governor's proposed extension of the current compact through August 2020. (Resp. at 3 (Doc. No. 60)). However, the extension does not waive any rights the Tribe may have to enforce its rights against the Governor in this matter. Gaming Compact Extension, 1 (Dec. 27, 2019) (attached as Exhibit 2).

The extension makes clear a dispute exists between the Tribe and the Governor over the compact's renewal provision. "Whereas, there is a disagreement between the Tribe and the State concerning whether the Compact terminates on January 1, 2020, or whether the Compact renews for another 15-year term." *Id.* The Governor's position that the Compact does not renew affects the Tribe's ability to pursue gaming opportunities because of the uncertainty it creates and because of the

possibility this matter is not finally resolved until after the extension expires.[1]

### 3.    The Tribe has Article III standing.

The Tribe states claims in its proposed complaint which share common questions of law and fact with other plaintiff and intervenor tribes relating to the Governor's interpretation of the gaming compact. The Tribe's claims create a case and controversy between it and Governor Stitt giving the Tribe Article III standing to pursue its claims. This dispute is recognized and affirmed in the extension signed by the Tribe and the Governor on December 27, 2019. Exhibit 2 at 1. The Tribe's complaint seeks a declaratory judgment interpreting the renewal provision of the compact, which will ensure the Tribe can continue pursuing its gaming opportunities without the uncertainty created by its dispute with the Governor over the renewal provision's meaning.

The only case cited by Respondents for its argument that the Tribe lacks standing is *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487 (10th Cir. 1998). However, *Buchwald* supports the UKB's standing to pursue its *Ex parte Young* claim against Governor Stitt. In *Buchwald*, the court explained that an expulsion from university constitutes an ongoing violation of federal law for standing purposes and found the plaintiff had standing. *Id.* at 496 ("We therefore conclude that Klepper

---

[1] Additionally, the extension has been made a direct part of this litigation by Intervenor Wichita and Affiliated Tribes. (Intervenor Compl., 14–17 (Doc. No. 63)).

and Atencio are not immune from plaintiff's claims insofar as she is seeking a future injunction ordering her admission to UNMSM.").

Further the required "ongoing violation" of federal law can also be "a real and imminent threat of being injured in the future," exactly the situation the Tribe is in today. *Oklahoma Observer v. Patton*, 73 F. Supp. 3d 1318, 1321 (W.D. Okla. 2014) (quoting *Tandy v. City of Wichita,* 380 F.3d 1277, 1283 (10th Cir.2004)) ("To warrant such relief, plaintiffs must demonstrate that they are either 'suffering a continuing injury' or 'under a real and immediate threat of being injured in the future.'") "'Though mere desire to someday engage in conduct that would subject plaintiffs to harm is not sufficient to establish injury in fact, 'a concrete present plan' to engage in such conduct is sufficient." *Oklahoma Observer v. Patton*, 73 F. Supp. at 1322 (quoting *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.,* 765 F.3d 1205, 1211 (10th Cir.2014)).

The Tribe faces a concrete present plan by Governor Stitt to interpret its gaming compact as non-renewing. That plan creates a real and imminent threat of the Tribe being injured in the future sufficient to give the Tribe Article III standing to challenge the Governor's plan in this action. Governor's Stitt's plan will not change once the Tribe opens a Class III gaming facilty under its compact. The Tribe will then have the same status as every other compacted tribe with Class III gaming facilities and the Tribe needs clarification on the meaning of the renewal provision

4

to continue pursuing gaming opportunities.

The Tribe's approved compact gives it the right to engage in Class III gaming. If the Tribe is not permitted to intervene a settlement or resolution could impact the Tribe just like it would impact every other compacted tribe, but without the Tribe's participation or consent.

**4.     The Tribe need not show Article III standing.**

The Court enjoys wide discretion in allowing permissive intervention under Rule 24(b). "Of course, permissive intervention is a matter within the sound discretion of the district court, and we will not disturb its order except upon a showing of clear abuse." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (internal citations omitted). Contrary to Respondents' arguments (Resp. at 4–6 (Doc. No. 60)), permissive intervention does *not* require a showing of separate Article III case or controversy standing. "Unlike original parties, intervening parties may utilize piggyback standing. Under this method, the proposed intervenor [is] permitted to intervene on the basis of an existing party's standing to assert the claim at issue." *Young v. Glanz,* No. 13-CV-00315-JED-JFJ, 2018 WL 1588026, *6 (N.D. Okla. Mar. 31, 2018) (citing *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1172, 1207 (10th Cir. 2007) and noting *San Juan County's* abrogation on other grounds by *Hollingsworth v. Perry*, 570 U.S. 693 (2013), *Young*, 2018 WL 1588026 at *6 n.6) (internal citations and quotations omitted)). "To establish 'piggyback

standing,' the intervenor 'must demonstrate that there remains . . . another party with Article III standing' on the 'same side' as the intervenor. If piggyback standing is not shown, the intervenor must demonstrate independent standing under Article III." *Id.* at \*6 (quoting *City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1080 (10th Cir. 2009)).

Where a prospective intervenor shares a common interest in information subject to a protective order, intervention is appropriate. *United Nuclear Corp.*, 905 F.2d at 1427 ("When a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a protective order, no particularly strong nexus of fact or law need exist between the two suits. Here, the district court allowed intervention on a finding that interpretation of the EIL policies was a common issue between the instant case and the other suits. This was a sufficient basis."). The Tribe has a common interest with the other plaintiff and intervenor tribes in resolving or settling the compact dispute through litigation or mediation. Because the mediation is subject to a protective order, the Tribe could not protect its rights and interests without being a party to the mediation.

The only case Respondents cite as support for their argument that the Tribe must have Article III standing to intervene is *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 673 (10th Cir. 2006). (Resp. at 4 (Doc. No. 60)). *Grace United Methodist*, however, dealt with supplemental jurisdiction over a pendent claim by an

6

intervenor. No such pendent claim exists here. *Grace United Methodist* did not address permissive intervention generally or whether Article III standing is required by Rule 24(b) where, as here, no supplemental jurisdiction or pendent claim issues are present. *Id.* at 671–73.

Here, the Tribe need not demonstrate Article III standing because it shares a common interest in the litigation with other tribes who possess Article III standing. The Tribe also shares a common interest in the outcome of the mediation, which is subject to a protective order. Unless the Court allows the Tribe to intervene and take part in the mediation, other tribes, some of whom are antagonistic to the Tribe could agree to terms that would negatively affect the Tribe's future gaming prospects against the Tribe's wishes. As a sovereign federally recognized Indian tribe with a right to engage in Class III gaming, the Tribe has an interest in participating in the mediation to ensure new compact terms are not agreed without its consent. The Tribe should be permitted to intervene at least for the purpose of taking part in the mediation.

## CONCLUSION

The Kialegee Tribal Town has an interest in this litigation and should be permitted to intervene for purposes of mediation and to pursue its complaint against the Governor.

Respectfully submitted,


s/ Klint A. Cowan
Klint A. Cowan, OBA No. 20187
FELLERS SNIDER
100 N. Broadway, Suite 1700
Oklahoma City, OK  73102
Telephone:   (405) 232-0621
Facsimile:    (405) 232-9559
Email:         KCowan@FellersSnider.com

*Attorney for the Intervenor United Keetoowah Band of Cherokee Indians in Oklahoma*

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2020, I electronically transmitted the above and foregoing document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

**Attorneys for Plaintiffs/Intervenors:**

Douglas B.L. Endreson; dendreson@sonosky.com; Robert H. Henry; rh@rhhenrylaw.com; Sara E. Hill; sara-hill@cherokee.org; Frank S. Holleman; fholleman@sonosky.com; Stephen H. Greetham, Stephen.greetham@chickasaw.net; Bradley H. Mallet; bmallett@choctawnation.com; Gregory M. Quinlan, gquinlan@potawatomi.org; Roger F. Wiley, rwiley@mcnag.com; George J. Wright, george.wright@potawatomi.org; Leslie D. Taylor, ltaylor@delawarenation-nsn.com; Charles A. Birnie, abirnie@cwlaw.com; Robert D. Carter, dcarter@cwlaw.com; Stephen R. Ward, sward@cwlaw.com; Robert Rosette, rosette@rosettelaw.com

**Attorneys for Defendant**

Mark E. Burget, mark.burget@gov.ok.gov; Jeffrey C. Cartmell, Jeffrey.cartmell@gov.ok.gov; Matthew K. Felty, mkfeltly@lytlesoule.com; Michael C. Kane, mkane@ryanwhaley.com; Steven K. Mullins, mullings@lytlesoul.com; Patrick R. Pearce, Jr., rpearece@ryanwhaley.com; Daniel G. Webber, Jr., dwebber@ryanwhaley.com; Phillip G. Whaley, pwhaley@ryanwhaley.com;

                                                 s/ Klint A. Cowan
                                                 Klint A. Cowan

80729/837779.1