# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEROKEE NATION, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>and )<br>)<br>THE CITIZEN POTAWATOMI )<br>NATION, *et al.* )<br>)<br>Intervenors, )<br>v. )<br>)<br>J. KEVIN STITT, in his official capacity as )<br>Governor of the State of Oklahoma, )<br>)<br>Defendant. ) | Case No. CIV-19-1198-D |

## REPLY OF THE UNITED KEETOOWAH BAND OF CHEROKEE INDIANS IN OKLAHOMA IN SUPPORT OF ITS MOTION INTERVENE

On February 14, 2020, the United Keetoowah Band of Cherokee Indians in Oklahoma ("Band") filed a motion to intervene in this case. (Doc. No. 56). On February 18, 2020, four tribal parties ("Respondents") filed a response objecting to the Band's Motion to Intervene. (Doc. No. 60). The Band replies in support of its Motion to Intervene as follows.

## ARGUMENT & AUTHORITY

**1. The Band compact will likely take effect during this litigation.**

Respondents' objection to the Band's intervention stems from an argument

that the Band does not have a gaming compact. The Band does not dispute that it does not currently conduct Class III gaming or that it cannot lawfully conduct Class III gaming until its compact takes effect. However, the Band is exploring partners and potential paths to conduct lawful Class III gaming as soon as possible after its compact takes effect.

The Band agreed to and signed the Model Tribal Gaming Compact, codified at 3A O.S. § 281, in December 2019. Band Compact (attached as Exhibit 1). The Compact requires no further action, other than approval by the Secretary of the Interior. "This Compact, as an enactment of the people of Oklahoma, is deemed approved by the State of Oklahoma. No further action by the state or any state official is necessary for this Compact to take effect upon approval by the Secretary of the Interior and publication in the Federal Register." 3A O.S. § 281 Pt. 16. The Secretary has approved every Model Tribal Gaming Compact executed by an Oklahoma tribe, without exception.[1] There is no reason to believe the Secretary would not approve the Band's compact as well.

The Secretary must approve or disapprove the Band compact within 45 days. 25 C.F.R. § 293.10 ("The Secretary must approve or disapprove a compact or amendment within 45 calendar days after receiving the compact or amendment."). If the Band compact is not approved or disapproved within 45 days, it will be deemed

---

[1] *See* https://www.indianaffairs.gov/as-ia/oig/gaming-compacts.

approved. 25 C.F.R. § 293.12. The Band Compact will take effect once it is published in the Federal Register, which must happen within 90 days of the date the Secretary receives the compact. 25 C.F.R 293.15(b).

The Band compact, therefore, will likely take effect during this litigation and the Band should be permitted to take part in the mediation like every other Oklahoma tribe which chooses to intervene in this matter.

**2.     The Band's extension is not relevant to its Motion to Intervene.**

The objecting parties also argue the Band should not be allowed to intervene because it signed the Governor's proposed extension of the current compact through August 2020. (Resp. at 3 (Doc. No. 60)). However, the extension does not waive any rights the Band may have to enforce its rights against the Governor in this matter. Gaming Compact Extension, 1 (Dec. 27, 2019) (attached as Exhibit 2).

The extension makes clear a dispute exists between the Band and the Governor over the compact's renewal provision. "Whereas, there is a disagreement between the Tribe and the State concerning whether the Compact terminates on January 1, 2020, or whether the Compact renews for another 15-year term." *Id.* The Governor's position that the Compact does not renew affects the Band's ability to pursue gaming opportunities because of the uncertainty it creates and because of the

possibility this matter is not finally resolved until after the extension expires.[2]

**3.      The Band has Article III standing.**

The Band states claims in its proposed complaint which share common questions of law and fact with the claims of other plaintiff and intervenor tribes relating to the Governor's interpretation of the gaming compact. The Band's claims create a case and controversy between it and Governor Stitt giving the Band Article III standing to pursue its claims. This dispute is recognized and affirmed in the extension signed by the Band and the Governor on December 27, 2019. (Exhibit 2 at 1). The Band complaint seeks a declaratory judgment interpreting the renewal provision of the compact, which will ensure the Band can continue pursuing its gaming opportunities without the uncertainty created by its dispute with the Governor over the renewal provision's meaning.

The only case cited by Respondents for its argument that the Band lacks standing is *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487 (10th Cir. 1998). However, *Buchwald* supports the Band's standing to pursue its *Ex parte Young* claim against Governor Stitt. In *Buchwald*, the court explained that an expulsion from university constitutes an ongoing violation of federal law for standing purposes and found the plaintiff had standing. *Id.* at 496 ("We therefore conclude that Klepper

---

[2] Additionally, the extension has been made a direct part of this litigation by Intervenor Wichita and Affiliated Tribes. (Intervenor Compl., 14–17 (Doc. No. 63)).

and Atencio are not immune from plaintiff's claims insofar as she is seeking a future injunction ordering her admission to UNMSM.").

Further the required "ongoing violation" of federal law can also be "a real and imminent threat of being injured in the future," exactly the situation the Band is in today. *Oklahoma Observer v. Patton*, 73 F. Supp. 3d 1318, 1321 (W.D. Okla. 2014) (quoting *Tandy v. City of Wichita,* 380 F.3d 1277, 1283 (10th Cir.2004)) ("'To warrant such relief, plaintiffs must demonstrate that they are either 'suffering a continuing injury' or 'under a real and immediate threat of being injured in the future.'") "'Though mere desire to someday engage in conduct that would subject plaintiffs to harm is not sufficient to establish injury in fact, 'a concrete present plan' to engage in such conduct is sufficient." *Oklahoma Observer v. Patton*, 73 F. Supp. at 1322 (quoting *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.,* 765 F.3d 1205, 1211 (10th Cir.2014)).

The Band faces a concrete present plan by Governor Stitt to interpret its gaming compact as non-renewing. That plan creates a real and imminent threat of the Band being injured in the future sufficient to give the Band Article III standing to challenge the Governor's plan in this action. Governor's Stitt's plan will not change when the Band compact is approved or deemed approved. The Band will then have the same rights as every other compacted tribe in Oklahoma and needs clarification on the meaning of the renewal provision to continue pursuing gaming

opportunities.

The Band seeks a declaratory judgment just as every other tribe in this case seeks a declaratory judgment. The Band's compact has been delivered to the Secretary of the Interior and once it becomes effective, a settlement or resolution could impact the Band just like it would impact every other tribe with a gaming compact, but without the Band's participation or consent.

**4.     The Band need not show Article III standing.**

The Court enjoys wide discretion in allowing permissive intervention under Rule 24(b). "Of course, permissive intervention is a matter within the sound discretion of the district court, and we will not disturb its order except upon a showing of clear abuse." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (internal citations omitted). Contrary to Respondents' arguments (Resp. at 4–6 (Doc. No. 60)), permissive intervention does *not* require a showing of separate Article III case or controversy standing. "Unlike original parties, intervening parties may utilize piggyback standing. Under this method, the proposed intervenor [is] permitted to intervene on the basis of an existing party's standing to assert the claim at issue." *Young v. Glanz,* No. 13-CV-00315-JED-JFJ, 2018 WL 1588026, *6 (N.D. Okla. Mar. 31, 2018) (citing *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1172, 1207 (10th Cir. 2007) and noting *San Juan County's* abrogation on other grounds by *Hollingsworth v. Perry*, 570 U.S. 693 (2013), *Young*, 2018 WL 1588026

at *6 n.6) (internal citations and quotations omitted)). "To establish 'piggyback standing,' the intervenor 'must demonstrate that there remains . . . another party with Article III standing' on the 'same side' as the intervenor. If piggyback standing is not shown, the intervenor must demonstrate independent standing under Article III." *Id.* at *6 (quoting *City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1080 (10th Cir. 2009)).

Where a prospective intervenor shares a common interest in information subject to a protective order, intervention is appropriate. *United Nuclear Corp.*, 905 F.2d at 1427 ("When a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a protective order, no particularly strong nexus of fact or law need exist between the two suits. Here, the district court allowed intervention on a finding that interpretation of the EIL policies was a common issue between the instant case and the other suits. This was a sufficient basis."). The Band has a common interest with the other plaintiff and intervenor tribes in resolving or settling the compact dispute through litigation or mediation. Because the mediation is subject to a protective order, the Band could not protect its rights and interests without being a party to the mediation.

The only case Respondents cite as support for their argument that the Band must have Article III standing to intervene is *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 673 (10th Cir. 2006). (Resp. at 4 (Doc. No. 60)). *Grace United*

*Methodist*, however, dealt with supplemental jurisdiction over a pendent claim by an intervenor. No such pendent claim exists here. *Grace United Methodist* did not address permissive intervention generally or whether Article III standing is required by Rule 24(b) where, as here, no supplemental jurisdiction or pendent claim issues are present. *Id.* at 671–73.

Here, the Band need not demonstrate Article III standing because it shares a common interest in the litigation with other tribes who possess Article III standing. The Band also shares a common interest in the outcome of the mediation, which is subject to a protective order. Unless the Court allows the Band to intervene and take part in the mediation, other tribes, some of whom are antagonistic to the Band could agree to terms that would negatively affect the Band's future gaming prospects against the Band's wishes.[3] As a sovereign federally recognized Indian tribe with a right to engage in gaming, the Band has an interest in participating in the mediation to ensure new compact terms are not agreed without its consent. The Band should be permitted to intervene at least for the purpose of taking part in the mediation.

## CONCLUSION

The United Keetoowah Band of Cherokee Indians in Oklahoma has an

---

[3] One such antagonistic tribe is Plaintiff Cherokee Nation of Oklahoma, which has spent the better part of a decade attempting to stop the Band from acquiring land in trust. *See, e.g.*, *Cherokee Nation v. Bernhardt*, 936 F.3d 1142 (10th Cir. 2019) (cert. petition docketed Jan. 27, 2020).

interest in this litigation and should be permitted to intervene for purposes of mediation and to pursue its complaint against the Governor

        Respectfully submitted,

        s/ Klint A. Cowan
        Klint A. Cowan, OBA No. 20187
        FELLERS SNIDER
        100 N. Broadway, Suite 1700
        Oklahoma City, OK  73102
        Telephone:   (405) 232-0621
        Facsimile:    (405) 232-9559
        Email:         KCowan@FellersSnider.com

*Attorney for the Intervenor United Keetoowah Band of Cherokee Indians in Oklahoma*

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2020, I electronically transmitted the above and foregoing document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

**Attorneys for Plaintiffs/Intervenors:**

Douglas B.L. Endreson; dendreson@sonosky.com; Robert H. Henry; rh@rhhenrylaw.com; Sara E. Hill; sara-hill@cherokee.org; Frank S. Holleman; fholleman@sonosky.com; Stephen H. Greetham, Stephen.greetham@chickasaw.net; Bradley H. Mallet; bmallett@choctawnation.com; Gregory M. Quinlan, gquinlan@potawatomi.org; Roger F. Wiley, rwiley@mcnag.com; George J. Wright, george.wright@potawatomi.org; Leslie D. Taylor, ltaylor@delawarenation-nsn.com; Charles A. Birnie, abirnie@cwlaw.com; Robert D. Carter, dcarter@cwlaw.com; Stephen R. Ward, sward@cwlaw.com; Robert Rosette, rosette@rosettelaw.com

**Attorneys for Defendant**

Mark E. Burget, mark.burget@gov.ok.gov; Jeffrey C. Cartmell, Jeffrey.cartmell@gov.ok.gov; Matthew K. Felty, mkfeltly@lytlesoule.com; Michael C. Kane, mkane@ryanwhaley.com; Steven K. Mullins, mullings@lytlesoul.com; Patrick R. Pearce, Jr., rpearece@ryanwhaley.com; Daniel G. Webber, Jr., dwebber@ryanwhaley.com; Phillip G. Whaley, pwhaley@ryanwhaley.com;

                                               s/ Klint A. Cowan  
                                               Klint A. Cowan

80729/837779.1