**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE CHEROKEE NATION, <br> THE CHICKASAW NATION, <br> THE CHOCTAW NATION, <br><br> Plaintiffs, <br><br> and <br><br> THE CITIZEN POTAWATOMI NATION, <br> THE MUSCOGEE (CREEK) NATION, <br> THE QUAPAW NATION, <br> THE DELAWARE NATION, <br> THE COMANCHE NATION, <br> THE PONCA TRIBE OF INDIANS OF <br> OKLAHOMA, <br> THE SEMINOLE NATION, <br> THE OTOE-MISSOURIA TRIBE, and <br> THE WICHITA AND AFFILIATED <br> TRIBES, <br><br> Plaintiff/Intervenors, <br><br> v. <br><br> J. KEVIN STITT, in his official capacity as <br> the Governor of the State of Oklahoma, and <br> *ex rel*. STATE OF OKLAHOMA, as the <br> real party in interest, <br><br> Defendants/Counterclaimants. | Case No. CIV-19-1198-D |

## ORDER DENYING INTERVENTION

Before the Court are the Motion of the United Keetoowah Band of Cherokee Indians in Oklahoma to Intervene [Doc. No. 56] and the Motion of the Kialegee Tribal Town to Intervene [Doc. No. 59], filed pursuant to Fed. R. Civ. P. 24(b)(1)(B). The Motions are

opposed by Plaintiffs and two Intervenors [Doc. No. 60].[1] Both Movants have filed timely reply briefs. For the following reasons, the Court finds that permissive intervention should be denied under the circumstances.

Rule 24(b)(1)(B) authorizes a district court, in its discretion, to permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Movants contend they fit this description because their proposed claims against Defendant J. Kevin Stitt in his official capacity as Governor of the State of Oklahoma share common questions of law and fact with the claims asserted by Plaintiffs due to the similarity of their gaming compacts. All tribal gaming compacts to which the State of Oklahoma is a party utilize the model compact offered by the State-Tribal Gaming Act, Okla. Stat. tit. 3A, § 261 *et seq.*, and thus, all contain the automatic renewal provision of Part 15.B. that is disputed by the existing parties. *See id*. § 281. Without expressly so stating, Movants imply that they intend to bring the same declaratory judgment action that Plaintiffs assert in their Complaint. Movants provide copies of their proposed complaints [Doc. Nos. 56-1 and 59-1], each of which sets forth an identically worded declaratory judgment claim seeking "to remedy the dispute over whether the Compact automatically renews."[2]

---

[1] Plaintiffs Cherokee Nation, Chickasaw Nation, and Choctaw Nation and Intervenors Citizen Potawatomi Nation and Muscogee (Creek) Nation (which were the only Intervenors that had filed complaints at the time) jointly filed a single brief in opposition to both Motions. For ease of reference, the objecting parties will be referred to hereafter simply as Plaintiffs.

[2] Movants are represented by the same attorney, and his preparation of two almost identical pleadings may explain some confusion regarding the status of Kialegee Tribal Town's gaming compact. Its proposed complaint states both that it has a federally approved compact and that its

Plaintiffs object to Movants' intervention on jurisdictional and procedural grounds. They assert that, because Movants do not have any gaming operations at stake and are not affected by Governor Stitt's position that the compacts ended January 1, 2020, Movants do not have a justiciable declaratory judgment claim. Plaintiffs also point out that Movants signed agreements with Governor Stitt in December 2019 extending their compacts. Plaintiffs contend Movants should not be permitted to join the case because they do not share the same position regarding the automatic renewal provision of the compacts and are not seeking the same relief in their proposed complaints.

Movants make identical legal arguments in separate reply briefs. Both present copies of their extension agreements [Doc. Nos. 80-2 and 81-2] to show the agreements expressly preserve their position that the compacts automatically renewed. They address Plaintiff's jurisdictional issue as one of Article III standing and argue that 1) each has standing because they dispute Governor Stitt's position regarding automatic renewal and 2) independent standing is not required because the Tenth Circuit has recognized "piggyback standing" in an appropriate case (citing *San Juan County v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013)).

In the Court's view, resolution of the Motions does not hinge on Movants' standing but on the discretionary nature of the relief sought. *See Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1248 (10th Cir. 2008) (where a district court "has jurisdiction to entertain

---

compact is awaiting approval by the Department of Interior. The reply briefs clarify that only United Keetoowah Band of Cherokee Indians in Oklahoma currently lacks an approved compact.

3

[a declaratory judgment] case, the question remains whether, as a discretionary matter, it *should* do so") (emphasis in original). All parties (and prospective parties) invoke the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, which gives federal courts discretionary authority to "declare the rights and legal relations of any interested party seeking such declaration." *Id.* § 2201(a); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 288-89 (1995). The Tenth Circuit has instructed district courts deciding whether to exercise jurisdiction over declaratory actions to consider factors commonly known as the *Mhoon* factors. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994); *see also Surefoot*, 531 F.3d at 1248.

> In determining whether to exercise their discretion, district courts should consider the following factors:
>
>> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980-81 (10th Cir. 2012) (quoting *Mhoon*, 31 F.3d at 983, with internal quotations omitted).

Thus, Movants' request for permissive intervention in this declaratory judgment action implicates two layers of discretionary decision-making: whether to permit intervention; and whether to entertain Movants' proposed complaints. Upon consideration, the Court finds that Movants should not be permitted to intervene in this case to add their proposed claims.

Plaintiffs assert claims, and Defendants assert counterclaims, that present opposite sides of the same coin. The parties ask the Court to reach opposite conclusions regarding the correct meaning, and proper application under the circumstances, of Part 15.B. of the model gaming compact. Plaintiffs claim their compacts automatically renewed January 1, 2020, and Governor Stitt is interfering with their federal rights to conduct class III gaming operations under the compacts. Governor Stitt and the State of Oklahoma counterclaim that the compacts expired January 1, 2020, and further class III gaming operations after that date violate federal and state law.

Movants are not in the same position as Plaintiffs and do not seek the same relief. Movants signed extension agreements that purport to amend Part 15.B. by substituting "August 31, 2020," in place of "January 1, 2020." *See*, *e.g.*, Extension of State-Tribal Gaming Compact [Doc. No. 80-2] at 1. Assuming without deciding that these extension agreements are effective, as asserted by Movants with support from Defendants (*see* Counterclaims [Doc. No. 15], ¶ 48), the termination or automatic renewal date of Movants' compacts has changed. Perhaps for this reason, Movants' proposed complaints do not seek a declaration that the compacts automatically renewed January 1, 2020. *See*, *e.g.*, Kialegee Tribal Town Compl. [Doc. No. 59-1] at 7 (concluding "the Court should issue a declaratory judgment regarding the status of the gaming Compact, which may have automatically renewed on January 1, 2020"). Accordingly, the Court finds that Movants' claims present issues of law and fact that are different from the ones presented in the existing case.

Further, permitting Movants to intervene would inject into this case declaratory claims that would not serve a useful purpose in clarifying the legal relations at issue.

Movants do not propose to present concrete issues for decision; they merely advance an inchoate basis for joining the case. Movants' underlying motivation is revealed by arguments in their reply briefs that they have a right to participate, or at least an interest in participating, in a nonjudicial proceeding associated with the case. Movants contend they "should be permitted to intervene at least for the purpose of taking part in the mediation" ordered by the Court. *See* Kialegee Tribal Town's Reply Br. [Doc. No. 80] at 8; United Keetoowah Band of Cherokee Indians Reply Br. [Doc. No. 81] at 8. The Court finds that Movants seek to use the declaratory judgment remedy for procedural fencing rather than to settle a legal controversy with Governor Stitt.

For these reasons, the Court finds that Movants' intervention in this case is neither necessary nor appropriate. To the extent Movants truly wish to know whether the model compacts automatically renewed January 1, 2020, their interests are adequately protected by Plaintiffs and Intervenors. To the extent Movants simply want access to the mediation proceeding, their interests are not ones that Rule 24(b) is designed to protect.

IT IS THEREFORE ORDERED that the Motion of the United Keetoowah Band of Cherokee Indians in Oklahoma to Intervene [Doc. No. 56] and the Motion of the Kialegee Tribal Town to Intervene [Doc. No. 59] are DENIED.

IT IS SO ORDERED this 27th day of February, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge