**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) THE CHEROKEE NATION,<br>a federally recognized Indian Tribe,<br>(2) THE CHICKASAW NATION,<br>a federally recognized Indian Tribe<br>(3) THE CHOCTAW NATION,<br>a federally recognized Indian Tribe,<br><br>     Plaintiffs,<br><br>and<br><br>THE CITIZEN POTAWATOMI NATION,<br>THE MUSCOGEE (CREEK) NATION,<br>THE QUAPAW NATION,<br>THE COMMANCHE NATION,<br>THE PONCA TRIBE OF INDIANS OF<br>OKLAHOMA<br>THE SEMINOLE NATION,<br>THE OTOE-MISSOURIA TRIBE, and<br>THE WICHITA AND AFFILIATED TRIBES,<br><br>     Plaintiffs/Intervenors,<br><br>vs.<br><br>(1) J. Kevin Stitt, in his official capacity as the<br>Governor of the State of Oklahoma, and<br>ex rel. STATE OF OKLAHOMA, as the real<br>party in interest,<br><br>     Defendants/Counterclaimants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. CIV-19-1198-D<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF/INTERVENORS MUSCOGEE (CREEK) NATION'S**
**ANSWER TO DEFENDANT'S COUNTERCLAIMS**

Plaintiff/Intervenor the Muscogee (Creek) Nation ("MCN"), files this, it Answer to

the Defendant's counterclaims (Dkt. No. 88 at pp. 6-25):

All allegations of the Defendant's counterclaims, whether express or implied, or contained in numbered paragraphs or other text, footnotes or headings are denied, except to the extent such allegations are specifically admitted in this Answer.

### DEFENDANT'S COUNTERCLAIMS.

MCN generally denies all the allegations either for lack of sufficient knowledge or information to form a belief about the truth of the allegations, because the allegations reference the state of mind, intent, or desires of individuals or entities, or because the allegations are formulated in the subjective mood or future tense such that they do not constitute factual allegations.  MCN generally denies the allegations contained in these paragraphs and sub-paragraphs except where they are expressly admitted hereafter.

The first unnumbered and introductory paragraph preceding Section I on Page 6 of the counterclaim is the Defendant's description of the relief he purports to seek by counterclaiming against MCN, to which no response is required.  To the extent a response is required, MCN admits that the Defendant is J. Kevin Stitt, in his official capacity as Governor of the State of Oklahoma and that Defendant has alleged a counterclaim against MCN; MCN denies that the State of Oklahoma ("State") is the real party in interest in this action and that the Defendant has brought his counterclaim "*ex rel.* State of Oklahoma" and to the extent this paragraph alleges that the Defendant is entitled to the relief he seeks, MCN denies that is so.

### SECTION I.

Defendant declined to number the paragraphs contained in his Section I, pages 6-9.  As a result, the MCN will address each unnumbered item in the order as raised in Defendant's counterclaims.  As to the unnumbered paragraphs and sub-paragraphs of

pages 6, 7, 8 and 9 of the counterclaim, these paragraphs largely constitute the Defendant's conception of the historical motivations that resulted in the enactment of the State-Tribal Gaming Act, which requires no response.

As to the first unnumbered paragraph and subparagraphs of Section I on pages 6 and 7, MCN admits that in 2003, it wanted to offer class III gaming.  These remaining sub-paragraphs largely constitute the Defendant's conception of the historical motivations that resulted in the enactment of the State-Tribal Gaming Act, which requires no response. MCN generally denies all the allegations either for lack of sufficient knowledge or information to form a belief about the truth of the allegations, because the allegations reference the state of mind, intent, or desires of individuals or entities, or because the allegations are formulated in the subjective mood or future tense such that they do not constitute factual allegations.

As to the second unnumbered paragraph of Section I on pages 7 and 8, to the extent that this is implied by the paragraph, MCN admits that its Compact sets out an exclusivity fee rate structure in Part 11.A.   The MCN denies the remainder of the allegations for the reasons set forth in paragraph 2 of this Answer.

As to the third unnumbered paragraph of Section I on page 8, MCN admits that the State Tribal Gaming Act permits the operation of a certain number of player terminals for the play of "authorized games" by organization licensees at racetrack locations in counties with certain populations, with the number of player terminals for the play of authorized games based on the population of the county in which the racetrack location operates Okla. Stat. tit. 3A § 2662(C)(1)-(2).  MCN denies the remainder of the allegations in this paragraph for the reasons set forth in paragraph 2 of this Answer.

As to the fourth unnumbered paragraph of Section I on page 8, MCN denies that allegation for the reasons set forth in paragraph 2 of this Answer.

As to the fifth unnumbered paragraph of Section I on pages 8 and 9, MCN denies the allegations for the reasons set forth in paragraph 2 of this Answer.  MCN expressly denies that "the State received a below-market fee, recognizing the industry was in its infancy."

As to the sixth unnumbered paragraph of Section I on page 9, MCN denies the remainder of the allegations for the reasons set forth in paragraph 2 of this Answer.  MCN expressly states that its legal position on its Compact's renewal has been set forth in detail in its Complaint (Doc. No. 30).  MCN expressly denies that its legal position on its Compact's renewal is "factually and legally wrong" and expressly denies that its Compact has expired.

**SECTION II.**

1.   The first sentence of numbered paragraph 1, Section II, page 9, is the Defendant's description of the relief he purports to seek by counterclaiming against MCN, to which no response is required.   To the extent a response is required, MCN admits that the Defendant is J. Kevin Stitt, in his official capacity as Governor of the State of Oklahoma, and that the Defendant has alleged a counterclaim against MCN; MCN denies that the State of Oklahoma is the real party in interest in this action and that Defendant has brought his counterclaims "*ex rel.* State of Oklahoma;" and to the extent this paragraph alleges that the Defendant is entitled to the relief he seeks, MCN denies that is so.  MCN admits that the second sentence and footnote 4 contain Defendant's description of and

quotations from the text of the Indian Gaming Regulatory Act, but denies that the description and quotations are complete or comprehensive.

2.    Answering the first sentence of paragraph 2: MCN admits that the Gaming Compact (the "Compact") is between the State and MCN, and that the Compact covers the conduct of Class III gaming activities, including electronic gaming, but not pari-mutuel wagering; MCN denies that the Compact expired on January 1, 2020; MCN denies the assertion in footnote 5 that the Compact expired.  MCN denies the second sentence of paragraph 2 of the Counterclaim.

3.    As to paragraph numbered 3, MCN denies that the State is entitled to a judicial declaration or any other relief on Defendant's alternative counterclaim, denies that paragraph 3 describes the relief that the Defendant purports to seek on his alternative counterclaim, denies that Part 15.B. of the Compact "requires good faith renegotiation of certain compact terms within 180 days of the expiration or any renewal of the Gaming Compacts," and denies that the Defendant is entitled to injunctive relief he purports to seek on his alternative counterclaim.

**SECTION III.**

4.    The paragraphs of the counterclaim incorporated by reference in paragraph 4, Section III, page 10, are admitted or denied to the extent described in the general denial and paragraphs 1-3 of this Answer.

5.    MCN denies the first two sentences of paragraph 5, and specifically denies that the State is the real party in interest and has ratified and/or joined this civil action and Defendant's counterclaims pursuant to Fed. R. Civ. P. 17(a)(3).   Answering the third sentence of paragraph 5, MCN admits that the State of Oklahoma is a state of the United

States and possesses certain sovereign authority, but denies that the State possesses sovereign authority over Indians and Indian tribes in Indian country and denies that it possesses unspecified "federally-recognized and delegated authorities under IGRA." Answering the fourth sentence of paragraph 5, MCN denies that any interest Oklahoma may have in the subjects described in this sentence is relevant to the resolution of the Defendant's counterclaims, and otherwise lack sufficient knowledge or information to form a belief about the truth of the allegation made in the fourth sentence because it contains no facts, and therefore denies the fourth sentence.

6.      Answering the first sentence of paragraph 6, MCN admits that the Defendant is the Governor of the State of Oklahoma, was duly elected in 2018, and brings his counterclaim in his official capacity, but denies that he does so "*ex rel.* State of Oklahoma."  MCN denies the second sentence of paragraph 6.

7.      Paragraph 7 is admitted.

## SECTION IV.

8.      MCN admits the first sentence of paragraph 8, Section IV, page 11, except that it denies any implication that the Compacts are not presently in effect.  Except to the extent that the second sentence of paragraph 8 alleges that the Compacts were in effect on December 31, 2019 and are presently in effect, and that footnote 6 quotes the decision in *Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (2014), MCN denies the second sentence, including the allegation that 25 U.S.C. § 2710(d)(3)(A) contains the quoted language and that the quoted language provides jurisdiction over the Defendant's counterclaims.

9.      In response to paragraph 9 and footnote 7, MCN denies that the Defendant's

counterclaims arise under federal law, and denies that jurisdiction over the Defendant's counterclaims is proper under 28 U.S.C. § 1362 because MCN "has been recognized by the Secretary of the Interior."

10.   MCN lacks sufficient knowledge or information to form a belief about the truth of the allegations made in paragraph 10 because it contains a bare conclusion of law, unsupported by allegations of fact, MCN therefore denies paragraph 10.

**SECTION V.**

11.   The paragraphs of the counterclaims incorporated by reference in paragraph 11, Section V, page 12, are denied or admitted to the extend described in the general denial and paragraphs 1-10 of this Answer.

12.   MCN admits that Brad Henry was the Governor of the State in 2003, and was involved, along with other state leaders, in the development of the State Tribal Gaming Act ("STGA"), including the model tribal gaming compact ("Model Compact"), but otherwise denies paragraph 14.   MCN denies that it negotiated the provisions of what became the Model Tribal Gaming Compact.

13.   In answering paragraph 13, MCN denies any implication made in paragraph 15 that it conducts Class III gaming under the Model Compact, which was simply an offer to MCN, which if accepted would constitute a gaming compact between the MCN and the state for purposes of IGRA.   MCN denies that under the Model Compact and the Compact as signed by MCN, certain Class III or "covered games" are defined as alleged in paragraph 15. Part 3.5. of the Model Compact and the Compact as signed by MCN defines "covered games" as:

> An electronic bonanza-style bingo game, and electronic amusement game, an electronic instant bingo game, nonhouse-banked card

> games; any other game, if the operation of such game by a tribe
> would require a compact and if such game has been: (i) approved
> by the Oklahoma Horse Racing Commission for use by an
> organization licensee, (ii) approved by state legislation for use by
> any person or entity, or (iii) approved by amendment of the State-
> Tribal Gaming Act; and upon election by the tribe by written
> supplement to this Compact, any Class II game in use by the tribe,
> provided that no exclusivity payments shall be required for the
> operation of such Class II game . . . .

MCN admits footnote 8.

14.   Answering the first sentence of paragraph 14, MCN states that the Model
Compact was simply an offer of a gaming compact, which if accepted would constitute a
gaming compact between MCN and the state for purposes of IGRA, and that MCN rights
to conduct the covered games, and to benefit from the limitations imposed on the conduct
of those games by organizational licensees and others, are held under its Compact and
pursuant to federal law.   See 25 U.S.C. § 2710(d)(2)(C).   Furthermore, the State bound
itself to the limitations imposed on the conduct of gaming by organizational licensees and
others by entering into the Compact and by enacting the limitations set forth in STGA.
MCN denies the first sentence to the extent that it alleges otherwise.   Answering the
second sentence of paragraph 16, MCN denies that MCN was provided "substantial
exclusivity" under the Model Compact as the "substantial exclusivity" is provided to MCN
under the Compact and pursuant to the STGA.   MCN admits that under the Compact
MCN agreed to pay fees to the State as provided under Part 11.A. of the Compact, "so
long as the state does not change its laws after the effective date of this Compact to
permit the operation of any additional form of gaming by any such organization licensee."
MCN admits footnote 9, but only to the extent that it quotes the state statutes referenced
therein.

15.   As to paragraph 15, MCN admits that the Model Compact was offered to MCN by the State, admits that MCN's compact provides that the Compact's initial term became effective upon satisfaction of the requirements stated in Part 15.A. of the Compact, and admits that the Compact further provides that its term automatically renews on January 1, 2020, if the condition set forth in Part 15.B. of the Compact is met.  MCN admits that paragraph 15 quotes Part 15.B. of the Model Compact and MCN's Compact.  MCN otherwise denies paragraph 15.

16.   MCN denies the first sentence of paragraph 16 except to admit that it was necessary for the State to provide "substantial exclusivity" to MCN in order to obtain the approval of the Secretary of the Interior ("Secretary") for the payment of fees to the State by MCN under the MCN's Compact.  Answering the second sentence of  paragraph 16, MCN admits that the State agrees in Part 11.E. of the Model Compact and MCN's Compact not to "permit the nontribal operation of any machines or devices to play covered games or electronic or mechanical gaming devices otherwise presently prohibited by law within the state in excess of the number of outside of the designated locations authorized by the State-Tribal Gaming Act," and that if the State breaches that commitment, it must pay liquidated damages to the MCN.  MCN otherwise denies the second sentence of paragraph 16, including any implication that the Compact is no longer in effect.

17.   Answering the first and second sentences of paragraph 17, MCN admits the Model Compact was enacted into state law in the STGA but denies that this was done after the provisions of the Model Compact "were fully negotiated," and denies any implication that it conducts Class III gaming under the Model Compact, which was simply an offer to MCN, which if accepted would constitute a gaming compact between MCN

and the state for purposes of IGRA.  MCN denies that the definition of "Compact" cited in paragraph 17 is found in Part 3.5. of the MCN's Compact or the Model Compact. Answering the third sentence of paragraph 19, MCN admits that the STGA permits Class III gaming to be conducted by Indian tribes if they accept the State's offer as set forth in the Model Compact and the Compact is approved under IGRA and admits that the STGA permits the operation of a certain number of player terminals for the play of "authorized games" by organization licensees at racetrack locations in counties with certain populations, with the number of player terminals for the play of authorized games based on the population of the county in which the racetrack location operates Okla. Stat. tit. 3A § 262(C)(1)-(2).  Answering the fourth sentence of paragraph 17, MCN admits that Okla. Stat. tit. 3A § 262(C) defines "authorized games" to include the games described in the fourth sentence, which are defined as:

> electronic amusement games as defined in this act, electronic bonanza-style bingo games as defined in this act and electronic instant bingo games as defined in this act, and any type of gaming machine or device that is specifically allowed by law and that an Indian tribe in this state is authorized to utilize pursuant to a compact entered into between the state and the tribe in accordance with the provisions of the Indian Gaming Regulatory Act and any other machine or device that an Indian tribe in this state is lawfully permitted to operate pursuant to the Indian Gaming Regulatory Act.

MCN otherwise denies the second and third sentences of paragraph 17, including any implication that organization licensees must be "non-tribal" entities in order to operate "authorized games" at horse racetracks under the STGA.

18.   Paragraph 18 is admitted.  MCN admits that Okla. Stat. tit. 3A § 262(A) authorizes

the Oklahoma Horse Racing Commission ("OHRC") to license organization licensees which meet the requirements of Okla. Stat. tit. § 262(C) to engage in "authorized gaming," once four Indian tribes enter the Compact, those Compacts are approved by the Secretary, and notice of the Secretary's approval is published in the Federal Register.

19.   Paragraph 19 is admitted.

20.   Paragraph 20 is admitted.

21.   The first sentence of paragraph 21 is admitted.  Answering the second sentence of paragraph 21, MCN lacks sufficient knowledge or information to form a belief about the truth of these allegations and therefore denies the allegations.

22.   MCN lacks sufficient knowledge or information to form a belief about the truth of these allegations of paragraph 22 and therefore denies the allegations.

23.   As to paragraph 23, MCN admits that on December 17, 2004, the Principal Deputy Assistant Secretary of the Interior-Indian Affairs ("AS-IA") sent a letter to Governor Kenneth Blanchard of the Absentee Shawnee Tribe of Oklahoma, announcing the Secretary had approved the Absentee Shawnee Compact, and, *inter alia*, concluding that the exchange of fees for substantial exclusivity in gaming would confer an economic benefit to the tribe.  MCN otherwise denies paragraph 23, including any implication that the Secretary interpreted or purported to interpret the meaning of Part 15.B. of the Compact in that letter.

24.   Paragraph 24 is admitted.

25.   The first sentence of paragraph 25 is admitted.  As to the second sentence of paragraph 25, MCN admits that on December 28, 2004, the AS-IA sent a letter to Chief Floyd Leonard of the Miami Tribe of Oklahoma, announcing the Secretary had approved

the Miami Compact and, *inter alia*, concluding that the exchange of fees for substantial exclusivity in gaming would confer an economic benefit on the tribe.  MCN otherwise denies paragraph 25, including any implication that the Secretary interpreted or purported to interpret the meaning of Part 15.B. of the Compact in that letter.

26.   The first sentence of paragraph 26 is admitted.  As to the second sentence of paragraph 26, MCN admits that on December 28, 2004, the AS-IA sent a letter to Principal Chief Chad Smith of the Cherokee Nation, announcing the Secretary had approved the Cherokee Compact and, *inter alia*, concluding that the exchange of fees for substantial exclusivity in gaming would confer an economic benefit on the tribe.  MCN otherwise denies paragraph 26, including any implication that the Secretary interpreted or purported to interpret the meaning of Part 15.B. of the Compact in that letter.

27.   As to paragraph 27, MCN admits that the Secretary published notice of the Absentee Shawnee, Comanche, Miami, and Cherokee Compacts in the Federal Register on January 27, 2005, and admits that this triggered the OHRC's authority under the Okla. Stat. tit. 3A § 262(A) to issue organization licenses to organization licensees who meet the criteria of Okla. Stat. tit. 3A § 262(C). Paragraph 27 is otherwise denied.

28.   As to Paragraph 28, MCN admits that Principal Chief A.D. Ellis signed the MCN's Compact on February 4, 2005 and that the Compact was deemed approved and was published in the Federal Register on April 8, 2005.  As to Defendant's Exhibit 1, MCN admits that the language of the Compact at Part 5.I. differs from that of the Model Gaming Comact.  MCN denies that the portion of Exhibit 1 as cited by the Defendant is full or accurate; MCN denies the statements contained in Exhibit 1 as to any implication about the meaning or legal effect of the Compact are correct.  As to the second sentence of

paragraph 28, MCN admits that on March 16, 2005, the AS-IA sent a letter to the MCN announcing that the Secretary had approved the MCN Compact and, *inter alia*, concluding that the exchange of fees for substantial exclusivity in gaming would confer an economic benefit on the tribe. MCN otherwise denies paragraph 28, including any implication that the Secretary interpreted or purported to interpret the meaning of Part 15.B. of the Compact in that letter.

29. Answering the allegations of the first three sentences of paragraph 29, MCN admits that on July 5, 2019, the Defendant sent MCN and other tribes a letter containing the statements quoted in those sentences, but denies the description of those statements that appears in the first three sentences is full or accurate and denies any implication that the Defendant's statements about the meaning or legal effect of the Compact are correct. MCN denies the fourth sentence of paragraph 29, including any implication that "governmental action" as described in Part 15.B. had not already occurred by July 5, 2019 and denies that the Defendant has any independent authority to determine whether the Compact would or has automatically renewed, which is determined under the plain language of Part 15.B. of the Compact.

30. As to paragraph 30, MCN admits that on July 8, 2019, the Tulsa World published an editorial, purportedly written by the Defendant and stating his belief that the Compacts would not automatically renew on January 1, 2020, and containing the statements quoted in paragraph 30, but denies that the Compacts "were set to expire on January 1, 2020". As to any allegation made in paragraph 30 about the Defendant's state of mind or intent, the MCN lacks sufficient knowledge or information to form a belief about the truth of such allegation and therefore denies any such allegation.

31.  As to paragraph 31, MCN admits that on August 13, 2019, the Defendant sent tribes, including MCN, a letter that included the statements quoted in the first and third sentences of paragraph 31, but denies that these statements fully and accurately describe the letter, and otherwise denies the first and third sentences.  Answering the second sentence of paragraph 31, MCN admits that the Defendant purported to designate the Oklahoma Attorney General to participate in negotiations on his behalf; MCN denies that the Oklahoma Attorney General participated in negotiations "on behalf of Oklahoma."  To the extent paragraph 31 alleges the Defendant's intent in sending the August 13, 2019 letter, alleges the Defendant's intent in purporting to designate the Oklahoma Attorney General to participate in negotiations and purporting to propose a goal for the negotiations in his August 13, 2019 letter, and alleges that the Oklahoma Attorney General was "temporarily designated" by the Defendant, MCN lacks sufficient knowledge or information to form a belief about the truth of such allegations and therefore denies such allegations.

32.  Answering the first sentence of paragraph 32, MCN denies that its position on the auto-renewal of the Compact, as set forth in the August 28, 2019 letter referenced in paragraph 32, "reiterated a flawed belief."  MCN admits that on August 28, 2019, MCN and other tribes issued a joint letter that includes the statements quoted in paragraph 32, but denies that paragraph 32 fully and accurately describes the letter.

33.  As to paragraph 33, MCN admits that on September 3, 2019, MCN did not meet with the Oklahoma Attorney General or anyone else who purported to be the Defendant's designee.

34. As to paragraph 34, MCN admits that on September 19, 2019, the Oklahoma

Attorney General sent MCN a letter containing the statements referenced or quoted in paragraph 34.   To the extent paragraph 34 alleges the proposal, Oklahoma Attorney General made statements in the letter at the Defendant's directions, or that he was acting "on behalf" of the Defendant, MCN lacks sufficient knowledge or information to form a belief about the truth of such allegations.

35.   As to paragraph 35, MCN admits that on October 2, 2019, MCN and other tribes sent a letter to the Oklahoma Attorney General responding to his letter of September 19, 2019, noting that the September 19, 2019 letter "does not contain a substantial proposal, which we still await, that complies with Part 15 of the compact," stating that

> [o]nce the State has committed to the automatic renewal of the Compacts, the Tribes and State should take the opportunity through intergovernmental engagement to discuss matters of mutual interest.  The plain terms of our renewing gaming compacts provided the appropriate path for our doing so.

MCN otherwise denies paragraph 35.

36.   As to paragraph 36, MCN admits that on or about October 3, 2019, the Oklahoma Attorney General engaged MCN and other tribes to meet with him on October 19, 2019. To the extent that paragraph 36 alleges the Oklahoma Attorney General made statements "on behalf of" the Defendant to encourage MCN to attend a meeting on October 19, 2019, MCN lacks sufficient knowledge or information to form a belief about the truth of such allegations and therefore denies those allegations.  MCN otherwise denies paragraph 36.

37.   MCN admits that on October 15, 2019, MCN and other tribes sent a letter to the Oklahoma Attorney General, containing the statements quoted in paragraph 37.  MCN denies that paragraph 37 fully and accurately describes that letter and otherwise denies paragraph 37.

38. As to paragraph 38, MCN admits that on October 28, 2019 leaders from MCN and other tribes, and the Oklahoma Attorney General and other state employees, met to discuss the auto-renewal of the Compact. To the extent paragraph 38 alleges that the Attorney General and other state employees were acting as "[r]epresentatives of Oklahoma," "Oklahoma," or "Oklahoma's representatives," MCN denies these allegations. MCN denies that paragraph 38 fully and accurately describes the October 28, 2019 meeting and otherwise the allegations of paragraph 38.

39. As to paragraph 39, MCN admits that on November 5, 2019, MCN and other tribes sent a letter to the Oklahoma Attorney General containing the statement quoted in paragraph 39, but denies that paragraph 39 fully and accurately describes that letter. MCN admits that in the letter, MCN and other tribes stated that during the October 28, 2019 presentation, the Oklahoma Attorney General

> communicated that State does, in fact, dispute the automatic renewal of the compact. The State's understanding of the renewal was communicated and you provided an outline of your proposal for arbitration.

MCN denies that the Oklahoma Attorney General was acting on behalf of "the State" at the October 28, 2019 meeting.

40. As to paragraph 40, MCN admits that on or about December 18, 2019, the Defendant purported to offer an extension of the Compact. MCN denies any implication that the Compact would not, and did not, automatically renew on January 1, 2020 on the terms set forth in Part 15.B. of the Compact and denies that the Defendant had authority to offer an extension of the Compact. As to any allegation made in paragraph 40 about the Defendant's state of mind or intent, MCN lacks sufficient knowledge or information to

form a belief about the truth of such allegation and therefore denies such allegation. MCN otherwise denies paragraph 40.

41. As to paragraph 41, MCN admits that it did not accept the Defendant's purported offer of an "extension." MCN denies any implication that the Compact would not, and did not, automatically renew on January 1, 2020 on the terms set forth in Part 15.B. of the Compact and denies that the Defendant had authority to offer an extension of the Compact. MCN otherwise denies paragraph 41.

42. As to paragraph 42, MCN admits that the referenced tribes filed suit against the Defendant on December 31, 2019 and admits that the referenced tribes' *Complaint* contains the statements quoted in paragraph 42.

43. As to paragraph 43, MCN admits that MCN filed the referenced motion to intervene [Dkt. No. 23] on January 27, 2020 and admits that the Defendant did not oppose the referenced motion [Dkt. No. 27]. MCN denies any implication in paragraph 43 that the State of Oklahoma is the real party in interest in this action.

44. Paragraph 44 is admitted [Dkt. No. 30].

45. Paragraph 45 is denied. MCN admits that all of the electronic gaming that organization licensees have been or are authorized to conduct was authorized "after Oklahoma voters approved State Question 712 on November 2, 2004, [and] after the effective date of the Tribes' Gaming Compacts." To the extent that paragraph 45 implies that MCN's Compact automatically renews only if the State authorizes organization licensees to conduct gaming in addition to that authorized by the STGA, that implication is specifically denied.

46. Paragraph 46 is denied.

47.   Paragraph 47 is denied.

48.   As to paragraph 48, MCN admits that it continues to conduct Class III electronic gaming on Indian lands, but denies that it is doing so without a valid gaming compact or in violation of federal law, denies that state law has any application to their conduct of Class III gaming under the Compact, and denies that by conducting Class III gaming under the Compact MCN is violating state law.

## SECTION VI.

49.   The paragraph incorporated by reference in paragraph 49 are admitted or denied as described in the general denial and in paragraphs 1-48 of this Answer.

50.   Paragraph 50 is admitted.

51.   Paragraph 51 is admitted, except that the quoted text appears in 25 U.S.C. § 2710(d)(7)(A)(ii).

52.   As to paragraph 52, MCN denies that the excerpt from Part 15.B. of the Compact that is quoted in paragraph 52 is full and accurate and otherwise incorporates its answer to paragraph 55.

53.   As to paragraph 53, MCN admits that organization licensees conducted electronic gaming on January 1, 2020, but denies that Oklahoma voters authorized them to do so in 2004, pursuant to State Question 712, approving the STGA.

54.   MCN denies that the excerpt from the Compact that is quoted in paragraph 54 states the term of the Compact, which is set forth in Part 15.B. of the Compact as follows:

> This Compact shall have a term which will expire on January 1, 2020, and at that time, if organization licensees or others are Authorized to conduct electronic gaming in any form other than Pari-mutuel wagering on live horse racing pursuant to any Governmental action of the state or court order following the Effective date of this Compact, the Compact shall automatically

Renew for successive additional fifteen-year terms . . . .

55.   Paragraph 55 is denied.

56.   Paragraph 56 is denied.

57.   As to paragraph 57, MCN denies that its Compact has expired and denies that its conduct of Class III gaming, including electronic gaming, on and after January 1, 2020 is unlawful and causes irreparable harm to the Defendant or the State.

58.   As to paragraph 58, MCN denies that it is or was conducting Class III gaming in the absence of a valid gaming compact, denies that it is or was in violation of 25 U.S.C. § 2710(d)(1)(C) or (d)(3)(A) for that or any other reason, and denies that 25 U.S.C. § 2710(d)(1)(C) or (d)(3)(A) indicate or suggest otherwise.

59.   Answering the first sentence of paragraph 59, MCN admits that 18 U.S.C. § 1166(a) contains the words quoted in that sentence but denies that the quoted words completely and accurately describe 18 U.S.C. § 1166 or 1166(a).   MCN further denies that 18 U.S.C. § 1166(a) has any application to gaming conducted under a Tribal-State compact approved by the Secretary that is in effect, as the MCN's Compact is.   MCN denies the second sentence of paragraph 59, including any implication that the State has jurisdiction to enforce any of the state laws referenced in this sentence.

60.   Paragraph 60 is denied, including any implication that the State has jurisdiction to enforce any of the state laws referenced in this sentence.

61.   Paragraph 61 is denied.

62.   Paragraph 62 is denied.

63.   Paragraph 63 is denied.   MCN also denies that Defendant is entitled to the relief requested in paragraph 63.

64.  Paragraph 64 is denied.   MCN also denies that Defendant is entitled to the relief requested in paragraph 64.

## SECTION VII.

65.  Paragraph 65 is denied.  MCN also denies that Defendant is entitled to the relief requested in paragraph 65.

66.   Paragraph 66 is denied.  MCN also denies that Defendant is entitled to the relief requested in paragraph 66.

67.   Paragraph 67 is denied.  MCN also denies that Defendant is entitled to the relief requested in paragraph 67.

68.  Paragraph 68 is denied.  MCN also denies that Defendant is entitled to the relief requested in paragraph 68.

69.  Paragraph 69 is denied.  MCN also denies that Defendant is entitled to the relief requested in paragraph 69.

70.  Paragraph 70 is denied.  MCN also denies that Defendant is entitled to the relief requested in paragraph 70.

## AFFIRMATIVE DEFENSES

1.   The Court lacks subject matter jurisdiction because MCN is immune from Defendant's counterclaims under the doctrine of tribal sovereign immunity.

2.   The Court lacks subject matter jurisdiction because neither 25 U.S.C. § 2710(d)(3)(A), nor 28 U.S.C. § 1362, on which Defendant relies in paragraphs 8 and 9 of the counterclaims, nor any other provision of IGRA or federal law, including specifically 25 U.S.C § 2710(d)(7)(A)(ii), provides jurisdiction over the Defendant's counterclaims.

3.  The Defendant's counterclaims are not ripe.

4.  The Defendant lacks standing to allege his counterclaims.

5.  The Defendant lacks a cause of action for his counterclaims.

6.  The Defendant's counterclaims are barred in whole or in part by the doctrine of waiver.

7.  The Compact auto-renewed on January 1, 2020.

8.  The Defendant's counterclaims are barred in whole or in part by the doctrine of laches.

9.  The Defendant's counterclaims are barred in whole or in part by the doctrine of estoppel.

10.  The Defendant's counterclaims are barred in whole or in part by the doctrine of unclean hands.

11.  The Defendant has publicly interfered with the contractual relations between the MCN and its patrons and vendors.

12.  The Defendant acted in bad faith by refusing to comply with the requirement under the Compact to confer with the MCN related to rate negotiations under Part 11.A and E of the Compact.

13.  The auto-renewal language of the Compact is plain and unambiguous.

14.  The language of the Compact was drafted by the State and if held to be ambiguous must be construed against the drafter [the State].

15. The Defendant has waived or relinquished any right to seek to renegotiate Parts 11.A. and E of the Compact.

16. The Defendant's counterclaims fail to state claims on which relief can be granted.

17. The Defendant's counterclaims are moot.

18. The State has breached the parties Compact when it began engaging in i-Lottery and therefore, the MCN has no obligation to pay exclusivity fees.

19. The Defendant is not entitled to the relief prayed for in his counterclaims.

20. MCN has not waived its sovereign immunity.

21. MCN reserves the right to assert additional defenses, including affirmative defenses.

**WHEREFORE**, having fully answered, MCN respectfully prays that the Court take nothing by way of the Defendant's counterclaims; that Defendant's counterclaims be dismissed with prejudice; that MCN be awarded all costs and attorneys' fees incurred in connection herewith; and for any and all further relief deemed just and equitable.


Respectfully submitted,

Dated March 13, 2020                    By: *s/ Roger Wiley*
                                                     Roger Wiley, OBA #11568
                                                     Kyle B. Haskins, OBA #12694
                                                     The Muscogee (Creek) Nation
    Office of the Attorney General
    Department of Justice
    P.O. Box 580
    Okmulgee, Oklahoma 74447
    918-295-9720
    918-756-2445 – facsimile
    rwiley@mcnag.com
    khaskins@mcnag.com

    **ATTORNEYS FOR PLAINTIFF/INTERVENOR MUSCOGEE (CREEK) NATION**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of March, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.  Based upon the records currently on file in this case, the Clerk of the Court will transmit a Notice of Electronic filing to the following ECF registrants:

Phillip G. Whaley
pwhaley@ryanwhaley.com

Daniel G. Webber, Jr.
dwebber@ryanwhaley.com

Patrick R. Pierce, Jr.
rpearce@ryanwhaley.com

Mathew C. Kane
mkane@ryanwhaley.com

Steven K. Mullins
mullins@lytlesoule.com

Matthew K. Felty
mkfelty@lytlesoule.com

Mark E. Burget
Mark.burget@gov.ok.gov

Jeffrey C. Cartmell
Jeffrey.cartmell@gov.ok.gov

**Attorneys for Defendant J. Kevin Stitt,
As Governor of the State of Oklahoma,
And *ex rel*. The State of Oklahoma**

Robert H. Henry
rh@rhhenrylaw.com

Douglas B. L. Endreson
dendreson@sonosky.com

Frank S. Holleman
fholleman@sonosky.com

Sara Hill
sara-hill@cherokee.org

Stephen Greetham
stephen.greetham@chickasaw.net

Bradley Mallett
bmallett@choctawnation.com

George Wright
George.wright@potawatomi.org

Gregory M. Quinlan
gquinlan@potawatomi.org

C. Austin Birnie
abirnie@cwlaw.com

Jason B. Aamodt
jason@iaelaw.com

Klint A. Cowan
kcowan@fellerssnider.com

Leslie D. Taylor
ltaylor@delawarenation-nsn.com

Matthew B. Alison
matthew@iaelaw.com

Michael D. McMahan
mmcmahan@hobbsstraus.com

Robert A. Rosette
rosette@rosettelaw.com

R. Daniel Carter
dcarter@cwlaw.com

Stephen R. Ward
sward@cwlaw.com

Stuart D. Campbell
scampbell@dsda.com

William G. Gudell
ggudell@hobbsstraus.com

William R. Norman, Jr.
wnorman@hobbsstraus.com

Zachary T. Stuart
zstuart@hobbsstraus.com

**Attorneys for Plaintiffs/Intervenors**

/s/*Roger Wiley*
Roger Wiley