## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE CHEROKEE NATION, | ) | |
| THE CHICKASAW NATION, and | ) | |
| THE CHOCTAW NATION, | ) | |
| | ) | |
|    Plaintiffs, | ) | |
| | ) | |
| THE CITIZEN POTAWATOMI NATION, | ) | |
| THE MUSCOGEE (CREEK) NATION, | ) | No. CIV-19-1198-D |
| THE QUAPAW NATION, | ) | |
| THE DELAWARE NATION, | ) | |
| THE SEMINOLE NATION, and | ) | |
| THE WICHITA AND AFFILIATED TRIBES, | ) | |
| | ) | |
|    Plaintiffs-in-Intervention, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J. KEVIN STITT, in his official capacity as | ) | |
| the Governor of the State of Oklahoma, | ) | |
| | ) | |
|    Defendant/Counterclaimant. | ) | |

**PLAINTIFFS CHEROKEE NATION, CHICKASAW NATION AND CHOCTAW NATION'S AND PLAINTIFFS-IN-INTERVENTION CITIZEN POTAWATOMI NATION, DELAWARE NATION, MUSCOGEE (CREEK) NATION, AND QUAPAW NATION'S RESPONSE TO DEFENDANT'S MOTION TO CLARIFY PARTIES' AUTHORITY TO COMPLY WITH COURT'S MEDIATION ORDER AND MOTION TO HOLD MEDIATION IN ABEYANCE**

The Plaintiffs Cherokee Nation, Chickasaw Nation, and Choctaw Nation and Plaintiffs-in-Intervention Citizen Potawatomi Nation, Delaware Nation, Muscogee (Creek) Nation, and Quapaw Nation ("Nations") respond as follows to Defendant's Motion To Clarify Parties' Authority to Comply with Court's Mediation Order and Brief in Support, ECF No. 131 ("Motion to Clarify"), and Defendant's Motion to Hold Mediation

1

in Abeyance, ECF No. 132 ("Abeyance Motion").  As the Nations explain below, the Court should deny both Motions.

The Motion to Clarify raises issues that are irrelevant to the questions before this Court and are outside of the issues in this case and that have been raised in two other forums.  Since Defendant filed this motion, leaders of the Oklahoma Legislature have initiated a case against him in the Oklahoma Supreme Court that seeks to resolve these issues.  Additionally, the Secretary of the Interior ("Secretary") took no action on the agreements at the center of Defendant's motion, and as a result, those agreements are in limbo: they are "considered to have been approved" "only to the extent the compact is consistent with [the Indian Gaming Regulatory Act ("IGRA")]."   25 U.S.C. § 2710(d)(8)(C).  The issues Defendant raises in his motion should be resolved in the pending state proceeding or in proceedings concerning the Secretary's decision to allow the agreements to go into effect by operation of law to the extent they are consistent with IGRA.  *See* 25 C.F.R. § 293.12 ("If the Secretary neither affirmatively approves nor disapproves a compact or amendment with the 45-day review period, the compact or amendment is considered to have been approved, but only to the extent it complies with the provisions of [IGRA].")  For these and other reasons, the Motion to Clarify is meritless, as is the Abeyance Motion, and both motions should be denied.

## I.      The Court Should Deny the Motion to Clarify.

In his Motion to Clarify, Defendant asks this Court to resolve questions about his authority under state law and IGRA to enter into gaming agreements with the Comanche Nation and the Otoe-Missouria Tribe ("Two Tribes").  Motion to Clarify at 8-12.  He

163277-2

further asks the Court to determine that he has the authority under state law to bind the State to the Two Tribes' agreements, which purport to authorize house banked card games, table games, and event wagering, which are not permitted under the Model Compact. *Id.* at 11, 13-14. The Court should deny those requests because they are improperly brought and incorrect.

### A.     The Motion to Clarify Raises Issues Beyond the Scope of this Case.

The state law questions that Defendant seeks to have resolved here are wholly unrelated to the allegations that the Nations and Plaintiffs-in-Intervention make in their complaints and that Defendant makes in his counterclaims. The question presented in this action is whether the automatic renewal provision of the existing Compacts between the Nations and the State caused the Compacts to renew on January 1, 2020. Defendant's authority to enter into other compacts without state legislative approval is simply not within the scope of the case.

Defendant deliberately and definitively took those issues out of the case when he filed the Joint Motion For Leave Of Court To File Stipulations Of Dismissals With Prejudice, ECF No. 120 ("Joint Motion"). The Joint Motion did not present the settlements or the Two Tribes' agreements to this Court and did not ask the Court to rule on the legality of those agreements. The Court then dismissed Defendant's and the Two Tribes' actions with prejudice pursuant to the Joint Motion, noting that the dismissal of the Two Tribes' claims and Defendant's counterclaims against them "without any review or approval of the settlement agreements (which the movants have not requested) and without any judicial

163277-2

action on the merits of the underlying claims – will have no legal effect on the issues presented for decision in this case." ECF No. 124 at 2.

Since he and the Two Tribes withdrew the actions purportedly resolved by those agreements from this Court's consideration, and those actions were dismissed with prejudice, Defendant has no basis on which to make the instant request of the Court. Defendant attempts to rely on the mediation as a basis to raise these issues, but he earlier relied on the mediation to justify the Joint Motion, ECF No. 120 at 4-5, so that adds nothing. Moreover, he nowhere suggests that there is any pending legal question in the mediation related to these agreements that needs to be resolved for mediation with the remaining parties to go forward. Defendant offers only innuendo, implying that the Nations' objections to his Compacts with the Two Tribes raise questions about the Nations' good faith participation in the mediation. ECF No. 131 at 8. That suggestion has neither factual nor legal basis.

In short, having secured the dismissal with prejudice that he sought without presenting his agreements with the Two Tribes to this Court, Defendant now wishes he hadn't and is seeking to resurrect the issues and effectively obtain a declaratory judgment on the meaning of state law. There is no valid basis for his request, and the Court should deny his Motion to Clarify.

**B.     The Issues Defendant Raises Are Properly Decided Elsewhere.**

That the issues Defendant raises are beyond the scope of this case does not mean that he has no way to litigate them. On June 4, 2020, the President Pro Tempore of the Oklahoma Senate and the Speaker of the Oklahoma House jointly filed an original action

163277-2

against Defendant in the Oklahoma Supreme Court, asking that court to resolve the issues of state law that Defendant raises here, which are questions of first impression in the Oklahoma courts. *See* Ex. 1 (App. to Assume Original Juris. & Pet. for Decl'y Relief & Br. in Supp., *Treat v. Stitt*, No. 118829 (Okla. filed June 4, 2020)).

Moreover, before Defendant filed the Motion to Clarify, he submitted the agreements to the Secretary for approval under IGRA. The Secretary took no action to approve or disapprove those agreements, and as a result, the agreements went into effect on June 8, 2020 <u>only to the extent they are consistent with IGRA</u>. *See* 25 U.S.C. § 2710(d)(8)(C). As a result, whether those agreements are valid remains an open question, *see Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1557 (10th Cir. 1997) (rejecting the notion that "Secretarial approval of the compacts is all that is necessary in order for the compacts to comply with IGRA"), which should be resolved in a court in which subject matter jurisdiction is conferred by a properly brought claim that actually relates to the new agreements.

### C.    Defendant is Procedurally Barred from Raising These Issues Here.

The Court should also refuse to grant the Motion to Clarify because Defendant has no standing to raise these questions in this case, which were never part of this case to begin with, and which Defendant later took affirmative action to keep from this case. In addition, because the Two Tribes were dismissed with prejudice, the validity of their new agreements has no bearing on the claims or mediation between the remaining parties. As the issues Defendant raises have no relationship to the issues in the case, any relief he could obtain on his Motion to Clarify would not redress an injury-in-fact. *See Utah Animal*

5

*Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1255 (10th Cir. 2004) (standing has three necessary elements: "1) injury-in-fact; 2) causation; and 3) redressability.").

The Motion to Clarify also seeks to advance a position that is contrary to Defendant's arguments in his Motion for Partial Summary Judgment and Brief in Support, ECF No. 126 ("Sum. Judg. Br.").  In his Motion to Clarify, Defendant contends that he has authority to negotiate and enter into gaming compacts authorizing games not permitted in the Model Compact.  Motion to Clarify at 11, 13-14.  Furthermore, he argues that limiting gaming compacts to the terms of the Model Compact would violate the separation of powers provision of the Oklahoma Constitution.  *Id.* at 15.  However, in his summary judgment brief, Defendant takes the opposite view of the legislative and executive roles with respect to gaming policy, asserting that the state Legislature must set that policy:

> Pursuant to the fundamental separation of powers found in Oklahoma's Constitution, the State authorizes certain conduct such as gambling through legislative enactments; the executive branch administers that authority, frequently through the issuance of licenses and permits to those who are then given a privilege or permission to act in a manner consistent with the State's policy. *See City of Sand Springs v. Dep't of Pub. Welfare*, 1980 OK 36, 608 P.2d 1139, 1146 ("the dichotomy between administrative acts and legislative acts hinges upon the declaration of policy, which is a legislative function, and the implementation of that policy, which is traditionally an administrative function.").

Sum. Judg. Br. at 24-25.  Defendant goes on to note that while generally "gambling is illegal in the State," the State-Tribal Gaming Act ("STGA") authorizes gaming in the Model Compact, and "[a]doption of this policy is clearly a legislative function."  *Id.* at 25-26.  Although the discussion in the summary judgment brief focuses on the scope of non-tribal gaming, its acknowledgment of the Oklahoma Legislature's primary

163277-2

policy-setting role with respect to gaming is contrary to the position advanced in the Motion to Clarify.  Defendant's effort to "shape these proceedings," and to engage in "selective posturing" by "tak[ing] inconsistent positions at various points . . . for the sake of expediency" is inappropriate and should be rejected.  *See AKH Co. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR, 2013 WL 3456936, at *7 (D. Kan. July 9, 2013).

### D.      Defendant's Motion to Clarify Has No Merit.

Finally, even if it were properly brought, the Motion to Clarify has no merit. Defendant's assertion that he has constitutional authority to "enter into" the agreements on behalf of the State fails under the bare terms of the Oklahoma Constitution.  Article 6, Section 8 of the Oklahoma Constitution provides in full that:

> [t]he Governor shall cause the laws of the State to be faithfully executed, and shall conduct in person or in such manner as may be prescribed by law, all intercourse and business of the State <u>with other states and with the United States</u>, and he shall be a conservator of the peace throughout the State.

(emphasis added).  Nothing in Article 6, Section 8, or any other part of the Constitution, gives the Governor the authority or duty to engage in intercourse with or conduct business with <u>Indian tribes</u>.  Since the Oklahoma Constitution is silent as to the Governor's conduct of business with Indian tribes, the Governor's duties in that area must be exercised pursuant to the public policy of the State embodied in legislation, as provided by Article 6, Section 1:

> [t]he Executive authority of the state shall be vested in a Governor, . . . and other officers provided by law and this Constitution, each of whom shall keep his office and public records, books and papers at the seat of government, and <u>shall perform such duties as may be designated in this Constitution *or* prescribed by law</u>."

(emphasis added). Legislative power is exercised when the People or the Legislature enact a law, Okla. Const. art. 5, §§ 1, 36, which the Governor must then "cause . . . to be faithfully executed," *id.* art. 6, § 8. Pursuant to the Oklahoma Constitution, the Legislature and the People have exercised the legislative power to define how the Governor and State conduct business with Indian tribes in terms that totally defeat Defendant's argument that he has statutory authority to "enter into" the Two Tribes' agreements.

First, the STGA, which was approved by the Legislature and the People, *see* Okla. Stat. tit. 3A, § 280; State Question 712 (Nov. 2, 2004), provides that the State may enter into an IGRA compact with an Indian tribe when the Tribe signs the Model Compact, which is defined by statute, Okla. Stat. tit. 3A, §§ 280-281. The Model Compact, as offered by the STGA, specifically circumscribes the Governor's role in IGRA compacting. The only portion of the Compact that refers to the Governor's authority is Part 15.B., which provides that "the state, <u>acting through its Governor</u>, may request to renegotiate the terms of subsections A and E of Part 11 of this Compact." *Id.* § 281. (emphasis added). That language clearly distinguishes between the State and the Governor and only gives the Governor power to act for the State in the exercise of one specific compacting function – <u>requesting</u> negotiations, not <u>entering into</u> renegotiated compact terms. And since the Model Compact was enacted, the State has offered supplemental terms to tribes by legislative enactment, which the Tribes "entered into" by signing the model supplemental compact offer. *Id.* § 280.1.

Second, state law enacted by the Legislature provides that the Governor may "negotiate and enter into cooperative agreements on behalf of this state with federally

8

recognized Indian tribal governments within this state to address issues of mutual interest."
Okla. Stat. tit. 74 § 1221(C)(1).  But that alone does not cause the State to enter into such
agreements, as "[e]xcept as otherwise provided by this subsection, <u>such agreements shall
become effective upon approval by the Joint Committee on State-Tribal Relations</u>."  *Id.*
(emphasis added).  That has not occurred here.

Defendant interprets the Oklahoma Constitution and statutes differently, but has no
convincing authority to support his atextual approach.[1]  He first relies on an Oklahoma
Supreme Court opinion that said only that the Governor can <u>negotiate</u> compacts with
Tribes, not "enter into" them on behalf of the State.  *See* Motion to Clarify at 8-9 (quoting
*Sheffer v. Buffalo Run Casino, PTE, Inc.*, 2013 OK 77, ¶ 12, 315 P.3d 359).  He then cites a
case on Oregon law, *see id.* at 9 (quoting *Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136,
1156 (D. Or. 2005)), but that law gives the Oregon Governor the power to negotiate and
enter into compacts with no requirement for legislative approval and was enacted by a
legislature that expressly stated its intent in the legislative history not to require legislative
approval of such compacts, *see Dewberry*, 406 F. Supp. 2d at 1154-56 (discussing Or. Rev.
Stat. § 190.110).

---

[1] For example, the provision in Okla. Stat. tit. 3A,  § 280 that "[n]o tribe shall be required to
agree to terms different than the terms set forth in the Model Tribal Gaming Compact,"
says nothing about the Governor's authority to deviate from the Model Compact, as
Defendant suggests.  *See* Motion to Clarify at 14.  Defendant also points to Part 15.B. of the
Compacts authorizing the Governor to request a compacting tribe to renegotiate the
exclusivity provisions at the end of the term, Motion to Clarify at 14-15, but that provision
supports the opposite conclusion, that the Governor lacks authority to bind the State to
different exclusivity provisions under other circumstances or to enter a binding agreement
with respect to any other distinct provisions under <u>any</u> circumstances.  *See supra* at 8-9.

Defendant then argues that his interpretation of the Oklahoma Constitution and statutes is supported by a 2004 Oklahoma Attorney General Opinion on the separation of powers that predates the STGA.  *See* Motion to Clarify at 10 (citing *In re Williamson*, 2004 OK AG 27, 2004 WL 2002612 (Okla. A.G. Aug. 26, 2004)).   But the question of separation of powers is downstream from the text of the Constitution that actually defines those powers – and the Oklahoma Constitution provides the Governor's powers here are created by and subject to law, which is enacted by the Legislature or the People.  Indeed, the 2004 opinion itself recognized that "[o]f course, any agreement negotiated by the Governor must conform to the public policy enacted into law by the Legislature, as the role of the Legislative Branch is to establish public policy, and the role of the Executive Branch is to execute that policy." 2004 OK AG 27, ¶ 30b n.3 (citing *Tweedy v. Okla. Bar Ass'n*, 624 P.2d 1049, 1054 (Okla. 1981)).  Defendant later admits that Oklahoma Attorney General opinions on constitutional questions are nonbinding and advisory, Motion to Clarify at 11-12 & n.7, and gives no convincing reason why the 2004 opinion should control over the 2020 opinion he attempts to avoid, *see In re Treat*, 2020 OK AG 8, 2020 WL 2304499 (Okla. A.G. May 5, 2020).[2]

---

[2] Defendant gratuitously attacks the Attorney General of Oklahoma – who is not a party to this case – for taking a different position when he was tasked with delivering Defendant's position to the Tribes in 2019.  *See* Motion to Clarify at 10-12.  The Attorney General can hardly be faulted for presenting Defendant's position while acting as a negotiator on Defendant's behalf.  Since then, he properly concluded Defendant's position is untenable and refused to continue negotiating for Defendant.  When asked for an opinion on Defendant's position by legislative leadership, he complied with his legal obligation to provide such an opinion and explained why Defendant is wrong.  *See* Okla. Stat. tit. 74, § 18b(A)(5).

163277-2

Finally, Defendant points to IGRA's provisions requiring the State to negotiate in good faith regarding terms of gaming compacts governing scope of games.  Motion to Clarify at 16-25.  Such questions are distinct from the Governor's authority under state law to bind the State.  *See Kelly*, 104 F.3d at 1557 ("State law must determine whether a state has validly bound itself to a compact.").  His lack of authority to bind the State is totally dispositive of whether the agreements are valid compacts, and therefore there is no reason to consider this argument about negotiations over the scope of gaming.  Moreover, no party has brought any allegation of bad faith negotiation before the Court in this case.

Accordingly, the Court should deny the Motion to Clarify.

## II.      The Court Should Also Deny the Abeyance Motion

The Court should also deny Defendant's Abeyance Motion.  ECF No. 132.  The only relief Defendant asks for in the Abeyance Motion is that mediation be held in abeyance until the Court resolves the Motion to Clarify.  *Id.* at 3.  That request will be made moot by denial of Defendant's Motion to Clarify.

For the foregoing reasons, the Nations respectfully ask that this Court deny Defendant's Motion to Clarify and Abeyance Motion.

Respectfully submitted,

Dated:  June 11, 2020

By: */s/ Robert H. Henry*
Robert H. Henry, OBA No. 4111
512 N. Broadway, Suite 230
Oklahoma City, OK 73102
Lead    Counsel    for    the    Cherokee,
Chickasaw and Choctaw Nations
Phone no.: 405-516-7824
Fax no.: 405-516-7859
E-mail: rh@rhhenrylaw.com

11

163277-2

Douglas B. L. Endreson
Frank S. Holleman, *pro hac vice*
Sonosky, Chambers, Sachse,
    Endreson & Perry, LLP
1425 K. Street, NW Suite 600
Washington DC 20005
Counsel for The Cherokee, Chickasaw
    and Choctaw Nations
Phone no.: 202-682-0240
Fax no.: 202-682-0249
E-mail: dendreson@sonosky.com
        fholleman@sonosky.com

Sara Hill, OBA No. 20072
P.O. Box 1533
Tahlequah, OK 74465
Counsel for Cherokee Nation
Phone no.: 918-207-3836
Fax no.: 918-458-6142
E-mail: sara-hill@cherokee.org

Stephen Greetham, OBA No. 21510
4001 N. Lincoln Blvd
Oklahoma City, OK 73105
Counsel for Chickasaw Nation
Phone no. 580-272-5236
E-mail: stephen.greetham@chickasaw.net

Bradley Mallett, OBA No. 15810
P.O. Box 1210
Durant, OK 74702
Counsel for Choctaw Nation
Phone no.: 580-380-3024
E-mail: bmallett@choctawnation.com

Gregory M. Quinlan, NM Bar # 4450
                      Colo. Bar # 21605
George J. Wright, OBA # 21873
1601 S Cooper Dr
Shawnee, OK 74801
Counsel for Citizen Potawatomi Nation
Phone no. 405-275-3121
Email: george.wright@potawatomi.org

12

Leslie D. Taylor, OBA No. 19469
P.O. Box 2206
Ada, OK 74821
Counsel for Delaware Nation
Phone no.: 580-279-0068
Fax no.: 580-279-0070
E-mail: leslietaylorlaw@gmail.com

Roger F. Wiley, OBA No. 11568
Kyle B. Haskins, OBA No. 12694
PO Box 580
Okmulgee, OK 74447
Counsel for Muscogee (Creek) Nation
Phone no.: 918-295-9720
Fax no.: 918-756-2445
Email:        rwiley@mcnag.com
                 khaskins@mcnag.com

Stephen R. Ward, OBA No. 13610
R. Daniel Carter, OBA No. 30514
C. Austin Birnie, OBA No. 31942
Conner & Winters, LLP
4000 One Williams Center
Tulsa, OK 74172-0148
Counsel for Quapaw Nation
Phone no.: 918-586-8605
Fax no.: 918-586-8605
E-mail:       sward@cwlaw.com
                 dcarter@cwlaw.com
                 abirnie@cwlaw.com

163277-2

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2020, I electronically filed the above and foregoing document with the Clerk of Court via the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the parties registered to receive such notice.

*/s/ Frank S. Holleman*
Frank S. Holleman

163277-2