# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

**(1) THE CHEROKEE NATION, et al.,**

    **Plaintiffs,**

    **v.**

**(1) J. KEVIN STITT,**

    **Defendant.**

**No. CIV-19-1198-D**

---

**INTERVENOR-PLAINTIFF WICHITA AND AFFILIATED TRIBES
OPPOSITION TO MOTION TO CLAIRFY PARTIES' AUTHORITY
TO COMPLY WITH COURT'S MEDIATION ORDER (DOC. 131) AND MOTION
TO HOLD MEDIATION IN ABEYANCE (DOC. 132) AND BRIEF IN SUPPORT**

June 11, 2020

HOBBS, STRAUS, DEAN & WALKER, LLP

William R. Norman, OBA No. 14919
  *wnorman@hobbsstraus.com*
Kirke Kickingbird, OBA No. 5003
  *kkickingbird@hobbsstraus.com*
Michael D. McMahan, OBA No. 17317
  *mmcmahan@hobbsstraus.com*
W. Gregory Guedel, OBA No. 33317
  *gguedel@hobbsstraus.com*
Zachary T. Stuart, OBA No. 32517
  *zstuart@hobbsstraus.com*

101 Park Avenue, Suite 700
Oklahoma City, Oklahoma 73102
(405) 602-9425 telephone
(405) 602-9426 facsimile

ATTORNEYS FOR INTERVENOR-PLAINTIFF
WICHITA AND AFFILIATED TRIBES

# TABLE OF CONTENTS

SUMMARY OF MOTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 1

ARGUMENTS AND AUTHORITIES ............................................................................. 4

I.   Governor Stitt Does Not Have Standing to Raise This Issue in This
     Litigation. .............................................................................................................. 4

II.  The Court Should Refrain From Deciding an Issue of State Law While
     There Is an Identical Action Pending in the Oklahoma Supreme Court .................. 6

     A.   Oklahoma Law is Controlling. ...................................................................... 8

     B.   A Decision in This Court Would Lead to Piecemeal Litigation. ................. 10

     C.   The Supreme Court of Oklahoma Will Properly Adjudicate this Issue
          and Protect the Rights of the Litigants. ...................................................... 12

     D.   A. Governor Stitt's Forum Shopping Should Not Be Rewarded ................ 13

     E.   The Underlying Legal Questions Were First Raised by the Oklahoma
          Legislature, Which Now Seeks an Answer from the Oklahoma
          Supreme Court ............................................................................................ 14

     F.   Governor Stitt's Motion to Clarify is a Vexatious and Reactive
          Motion with No True Bearing on the Outcome of this Litigation .............. 15

III. Governor Stitt Does Not Need to be Granted Authority to "Enter Into"
     Compacts to Fully Participate in Mediation. .......................................................... 16

     A.   The Governor Can Settle These Matters By Following Procedures in
          Place Under Oklahoma Law. ....................................................................... 16

IV.  The Governor Lacks Authority Under Oklahoma Law ......................................... 17

     A.   There are Two Permissible Ways for the Governor to Enter Into New
          Gaming Compacts, and Neither Process Was Followed. ............................ 17

     B.   The Governor's Reliance on a 2004 Attorney General Opinion is
          Misplaced. ................................................................................................... 19

     C.   The Governor's Obligation to Negotiate All Forms of Class III
          Gaming Does Not Alter His Ability to "Enter Into" Compacts under
          Oklahoma Law. ............................................................................................ 19

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ............................ 4

*Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253 (9th Cir. 1988) ............................................................................................................................. 10

*Colorado River Water Conservation Dist. v. United States* 424 US 800 (1976) ......... 6, 7, 8

*D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223 (10th Cir. 2013) .. 6, 7, 15

*Deakins v. Monaghan*, 484 U.S. 193, 199, 108 S.Ct. 523, 528, 98 L.Ed.2d 529 (1988) .... 4

*Ethics Comm'n of State of Okla. v. Cullison*, 1993 OK 37, 850 P.2d 1069 ....................... 12

*Fent v. Contingency Rev. Bd.*, 2007 OK 27, ¶ 11, 163 P.3d 512,521 ........................... 12, 13

*Fox v. Maulding*, 16 F.3d 1079 (10th Cir. 1994) ................................................... 7, 8, 13, 14

*Griffith v. Choctaw Casino of Pocola*, 2009 OK 51, ¶ 12, 230 P.3d 488 ......................... 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ...................................... 5

*Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) .................... 4

*Mashantucket Pequot Tribe v. State of Conn.*, 913 F.2d 1024 (2d Cir. 1990) .................... 20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ...................... 14

*Oklahoma Educ. Ass'n v. State ex rel. Oklahoma Legislature*, 2007 OK 30, ¶ 20, 158 P.3d 1058 ................................................................................................................................ 18

*Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) ....................... 4

*Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1997) ................................ 9, 10, 20

*Respiratory Sleep Sols., Inc. v. Gruenberg*, No. CIV-15-524-D, 2015 WL 6158869 (W.D. Okla. Oct. 19, 2015) ....................................................................................................... 7

*Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ...................... 4

*Treat v. Stitt*, Case No. 118829 (Okla. Sup. Ct.) ............................................................... 3

*Tulsa Cty. Deputy Sheriff's Fraternal Order of Police, Lodge No. 188 v. Bd. of Cty. Comm'rs of Tulsa Cty.*, 2000 OK 2, ¶ 8, 995 P.2d 1124 ................................................ 18

*United States v. City of Las Cruces*, 289 F.3d 1170 (10th Cir. 2002) ............................... 11

*Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207 (10th Cir.2005) ..................................... 4

**Statutes**

25 U.S.C. § 2710 ................................................................................................................ 20

3A O.S. § 280.1 ................................................................................................................. 16

3A O.S. § 281 .................................................................................................................... 16

74 O.S. § 1221 ............................................................................................................. 16, 18

**Other Authorities**

2004 OK AG 27 ................................................................................................................ 19

2020 OK AG 8 .................................................................................................................... 3

**Constitutional Provisions**

Okla. Const. art 4, § 1. .................................................................................................... 17

Okla. Const. art 5, § 36 ................................................................................................... 18

## SUMMARY OF MOTION

The Court should abstain from issuing an opinion deciding state law issues raised in Governor Stitt's **MOTION TO CLARIFY THE PARTIES' AUTHORITY TO COMPLY WITH THE COURT'S MEDIATION ORDER** (Doc. 131) and its companion **MOTION TO HOLD MEDIATION IN ABEYANCE PENDING RESOLUTION OF MOTION TO CLARIFY** (Doc. 132) (collectively, "Motion to Clarify") because (1) the Governor does not have standing to request this declaratory relief, and (2) there is a concurrent action in the Oklahoma Supreme Court set to decide identical issues. Questions of the Governor's authority to bind the State to compacts with the Otoe-Missouria Tribe and Comanche Nation are properly determined under Oklahoma law, and Oklahoma's highest court should decide an issue that fundamentally questions the constitutional balance of power between Oklahoma's executive and legislative branches.

In the alternative, the Court should deny the Governor's Motion because, despite his protestations, the Governor lacks the authority under Oklahoma law to unilaterally enter into gaming compacts on behalf of the State, and he does not need to be granted such authority to effectively settle the ultimate dispute in this case.

## STATEMENT OF FACTS

On February 10, 2020, this Court ordered the parties to participate in mediation in an attempt to facilitate negotiations to resolve this dispute. Motion to Clarify at 1, 2. The Court's original Order contemplated that mediation would be complete, or substantially complete by March 31, 2020. (Doc. 31 at 2.) The Court's Order also stated "the parties retain their respective rights to (a) fully inform and make recommendations to and within their respective governments concerning this matter, inclusive of the mediation, and (b) consult with State and Federal officials for purposes of successful completion of the mediation." *Id.*, at 3. On April 20, 2020, counsel for the parties submitted a joint proposal

1

to the Court via electronic mail, stating "[n]otwithstanding the return to a litigation calendar, the mediation in accord with the Court's current orders regarding mediation will remain open and available to the parties until June 30, 2020."

On April 21, 2020, Governor Stitt purported to enter into gaming compacts with the Otoe-Missouria Tribe ("Otoe") and Comanche Nation ("Comanche"). These compacts contemplated that the two (2) tribes could conduct gaming that is not permitted under the State-Tribal Gaming Act, 3A O.S. §§ 261, et seq. ("STGA"). Namely, the compacts would allow the Tribes to conduct house-banked table games and sports wagering, which are both prohibited under Oklahoma law. 3A O.S. § 262(H). On the same day the Governor and the Tribes signed the compacts, the Otoe, the Comanche, and the State filed a joint motion seeking leave to file stipulations of dismissal with prejudice (Doc. 120). In opposing the Joint Motion, the Plaintiff Tribes requested that this Court "make clear in its order that the settlement has not been reviewed or approved by this Court, either to determine its legality or for any other purpose." (Doc. 123 at 7). The Court granted the dismissal with prejudice, adding that it did so "without any review or approval of the settlement agreements (which the movants have not requested) and without any judicial action on the merits of the underlying claims." (Doc. 124 at 2). Further, the Court noted that the settlement and dismissal "will have no legal effect on the issues presented for decision in this case." *Id.* On April 21, the Tribes and the Governor submitted the compacts to the Department of the Interior ("DOI") for approval.

Following Governor Stitt's purported ratification of the compacts, the Oklahoma Legislature certified a question to the Oklahoma Attorney General, asking him to issue an opinion on the legality of the Governor's actions. The Attorney General issued his opinion

on May 5, 2020, finding Governor Stitt exceeded his authority under Oklahoma law to bind the state to Tribal gaming compacts.  2020 OK AG 8.

On the same day he issued his opinion, Attorney General Hunter sent a letter to DOI requesting that the Secretary expressly disapprove of the compacts.  The Wichita and Affiliated Tribes ("Wichita Tribe") also sent a letter to the DOI, asking the Secretary to expressly disapprove of the compacts, as did the other Plaintiff Tribes.

Governor Stitt filed this Motion to Clarify on May 28, 2020, seeking a declaration from this Court that the Attorney General of Oklahoma is incorrect, and that he had actual authority to bind the State to the compacts with the Otoe and Comanche.  Shortly thereafter, on June 4, 2020, the Oklahoma Legislature filed a Petition for Declaratory Relief in the Oklahoma Supreme Court (the "Legislative Action") seeking a judicial declaration on the same claim Governor Stitt makes in his Motion.  *Treat v. Stitt*, Case No. 118829 (Okla. Sup. Ct.).  The Oklahoma Supreme Court ordered Governor Stitt to respond to the Legislature's petition by June 25, 2020, and oral arguments will be heard in the case on July 1, 2020.

On June 8, 2020, the Governor issued a press release advising that the proposed compacts with the Otoe-Missouria Tribe and Comanche Nation had been "deemed approved"[1] by DOI, and the two tribes could begin gaming pursuant to those compacts as soon as DOI published notice in the Federal Register. https://www.governor.ok.gov/articles/press_releases/state-tribes-new-gaming-compacts-approved.

---

[1] Note that under federal regulations, compacts that are "deemed approved" when the DOI does not issue a decision to approve them and, in such case, the compacts are approved only to the extent consistent with federal law.  25 U.S.C. § 2710(d)(8)(C).

## ARGUMENTS AND AUTHORITIES

### I.     Governor Stitt Does Not Have Standing to Raise This Issue in This Litigation.

Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. *Deakins v. Monaghan*, 484 U.S. 193, 199, 108 S.Ct. 523, 528, 98 L.Ed.2d 529 (1988); *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. *Allen v. Wright*, 468 U.S. 737, 750–751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471–473, 102 S.Ct. 752, 757–59, 70 L.Ed.2d 700 (1982).

This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. To sustain jurisdiction in a case, it is not enough that a dispute was very much alive when suit was filed, or when review was obtained in the Court of Appeals. *Deakins, supra*, 484 U.S., at 199, 108 S.Ct., at 528; *Steffel v. Thompson*, 415 U.S. 452, 459, n. 10, 94 S.Ct. 1209, 1216, n. 10, 39 L.Ed.2d 505 (1974). The parties must continue to have a "'personal stake in the outcome'" of the lawsuit. *Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). **"'The crucial question is whether granting a present determination of the issues offered will have some effect in the real world.'"** *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir.2005)

(emphasis added) (quoting *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir.2000)).

Here, Governor Stitt has essentially asked this Court to grant declaratory relief endorsing the compacts with the Otoe and Comanche without (1) identifying an injury in fact, (2) connecting such injury to the Tribal Plaintiffs in this action, or (3) demonstrating how a favorable ruling from this Court would redress his purported injury.

Unless the court has expressly retained jurisdiction to enforce a settlement agreement in its order dismissing the action, an action to enforce the agreement is not within the court's ancillary jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382 (1994). When Governor Stitt and the Otoe and Comanche filed their joint motion seeking leave to file stipulations of dismissal with prejudice, they did not ask this Court to retain jurisdiction over their settlement agreements. (Doc. 120.) Further, in opposing the joint motion, the Wichita Tribe and other Tribal Plaintiffs explicitly asked this Court not to endorse the legality of those agreements on either state or federal law grounds. (Doc. 120.) In its order granting leave to file stipulations of dismissal, the Court specifically noted that the dismissal was "without any review or approval of the settlement agreements (which the movants have not requested) and without any judicial action on the merits of the underlying claims." (Doc. 124 at 2.) Further, the Court noted that the settlement and dismissal "will have no legal effect on the issues presented for decision in this case." *Id.* In dismissing the claims with prejudice, this Court relinquished its jurisdiction over the controversy between the State and the Otoe and the Comanche, and this Court no longer has jurisdiction to enforce the settlement agreement between the parties.

Governor Stitt now comes to this Court seeking declaratory relief endorsing the compacts he claims to have entered with the Otoe and Comanche. The Governor has

identified no injury that would result without this Court's approval of his actions. As further outlined below, the Governor does not need the authority to unilaterally enter into compacts to successfully participate in mediation. Finally, a ruling from this Court would have no substantial effect on the outcome of this ongoing litigation. Governor Stitt's Motion does nothing but ask this Court to retroactively endorse these compacts long after the Court relinquished its jurisdiction over the settlement of the dispute between the Governor and the Otoe and Comanche. Accordingly, Governor Stitt does not have standing to bring this action for declaratory relief, and his Motion should be denied.

## II.    The Court Should Refrain From Deciding an Issue of State Law While There Is an Identical Action Pending in the Oklahoma Supreme Court.

The Court should refrain from ruling on the underlying claims arising in Governor Stitt's Motion because it presents a serious question of Oklahoma law that is currently before the Oklahoma Supreme Court. "It is well-established that federal courts have the power to refrain from hearing, among other things, cases which are duplicative of a pending state proceeding. This latter principle – the avoidance of duplicative litigation – is at the core of the *Colorado River* doctrine." *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013)

The *Colorado River* doctrine is the principle that federal courts have discretionary authority to decline to exercise jurisdiction, and to abstain from hearing a matter, in light of parallel state court litigation. *See Colorado River Water Conservation Dist. v. United States* 424 US 800, 814 (1976). Application of the *Colorado River* doctrine is "appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.* at 814. "It is enough that exercise of federal review of the question in a case and in

similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.*

The *Colorado River* doctrine is particularly applicable in this case. The Governor and the Oklahoma Legislature are currently litigating in Oklahoma's highest court to resolve the question of the Governor's authority to unilaterally enter into compacts on the State's behalf that permit forms of gaming currently illegal under Oklahoma law. The Oklahoma Supreme Court litigation squarely addresses issues that are identical to issues raised in the Governor's Motion to Clarify, namely, whether the Governor has unilateral authority to enter into compacts that permit gaming that is currently illegal under Oklahoma law. Thus, the Legislature's Action presents "difficult questions of state law bearing on policy problems of substantial import," and the resolution of those questions "transcends the result in the case [now] at bar." *Id.* at 814

In making the decision to refrain from hearing an issue, the Tenth Circuit has recognized as many as eight (8) factors the Court should consider: (1) whether one (1) of the two (2) courts has exercised jurisdiction over property, (2) the convenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law will control the decision; (6) whether the state court proceedings adequately protect the litigants' rights; (7) the desire to avoid forum-shopping; and (8) the possibly vexatious or reactive nature of either the state or federal suit. *See Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994); *D.A. Osguthorpe Family*, 705 F.3d at 1233; *see also Respiratory Sleep Sols., Inc. v. Gruenberg*, No. CIV-15-524-D, 2015 WL 6158869, at *3 (W.D. Okla. Oct. 19, 2015).

"No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required."  *Colorado River,* 424 US at 818-819.

Because several of these factors are not applicable to the issue at hand (namely whether the court has assumed jurisdiction over any res or property and the relative convenience of the forums), the Court should focus on those factors that bear substantially on the Motion before this Court and the case pending before the Oklahoma Supreme Court. *D.A. Osguthorpe Family P'ship,* 705 F.3d at 1234 ("[W]e find that the first of the *Colorado River* factors does not apply to this case.")

On balance, these factors support this Court's abstention.  First, Oklahoma, not federal, law will provide the rule of decision on this issue.  Second, the Court's abstention on this important question of Oklahoma law would prevent piecemeal litigation among the several parties not involved in this litigation whose rights will be altered by a decision on the merits.  Third, the legal controversy between the Governor and the Legislature began before Governor Stitt filed his Motion to Clarify.  Fourth, the Oklahoma Supreme Court is well equipped to adequately adjudicate this dispute and protect the parties' rights.  Fifth, the Governor's decision to file this Motion is based heavily on forum-shopping.  Finally, the Governor's Motion is purely reactive, and is aimed only at gaining political and strategic advantage.

**A. Oklahoma Law is Controlling.**

The first issue we address is whether state or federal law will control the controversy. *Fox*, 16 F.3d at 1082.  The Governor's underlying claim in his Motion to Clarify is that he has unilateral authority under Oklahoma law to negotiate and "enter into" compacts with Tribes that bind the State to allow gaming currently prohibited under state law.  This is undoubtedly a question of Oklahoma, not federal, law.  "State law must determine whether

a state has validly bound itself to a compact." *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1557 (10th Cir. 1997) Further, the question of whether a state government validly entered into a compact has been litigated extensively in state courts.[2]

The only time the Tenth Circuit has decided whether a state governor properly entered into a gaming compact was in *Pueblo of Santa Ana v. Kelly, supra.* In that case, the Governor of New Mexico purported to bind the state to compacts with several tribes that allowed for gaming that was not permitted under New Mexico law. *Pueblo of Santa Ana*, 104 F.3d at 1552. After the New Mexico governor signed the compacts, members of the New Mexico Legislature challenged the validity of the compacts in the New Mexico Supreme Court. *Id.* at 1550.

The Supreme Court of New Mexico, after conducting a "thorough and careful analysis of state law," held that the governor did not have the authority to "enter into" the compacts with the tribes, meaning they were invalid under the Indian Gaming Regulatory Act ("IGRA"). *Id.* at 1551 The tribes challenged this decision in federal court, arguing that

---

[2] *See Florida House of Representatives v. Crist*, 999 So. 2d 601, 611–16 (Fla. 2008) (Governor lacked authority to enter into compacts for forms of gambling otherwise prohibited under state law.); *Taxpayers of Michigan Against Casinos v. State of Michigan*, 478 Mich. 99, 732 N.W.2d 487, 492–94 (2007) (rejecting facial and as-applied separation of powers challenge to legislative approval of provision that authorized governor to enter into compact amendments); *Panzer v. Doyle*, 2004 WI 52, 271 Wis. 2d 295, 680 N.W.2d 666, 670 (2004) (abrogated on other grounds by *Dairyland Greyhound Park, Inc. v. Doyle*, 2006 WI 107, 295 Wis. 2d 1, 719 N.W.2d 408 (2006)); *Huron Group, Inc. v. Pataki*, 5 Misc. 3d 648, 785 N.Y.S.2d 827, 852–56 (Sup 2004), judgment aff'd, 23 A.D.3d 1051, 803 N.Y.S.2d 465 (4th Dep't 2005) (Although governor had statutory authority to execute compacts with tribes, an "alternate site" provision was beyond such authorization and thus severed.); *Saratoga County Chamber of Commerce, Inc. v. Pataki*, 100 N.Y.2d 801, 766 N.Y.S.2d 654, 798 N.E.2d 1047, 1059–61 (2003) (finding no authority for governor to enter into compact binding on state); *Narragansett Indian Tribe of Rhode Island v. State*, 667 A.2d 280, 282 (R.I. 1995); *State ex rel. Clark v. Johnson*, 1995-NMSC-048, 120 N.M. 562, 904 P.2d 11, 17 (1995); *State ex rel. Stephan v. Finney*, 251 Kan. 559, 836 P.2d 1169, 1178–84 (1992); *Sears v. Hull*, 192 Ariz. 65, 961 P.2d 1013, 1020 (1998) (citizens lacked standing to challenge governor's authority to enter into compact).

Secretarial approval of the compacts was enough to make the compacts legal, permitting the tribes to continue Class III gaming.  *Id.* at 1548.

The Tenth Circuit held that for a compact to be valid, it must be properly "entered into" under state law and "in effect" through approval by the Secretary.  *Id.* at 1553.  A compact cannot be "in effect" under federal law through secretarial approval if it is not legally "entered into" on behalf of the state.  *Id.* at 1557.

The Tenth Circuit was presented with a decision similar to the one arising here – whether to conduct an independent review of the New Mexico law, giving significant deference to the state court, or find that the New Mexico Supreme Court's decision bound the court on the question of state law.  The court declined to decide which course of action was proper, reasoning that its decision would be the same in either case.  *Id.* at 1558.

Here, much like in *Pueblo of Santa Ana*, Governor Stitt asks this Court to issue an opinion that grants him authority to "enter into" compacts on behalf of the State despite clear statutory barriers to that authority.  However, unlike that case, this Court does not have the benefit of a state court's "thorough and careful analysis of state law" that would either bind or significantly inform the Court's decision.  *Id.* at 1551.

The Legislature's petition in the Oklahoma Supreme Court and the motion before this Court involve identical issues of state law, and federal law would play no role in deciding the extent of the Governor's authority.  Accordingly, this Court should refrain from issuing a judgment on this issue and defer to the Oklahoma Supreme Court to decide important issues of Oklahoma law.

### B.  A Decision in This Court Would Lead to Piecemeal Litigation.

Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.  *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).  Where the issue

in the litigation is not necessarily binding on all affected parties, the prospect of piecemeal litigation is high and cuts in favor of abstention. *United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002) (holding the district court properly exercised its discretion in declining jurisdiction where the claims would be "better settled in a unified proceeding" because the court's decision would not be "binding on parties not joined to the action.")

The issues presented in the Governor's motion and the case pending before the Oklahoma Supreme Court are identical. Importantly, the Oklahoma Legislature, the Otoe, the Comanche, and the United States Government all have substantial interests in the ultimate resolution of the question of the Governor's authority to enter into these compacts. Yet none of these entities is a party to this litigation. Accordingly, there is a high likelihood that a decision on the merits of Governor Stitt's motion would lead to piecemeal litigation concerning the Governor's authority, the legality of the Otoe and Comanche compacts, and the DOI's decision not to disapprove the compacts. Indeed, Governor Stitt's filing of the Motion to Clarify has already led to piecemeal litigation of these issues. This Court's abstention can limit the waste of judicial resources and possible confusion that could arise from conflicting decisions.

Should this Court issue an opinion on the Governor's powers that conflicts with the impending decision of the Oklahoma Supreme Court, it would only serve to confuse and complicate ongoing and future proceedings. This is especially relevant where the parties who are most directly impacted by the Governor's claims are either no longer parties to this litigation or were never a part of this case to begin with. To avoid this piecemeal litigation, the Court should refrain from passing on this issue.

### C. The Supreme Court of Oklahoma Will Properly Adjudicate this Issue and Protect the Rights of the Litigants.

The Oklahoma Supreme Court has jurisdiction to enter declaratory relief "(1) in matters of public interest where there is (2) an element of urgency or pressing need for an early decision." *Fent v. Contingency Rev. Bd.*, 2007 OK 27, ¶ 11, 163 P.3d 512,521 ("Jurisdiction to grant declaratory relief may be assumed (1) in matters of public interest where there is (2) an element of urgency or pressing need for an early decision."). Declaratory relief is proper where there are "intolerable conflicts" that "amount to a gridlock" between "co-ordinate branches of state government." *Ethics Comm'n of State of Okla. v. Cullison*, 1993 OK 37, 850 P.2d 1069, 1074.

As outlined above, the issue of whether a state has properly entered into a Tribal gaming compact is a question that has been extensively litigated in state courts. Further, the Oklahoma Supreme Court has proper jurisdiction over this matter, as it involves a serious dispute between Oklahoma's co-equal branches of government. There is no reason to doubt that the Oklahoma Supreme Court, which is constitutionally tasked with interpreting the nuances of Oklahoma's system of checks and balances, is fully capable of deciding this issue. The Governor has no reason to argue that his interests will not be seriously considered and protected in the Oklahoma Supreme Court. Conversely, the Oklahoma Legislature has a significant interest in quelling the Governor's "unilateral power grab," but it is unable to participate in this litigation. The Oklahoma Supreme Court's expedited review of the Legislature's Action makes clear that it is taking this issue seriously. Accordingly, this issue should be heard solely in the Oklahoma Supreme Court, where both parties' interests and arguments can be fully weighed.

### D.  A. Governor Stitt's Forum Shopping Should Not Be Rewarded

The desire to avoid forum shopping is properly considered in applying the *Colorado River* doctrine and cuts in favor of the district court refraining from exercising jurisdiction. *Fox*, 16 F.3d at 1082.

On May 5, 2020, the Oklahoma Attorney General issued an opinion finding that the Governor did not have authority under Oklahoma law to bind the state to compacts with the Otoe and Comanche.  Following the issuance of that opinion, the Governor could have petitioned the Oklahoma Supreme Court for declaratory relief to determine whether the compacts were proper under Oklahoma law.  *Fent*, 2007 OK 27, ¶ 11, 163 P.3d at 521 ("Jurisdiction to grant declaratory relief may be assumed (1) in matters of public interest where there is (2) an element of urgency or pressing need for an early decision.")  Rather than seek such relief in the court that is traditionally involved in resolving these types of disputes, Governor Stitt filed this Motion asking for an extension of his executive powers through declaratory judgment.  This was presumably an attempt to exclude the Oklahoma Legislature from proceedings that might check his unilateral assertion of authority.

Governor Stitt's Motion to Clarify is not necessary to the ultimate resolution of this case, i.e. whether the compacts automatically renewed on January 1, 2020.  Its only purpose would be to endorse settlements with parties who have already been dismissed from this action.  The Governor hopes to afford himself the benefit of a federal forum to address issues of state law with the sole intent of gaining a strategic advantage and silencing the branches of Oklahoma government entrusted with checks on his power.[3]  This tactic should

---

[3] The Governor also used his Motion to Clarify as a vehicle to place additional exhibits and argument before the Court regarding the renewal issue, taking a "second bite at the apple." In doing so, he brazenly submitted only portions of correspondence he desired the Court to see, and jettisoned attached and corresponding documents to those submissions to avoid the Court seeing the correspondence in their entirety, including in particular, a devastating

not be rewarded by a decision on the merits, especially where a ruling on the Governor's powers will do nothing to resolve the issues in this case.

### E. The Underlying Legal Questions Were First Raised by the Oklahoma Legislature, Which Now Seeks an Answer from the Oklahoma Supreme Court

The order in which the forums obtained jurisdiction is an important consideration in applying the *Colorado River* doctrine. *Fox*, 16 F.3d at 1082. The question is not which proceeding started first, but rather which proceeding has made more progress toward its conclusion. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) ("priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions").

After Governor Stitt and the two (2) tribes executed their compacts and sent them to the DOI for approval, the Oklahoma Legislature certified a question to the Oklahoma Attorney General, asking him to issue an opinion on the legality of the Governor's actions. The Attorney General issued his opinion on May 5, 2020. Governor Stitt filed this motion weeks later on May 28, 2020. The Legislature then initiated its action in the Oklahoma Supreme Court on June 4, 2020. The Oklahoma Supreme Court ordered Governor Stitt to respond to the Legislature's Petition by June 25, and oral arguments are scheduled for July 1, 2020.

While Governor Stitt may have filed the Motion to Clarify before the Legislature initiated its action, the underlying dispute can rightfully be characterized as beginning with the Legislature's request to the Attorney General in late April 2020, a full month before the Governor filed his Motion. Additionally, the Oklahoma Supreme Court's accelerated briefing schedule indicates the Court is intent on resolving this issue in an expeditious

---

compact comparison illustrating the many legal problems with the Otoe and Comanche agreements. Attached hereto as Exhibit 1 is a true and correct copy of the correspondence.

manner.  Indeed, the day after this Court's mediation order expires on June 30, 2020, the Oklahoma Supreme Court will hear oral arguments to decide the case.

Conversely, the Motion before this Court is meant only to clarify a mediation order that will expire in a matter of weeks.  Judicial, Tribal, and State resources should not be wasted on answering a question of Oklahoma law meant only to clarify a mediation order, where there is an important and expedient Oklahoma Supreme Court proceeding ready to resolve this issue.

### F.  Governor Stitt's Motion to Clarify is a Vexatious and Reactive Motion with No True Bearing on the Outcome of this Litigation.

The vexatious or reactive nature of a suit is properly considered in determining whether to abstain from issuing a decision.  *D.A. Osguthorpe Family*, 705 F.3d at 1233.  A vexatious proceeding is defined as one that is "instituted maliciously and without good grounds, meant to create trouble and expense for the party being sued."  VEXATIOUS SUIT, Black's Law Dictionary (11th ed. 2019).

The Governor's Motion to Clarify presents no issues that have any bearing on the ultimate result of this litigation, in which the underlying issue is whether the Tribal Gaming Compacts between the plaintiff tribes and the State automatically renewed on January 1, 2020.  The Governor filed the Motion to Clarify purely as a reaction to the Attorney General's Opinion issued on May 5, 2020, hoping to inject this issue into this lawsuit solely for political grandstanding and strategic advantage in his impending dispute with the Oklahoma Legislature.  This Court will ultimately be able to decide the underlying issue in this case without deciding the outer bounds of the Governor's authority, and the Motion to Clarify serves purely to distract from that decision.  Accordingly, the Court should abstain from deciding the Governor's Motion.

### III.   Governor Stitt Does Not Need to be Granted Authority to "Enter Into" Compacts to Fully Participate in Mediation.

Governor Stitt's Motion presents a false choice for the Court – either grant him the power to enter into compacts with Tribes that exceed his authority under Oklahoma law, or render the Court's mediation order meaningless.  The premise is flatly false and should be rejected.

### A.  The Governor Can Settle These Matters By Following Procedures in Place Under Oklahoma Law.

The Governor can enter into new compacts in two (2) ways: (1) through the Model Gaming Compact or (2) through 74 O.S. § 1221 and after approval by the Joint Committee on State-Tribal Relations ("Joint Committee").

In the context of the current model Compacts, new games can only be approved pursuant to Part 3.5 [e.g., 3A O.S. § 281, Part 3, ¶ 5], and none of the methods of game approval place the authority with the Governor.  In the past, these authorizations have come about through legislation.  For example, in 2018, the Oklahoma Legislature authorized an amendment to the existing compacts under which tribes could choose to offer non-house banked table games utilizing balls and dice.  The amendment took the form of legislation passed by the Oklahoma Legislature and signed by Oklahoma's Governor.  3A O.S. § 280.1.

Prior to the enactment of the STGA, the Oklahoma Legislature set forth a procedure for Oklahoma governors to enter into compacts with Tribes.  Under 74 O.S. § 1221, the Governor is authorized to "negotiate and enter into cooperative agreements on behalf of [Oklahoma] with federally recognized Indian Tribal Governments within [Oklahoma] to address issues of mutual interest. ***Except as otherwise provided by this subsection, such agreements shall become effective upon approval by the Joint Committee on State-Tribal Relations***."  74 O.S. § 1221(C) (emphasis added); *see also Griffith v. Choctaw Casino of Pocola*, 2009 OK 51, ¶ 12, 230 P.3d 488, 492.  Accordingly, there are multiple ways for the

Governor to effect a settlement in this case that would ultimately become valid and enforceable under both state and federal law.

Governor Stitt makes no argument in his Motion to Clarify that he cannot comply with these procedures while participating in good faith in mediation. Indeed, this Court clearly foresaw that possible resolution of this dispute would involve consultation with the parties' respective governments. *See* Doc. 31, at 2 ("the parties retain their respective rights to (a) fully inform and make recommendations to and within their respective governments concerning this matter, inclusive of the mediation, and (b) consult with State and Federal officials for purposes of successful completion of the mediation."). The Governor's unwillingness to follow the proper procedures under Oklahoma law does not render this Court's mediation order meaningless. These procedures merely limit his ability to agree to terms *he wants* without the amendment of the Model Compact or subsequent approval by the Joint Committee on State-Tribal Relations. That the Governor does not *want* to settle these matters in a way consistent with Oklahoma law[4] by consulting with the proper entities within his own government is not a sufficient basis to grant the Governor unilateral authority that clearly conflicts with Oklahoma law.

## IV. The Governor Lacks Authority Under Oklahoma Law

### A. There are Two (2) Permissible Ways for the Governor to Enter Into New Gaming Compacts, and Neither Process Was Followed.

Under Oklahoma's Constitution, the legislative power is vested in the Legislature. Okla. Const. art 4, § 1. The Legislature's legislative authority encompasses "all rightful subjects of legislation."

> The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any

---

[4] The Governor's conduct in this regard is indicative of his conduct concerning Compact renewal and similar issues. He has repeatedly demonstrated comfort in ignoring clear law – or exploring the fringe of what is legal – to get what he wants.

subject whatsoever, shall not work a restriction, limitation, or exclusion of
such authority upon the same or any other subject or subjects whatsoever.

Okla. Const. art 5, § 36; *Oklahoma Educ. Ass'n v. State ex rel. Oklahoma Legislature*, 2007
OK 30, ¶ 20, 158 P.3d 1058, 1065 ("[T]he state's policy-making power is vested exclusively
in the Legislature."); *Tulsa Cty. Deputy Sheriff's Fraternal Order of Police, Lodge No. 188
v. Bd. of Cty. Comm'rs of Tulsa Cty.*, 2000 OK 2, ¶ 8, 995 P.2d 1124, 1128.   Because of
Oklahoma's constitutional separation of powers, the Governor may not exercise legislative
powers to amend statutes or otherwise change state law.

In the context of the current model Compacts, new games can only be approved
pursuant to Part 3.5, and none of the methods of game approval places the authority with
the Governor.  As outlined above, prior authorizations have come about through legislation.

Alternatively, the Governor can enter into new compacts through approval by the
Joint Committee on State-Tribal Relations.  As outlined above, the Oklahoma Legislature
set forth a procedure for Oklahoma governors to enter into compacts with Tribes.   Under
74 O.S. § 1221, the Governor is authorized to "negotiate and enter into cooperative
agreements on behalf of [Oklahoma] with federally recognized Indian Tribal Governments
within [Oklahoma] to address issues of mutual interest.  ***Except as otherwise provided by
this subsection, such agreements shall become effective upon approval by the Joint
Committee on State-Tribal Relations.***"   74 O.S. § 1221(C).   This process was used
extensively before the enactment of the STGA, and continues to be a viable option should
it be necessary.

Notably, where the Governor cites 74 O.S. § 1221 in his Motion to Clarify to support
his purported authority to enter into the Otoe and Comanche compacts, he conveniently
omits the second sentence, which makes clear the necessity of approval by the Joint
Committee on State-Tribal relations.  Motion to Clarify at pp. 9-10.

The Governor could have negotiated the Otoe and Comanche agreements pursuant to either method in place for establishing new compacts.  He did neither and now asks this Court to retroactively endorse his actions by impermissibly expanding his authority under Oklahoma law.  The Court should deny this request.

**B.  The Governor's Reliance on a 2004 Attorney General Opinion is Misplaced.**

In his Motion, the Governor relies heavily on Oklahoma Attorney General Opinion 2004-27 to argue that legislative approval of agreements negotiated with Indian Tribes would violate the separation of powers provision of the Oklahoma Constitution.  2004 OK AG 27; Motion to Clarify at p. 10.  The Governor's reliance on this Opinion is misplaced. While the Opinion does state that approval from the *entire* Legislature could violate separation of powers, it does not find that approval by the Joint Committee would do so. Indeed, the Attorney General did not address or attempt to answer that question.

Footnote 3 to Oklahoma Attorney General Opinion 2004-27 states that, "Of course, any agreement negotiated by the Governor must conform to the public policy enacted into law by the Legislature, as the role of the Legislative Branch is to establish public policy, and the role of the Executive Branch is to execute that policy."  Thus, to the extent Oklahoma Attorney General Opinion 2004-27 bears on the issues raised by the Governor's Motion to Clarify, it provides him no support.  Further, any perceived conflict between two (2) Oklahoma Attorney General Opinions should be resolved in the Oklahoma Supreme Court, which is the judicial body most experienced in parsing unique issues of Oklahoma law and allocating authority between the Executive and Legislative branches.

**C.  The Governor's Obligation to Negotiate All Forms of Class III Gaming Does Not Alter His Ability to "Enter Into" Compacts under Oklahoma Law.**

Much of Governor Stitt's Motion relies on the argument that because he must negotiate to permit games not currently permitted under Oklahoma law, he must then have

the ability to enter into such compacts under IGRA.  Motion to Clarify at 20-25.  This is flatly incorrect.  While the Wichita Tribe agrees with the Governor's endorsement of the categorical approach to 25 U.S.C. § 2710(d)(1)(B), nothing within that section nor the categorical approach grants the Governor additional powers to *enter into* agreements with Tribes outside those prescribed by Oklahoma law.

The categorical approach is concerned primarily with the subject matter of the negotiations, specifically the scope of games on which the state is required to negotiate. *Mashantucket Pequot Tribe v. State of Conn.*, 913 F.2d 1024, 1031 (2d Cir. 1990).  However, once the negotiations have concluded, the State must validly "enter into" the compact under State law.  *Pueblo of Santa*, 104 F.3d at 1557.  Whether the state has validly entered into a compact is not addressed in IGRA, and is a question reserved for state law. *Id.* ("State law must determine whether a state has validly bound itself to a compact.").  Indeed, "IGRA says nothing specific about how [a court] determine[s] whether a state and tribe have entered into a valid compact." *Id.*

Accordingly, regardless of the Governor's interpretation of his obligations under IGRA, federal law is inapplicable to decide whether the Governor can properly give effect to those negotiations.  A ruling that the Governor's obligations to negotiate over certain games usurps the State's ability to set parameters on the manner in which it enters into gaming compacts would directly conflict with well-established Tenth Circuit law.

## CONCLUSION

The Court should abstain from issuing an opinion deciding state law issues raised in Governor Stitt's Motions (Docs. 131 and 132) and permit the Oklahoma Supreme Court to answer this question of first impression.  Questions of the Governor's authority to bind the State to compacts with the Otoe and Comanche are properly determined under state law,

and Oklahoma's highest court should be given an opportunity to decide an issue that affects the State's constitutional balance of power between the Executive and Legislative branches.

In the alternative, the Court should deny the Governor's Motions (Docs. 131 and 132) because the Governor does not have the authority to unilaterally enter into gaming compacts on behalf of the state, and he does not need to be granted such authority to effectively settle the ultimate dispute in this case.

Respectfully submitted,

June 11, 2020                    HOBBS, STRAUS, DEAN & WALKER, LLP

By:  */s/ Michael D. McMahan*
        William R. Norman, OBA No. 14919
           *wnorman@hobbsstraus.com*
        Kirke Kickingbird, OBA No. 5003
           *kkickingbird@hobbsstraus.com*
        Michael D. McMahan, OBA No. 17317
           *mmcmahan@hobbsstraus.com*
        W. Gregory Guedel, OBA No. 33317
           *gguedel@hobbsstraus.com*
        Zachary T. Stuart, OBA No. 32517
           *zstuart@hobbsstraus.com*

        101 Park Avenue, Suite 700
        Oklahoma City, Oklahoma 73102
        (405) 602-9425 telephone
        (405) 602-9426 facsimile

        ATTORNEYS FOR INTERVENOR-PLAINTIFF
        WICHITA AND AFFILIATED TRIBES

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2020, a true and correct copy of the above and foregoing with exhibits (if applicable) was served on the following via the Court's ECF system:

| **Attorneys for Plaintiffs** | **Attorneys for Defendant** |
|---|---|
| Douglas Endreson | Daniel Webber, Jr. |
| dendreson@sonosky.com | dwebber@ryanwhaley.com |
| | |
| Robert Henry | Jeffrey Cartmell |
| rh@rhhenrylaw.com | jeffrey.cartmell@gov.ok.gov |
| | |
| Sara Hill | Mark Burget |
| sara-hill@cherokee.org | mark.burget@gov.ok.gov |
| | |
| Frank Holleman | Matthew Felty |
| fholleman@sonosky.com | mkfelty@lytlesoule.com |
| | |
| Stephen Greetham | Matthew Kane |
| stephen.greetham@chickasaw.net | mkane@ryanwhaley.com |
| | |
| Bradley Mallett | Patrick Pearce, Jr. |
| bmallett@choctawnation.org | rpearce@ryanwhaley.com |
| | |
| | Phillip Whaley |
| | Pwhaley@ryanwhaley.com |
| | |
| | Steven Mullins |
| | mullins@lytlesoule.com |

| **Attorneys for Intervenor-Plaintiffs** | |
|---|---|
| George Wright | Roger Wiley |
| george.wright@potawatomi.org | rwiley@mcnag.com |
| | |
| Gregory Quinlan | Leslie Taylor |
| gquinlan@potawatomi.org | leslietaylorlaw@gmail.com |
| | |
| Charles Birnie | Robert Rosette |
| abirnie@cwlaw.com | rosette@rosettelaw.com |
| | |
| Robert Carter | Jason Aamodt |
| dcarter@cwlaw.com | jason@iaelaw.com |

Stephen Ward
sward@cwlaw.com

Matthew Alison
matthew@iaelaw.com

Stuart Campbell
scampbell@dsda.com

Dallas Dale Strimple
dallas@aamodt.biz

Brett Stavin
bstavin@rosettelaw.com

Kyle Haskins
khaskins@mcnag.com

Kaylee Davis-Maddy
kmaddy@dsda.com

*/s/ Michael D. McMahan*
Michael D. McMahan