### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEROKEE NATION,<br>THE CHICKASAW NATION, and<br>THE CHOCTAW NATION,<br><br>    Plaintiffs,<br><br>and<br><br>THE CITIZEN POTAWATOMI NATION,<br>THE MUSCOGEE (CREEK) NATION,<br>THE QUAPAW NATION,<br>THE DELAWARE NATION,<br>THE SEMINOLE NATION,<br>THE WICHITA AND AFFILIATED TRIBES,<br><br>    Plaintiffs/Intervenors,<br><br>vs.<br><br>J. KEVIN STITT, in his official capacity as<br>the Governor of the State of Oklahoma,<br><br>    Defendant. | Case No. CIV-19-1198-D |

## **O R D E R**

Before the Court are the following motions filed pursuant to Fed. R. Civ. P. 56 and LCvR56.1:

- Plaintiffs' and Plaintiffs-in-Intervention's Motion for Partial Summary Judgment [Doc. No. 125], filed by The Cherokee Nation, The Chickasaw Nation, The Choctaw Nation, The Citizen Potawatomi Nation, The Muscogee (Creek) Nation, The Quapaw Nation, The Delaware Nation, and The Seminole Nation;

- Defendant's Motion for Partial Summary Judgment [Doc. No. 126]; and

- Plaintiff-Intervenor Wichita and Affiliated Tribes' Amended Motion for Partial Summary Judgment [Doc. No. 128].

Each movant seeks a determination in its favor as a matter of law on the issue of whether the State-Tribal Gaming Compacts between the Native American tribes and the State of Oklahoma automatically renewed or expired on January 1, 2020. The Compacts are identical in all material respects because they were made using the Model Tribal Gaming Compact provided by statute, Okla. Stat. tit. 3A, § 281, as discussed *infra*. Each movant asks the Court to grant the request for declaratory relief stated in its pleading.[1] The Motions are fully briefed as directed by the Order of April 23, 2020 [Doc. No. 122].[2] Thus, the parties' competing claims are ripe for decision.

## Standard of Decision

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is

---

[1] *See* Pls.' Compl. [Doc. No. 1]; Intervenors' Compls. [Doc. Nos. 29, 30, 62, 68, 74 & 103]; Def.'s Countercls. [Doc. Nos. 15, 87, 88, 98, 105, 107, 109].

[2] The Court directed Plaintiffs and Intervenors to work together in filing a joint motion and limited them to two motions collectively, but authorized the parties to file oversized briefs. No reply brief was permitted. Accordingly, the following briefs have been considered: Plaintiffs' and Plaintiffs-in Intervention's Supporting Brief [Doc. No. 125-1] and Response Brief [Doc. No. 140]; Defendant's Supporting Brief [Doc. No. 126] and Response Briefs [Doc. Nos. 141 & 142]; Wichita & Affiliated Tribes' Supporting Brief [Doc. No. 128] and Response Brief [Doc. No. 145]. The Court acknowledges, and appreciates, the hard work of highly skilled counsel on both sides of the dispute reflected in the outstanding briefs submitted to advance their competing positions.

genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id*.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine dispute. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c)(1)-(2). "Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

The inquiry is whether there is a need for a trial – "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 251. "The interpretation of an unambiguous contract is a question of law to be determined by the court, and may be decided on summary judgment." *Pub. Serv. Co. of Okla. v. Burlington N. R. Co.*, 53 F.3d 1090, 1096 (10th Cir. 1995) (citations omitted).

### Statement of Undisputed Facts

All Plaintiffs and Intervenors are federally recognized Indian tribes, and will be referred to collectively as the "Tribes." Defendant is sued in his official capacity as Governor of the State of Oklahoma and, for purposes of this case, represents the State.

The Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-21, governs gaming activities on Indian lands.³ The case concerns "Class III gaming" as defined by IGRA, *id*. § 2703(8), which includes casino-style electronic games and horserace betting. For an Indian tribe to lawfully conduct Class III gaming, IGRA requires three conditions to be met: 1) the gaming activities must be authorized by a tribal ordinance that satisfies § 2710(b) and has been approved by the National Indian Gaming Commission, *see* § 2710(d)(1)(A); 2) the gaming activities must be "located in a State that permits such gaming for any purpose by any person, organization, or entity," *see* § 2710(d)(1)(B); and 3) the gaming activities must be "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State under [§ 2710(d)(3)], that is in effect," *see* § 2710(d)(1)(C). IGRA also requires that a compact must be submitted to the Secretary of the Interior for review and provides for a compact to become effective when notice of its approval by the Secretary (or deemed approval, if the Secretary did not act within 45 days) is published in the Federal Register. *See id*. § 2710(d)(3)(B), (d)(8)(D). Once a tribal-state gaming compact is in effect, IGRA provides that "[C]lass III gaming activity on the Indian lands of [the compacting] Indian tribe shall be fully subject to the terms and conditions of the Tribal-State compact." *Id*. § 2710(d)(2)(C).

In 2004, the Oklahoma Legislature enacted, and Oklahoma voters approved, the State-Tribal Gaming Act ("STGA"), Okla. Stat. tit. 3A, §§ 261-82. STGA authorizes "organization licensees" – that is, persons who conduct horse racing – to conduct electronic

---

³ "Indian lands" include lands within a reservation, trust lands, and restricted lands. *See id*. § 2703(4).

gaming under licenses issued by the Oklahoma Horse Racing Commission ("OHRC"). *Id*. § 262; *see id*. § 205.1. OHRC is a state agency created by the Oklahoma Horse Racing Act, Okla. Stat. tit. 3A, §§ 200-31, to supervise horse racing, racetrack personnel, and organization licensees. *See id*. §§ 201, 204. STGA expanded the OHRC's regulatory authority to include authorized gaming by organization licensees, if at least four Indian tribes entered into state-tribal gaming compacts as provided by STGA and IGRA. *See id*. § 262(A), (C), (F).

In Section 280 of STGA, the State extends an offer to all federally recognized Indian tribes that have Indian lands within Oklahoma, to make a gaming compact for purposes of IGRA in the form of a model compact. The offer is accepted by an authorized signature of the tribe, and the compact becomes effective upon approval and publication as required by IGRA and payment of a start-up assessment fee. *See id*. §§ 280 and 281, pt. 15(A), pt. 16. Except for a supplement authorized later (*id*. § 280.1), the provisions of the model tribal gaming compact are set out in Section 281. Each of the Tribes in this case made a gaming compact with the State as provided by STGA, and each compact (the "Compacts") took effect as provided by IGRA in 2005 or 2006.

After more than four of the Compacts had become effective, OHRC promulgated rules and regulations to license organization licensees, or horse racetracks, to conduct authorized gaming under STGA. Beginning in August 2005, OHRC has annually issued licenses to horse racetracks to conduct the same electronic gaming that the Tribes conduct under their Compacts. As recently as October 2019, OHRC approved gaming licenses for Remington Park and Will Rogers Downs for calendar year 2020.

The Compacts remain in effect until they expire or are terminated by mutual consent of the parties. Part 15(B) provides regarding expiration or renewal as follows:

> This Compact shall have a term which will expire on January 1, 2020, and at that time, if organization licensees or others are authorized to conduct electronic gaming in any form other than pari-mutuel wagering on live horse racing pursuant to any governmental action of the state or court order following the effective date of this Compact, the Compact shall automatically renew for successive additional fifteen-year terms; provided that, within one hundred eighty (180) days of the expiration of this Compact or any renewal thereof, either the tribe or the state, acting through its Governor, may request to renegotiate the terms of subsections A and E of Part 11 of this Compact.

The Tribes' and the State's competing claims for declaratory relief require the Court to decide which side correctly reads and applies Part 15(B) under these facts. Did the Compacts expire January 1, 2020, or automatically renew for another 15-year term?

### Discussion

Both sides agree on one thing: Part 15(B) of the Compacts is unambiguous and its meaning and application can be decided as a matter of law. The Tenth Circuit has previously determined the governing legal principles, which this Court is bound to follow:

> A [Tribal-State gaming] compact is a form of contract. It is a creation of IGRA, which determines a gaming compact's effectiveness and permissible scope. For that reason, a gaming compact is similar to a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law. Accordingly, in interpreting the Compact, . . . we look to the federal common law.
>
> Under federal contract principles, if the terms of a contract are not ambiguous, this court determines the parties' intent from the language of the agreement itself. Further, this court will construe the Compact to give meaning to every word or phrase.

*Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226, 1238-39 (10th Cir.), *cert. denied*, 139 S. Ct. 375 (2018) (internal quotations, citations, and footnotes omitted).

The Court agrees with the parties that Part 15(B) is not ambiguous and its effect must be determined from the language of the Compacts. Part 15(B) plainly states the term of the Compacts: they "expire[d] on January 1, 2020." But that is not the end of the analysis. The remaining, critical question is whether the Compacts automatically renewed on that same date because the conditions of the renewal provision were met: Were "organization licensees or others . . . authorized to conduct electronic gaming in any form other than pari-mutuel wagering on live horse racing pursuant to any governmental action of the state . . . following the effective date of this Compact"? It is undisputed that organization licensees (horse racetracks) have been authorized, and are currently authorized, to conduct electronic gaming as well as betting on live horse racing. The disputed issue is whether this authorization was "pursuant to any governmental action of the [S]tate" taken after the effective dates of the Compacts.[4]

The Tribes contend the answer is plainly "yes" because OHRC acted following the effective date of the Compacts to promulgate rules and regulations implementing STGA and to license horse racetracks to conduct electronic gaming as authorized by STGA and its implementing rules.[5] The State contends OHRC did not authorize horse racetracks to

---

[4] The State asserts that an additional condition of renewal is stated in the "proviso" of Part 15(B) and renewal may be affected by a party's exercise of its right to seek renegotiation of certain provisions in Part 11 (regarding exclusivity fees and revenue sharing). In the State's view, a timely request for renegotiation triggers an opposing party's obligation to engage in negotiations as a condition precedent to renewal. The Court finds this argument is untethered to the language of the Compacts and unsupported by the facts. The conditions for automatic renewal are separate from any request to renegotiate Part 11. Further, Defendant requested renegotiation of the entire Compacts (not only Part 11) and, thus, did not effectively invoke the proviso of Part 15(B).

[5] The Tribes also make other arguments that need not be reached to answer the question presented.

conduct electronic gaming by issuing licenses to them.  Under the State's view, SGTA authorized electronic gaming at horse racetracks before the Compacts took effect; OHRC has merely fulfilled mandatory administrative requirements since that time; and no new governmental action of the State has occurred.  The State equates "governmental" action and "legislative" action, and asserts that "[a] state agency, like OHRC, has limited scope and cannot bind the State and its legislature to indefinite renewals of the Compact."  *See* Def.'s Resp. Br. [Doc. No. 141] at 13; *see also* Def.'s Mot. at 30-31, 33-34, 37; Def.'s Resp. Br. [Doc. No. 142] at 25-28.  The State summarizes its argument regarding OHRC's actions in its last brief as follows:

> Because "authorizing" electronic gaming by organization licensees is a legislative function, only a legislative enactment is a governmental action of the State that could trigger the automatic renewal provision in Section 15(B).  Conversely stated, subsequent administrative acts, such as the issuance of licenses or promulgation of rules related to the same, necessary to carry out the provisions of the STGA, **do not** "authorize" electronic gaming.

Def.'s Resp. Br. [Doc. No. 142] at 28 (emphasis in original); *see also* Def.'s Mot. at 27.

The Court is not persuaded by this argument and rejects the State's narrow view of "governmental action," which is inconsistent with a common understanding of that term. It is well settled that federal common law incorporates general contract principles, including the "primary rule of interpretation that the common or normal meaning of language will be given to words of a contract unless circumstances show that in a particular case a special meaning should be attached to it."  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (internal quotation omitted); *see Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 829-30 (10th Cir. 2008).  The State strains in its arguments to attach special meanings

to the verb "authorize" (distinguishing it from "license") and the adjective "governmental" (replacing it with "legislative"). It does so by reference to state laws and federal case authorities, rather than the ordinary meanings of the words used in the Compacts. The Court finds that these technical definitions are not required by the Compacts and their use would be inconsistent with federal contract principles.

There is no question STGA delegated to OHRC, an executive agency, the power to implement its provisions and to authorize organizational licensees (horse racetracks) to conduct electronic gaming if they meet statutory and regulatory requirements. There is also no question that OHRC took these governmental actions following the effective dates of the Compacts. Indeed, OHRC issued such licenses to two horse racetracks in October 2019 for the year 2020. No more was required for the Compacts to automatically renew on January 1, 2020, for a successive 15-year term.[6]

## Conclusion

For these reasons, the Court finds that Plaintiffs' and Intervenors' Compacts with the State of Oklahoma automatically renewed for an additional 15-year term on January 1, 2020, by operation of the unambiguous terms of Part 15(B).

---

[6] The State's argument that the language has unintended consequences (resulting in perpetual renewal) is not persuasive. Like the initial term of the Compacts, the only sensible reading of Part 15(B) is that the renewal term has the same durational limit and conditions for renewal. The inference in the State's argument – that the conditions for automatic renewal cannot be avoided – is inaccurate.

IT IS THEREFORE ORDERED that Plaintiffs' and Plaintiffs-Intervenors' Motions for Partial Summary Judgment [Doc. Nos. 125 and 128] are GRANTED and Defendant's Motion for Partial Summary Judgment [Doc. No. 126] is DENIED.

IT IS FURTHER ORDERED that the parties shall inform the Court by filing written notices not later than August 7, 2020, regarding what issues remain for decision, if any, under the existing pleadings.

IT IS SO ORDERED this 28th day of July, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge