# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

THE CHEROKEE NATION,       )
THE CHICKASAW NATION, and   )
THE CHOCTAW NATION,      )
                   )
     Plaintiffs,         )
                   )
THE CITIZEN POTAWATOMI NATION, )
THE MUSCOGEE (CREEK) NATION,  )   No. CIV-19-1198-D
THE QUAPAW NATION,       )
THE DELAWARE NATION,     )
THE SEMINOLE NATION, and    )
THE WICHITA AND AFFILIATED TRIBES, )
                   )
     Plaintiffs-in-Intervention,   )
                   )
v.                   )
                   )
J. KEVIN STITT, in his official capacity as )
the Governor of the State of Oklahoma, )
                   )
     Defendant/Counterclaimant.  )

**PLAINTIFFS CHEROKEE NATION, CHICKASAW NATION, AND CHOCTAW NATION AND PLAINTIFFS-IN-INTERVENTION CITIZEN POTAWATOMI NATION, DELAWARE NATION, MUSCOGEE (CREEK) NATION, QUAPAW NATION, AND WICHITA AND AFFILIATED TRIBES' MOTION FOR FINAL JUDGMENT ON RENEWAL CLAIMS AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION .......................................................................................... 1

BACKGROUND ............................................................................................ 2

ARGUMENT ................................................................................................. 3

I.      The Partial Summary Judgment Order Resolved All Claims That the Compacts Renewed or Terminated and That the Nations Have a Federal-Law Right to Conduct Class III Gaming Under the Compacts. ........................................................................................ 3

II.     The Court Should Certify that the Renewal Claims Were Disposed of by a Final Judgment. ................................................................... 8

        A.     The Court's Partial Summary Judgment Order Was Final. ........................ 10

        B.     There is No Just Reason for Delay. ............................................ 14

CONCLUSION ............................................................................................ 16

164260-2

# TABLE OF AUTHORITIES

**Cases**

*Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226 (10th Cir. 2018) ........................................................................................ 4

*Continental Materials Corp. v. Valco, Inc.*, 740 F. App'x 893 (10th Cir. 2018) ................................................................................. 8, 9

*Curtiss-Wright Corp. v. GE Co.*, 446 U.S. 1 (1980) ................................. 9, 10, 11, 12, 14

*Gas–A–Car, Inc. v. Am. Petrofina, Inc.*, 484 F.2d 1102 (10th Cir. 1973) ........................................................................................ 15

*Jordan v. Pugh*, 425 F.3d 820 (10th Cir. 2005) ................................. 9

*New Mexico v. Trujillo*, 813 F.3d 1308 (10th Cir. 2016) ..................... 8, 9

*Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236 (10th Cir. 2001) ............... 9, 11, 14

*Stockman's Water Co. v. Vaca Partners, L.P.,* 425 F.3d 1263 (10th Cir. 2005) ..................................................................... 9

**Statutes**

25 U.S.C. § 2710(d)(2)(C) ......................................................... 4

Okla. Stat. tit. 3A, § 281 ......................................................... 11

**Rules**

Fed. R. Civ. P. 54(b) ............................................................. 1

Fed. R. Civ. P. 54(d)(2)(B)(i) ................................................... 7

LCvR 54.1 ......................................................................... 7

LCvR 54.2 ......................................................................... 7

**Other Authorities**

Charles A. Wright et al., Federal Practice and Procedure: Civil 2d (2d ed. 1982) ................................................................... 14

Hicham Raache, *Gov. Stitt Files Response in Court to Tribal Gaming Compacts Lawsuit*, Okla.'s News 4 (Jan. 22, 2020 8:32 PM), https://kfor.com/news/gov-stitt-files-response-in-court-to-tribal-gaming-compacts-lawsuit/ ........................... 16

164260-2

Jenelle Stecklein, *State Businesses in Limbo with Tribes' Gaming Compact Impasse*, Enid News & Eagle (Dec. 26, 2019), https://www.enidnews.com/news/state/state-businesses-in-limbo-with-tribes-gaming-compact-impasse/article_b79fc87a-f11c-5504-be97-34f451c6def7.html ........................... 16

Tres Savage, *Dueling Pressers: Stitt, Tribes Talk Gaming Negotiations*, NonDoc (Nov. 14, 2019), https://nondoc.com/2019/11/14/stitt-tribes-talk-gaming-negotiations/ ................................................. 16

*Tribal Leaders File Federal Lawsuit to End Uncertainty by Tribal Gaming Compact*, Okla.'s News 4 (Dec. 31, 2019 3:30 PM) https://kfor.com/news/tribal-leaders-file-federal-lawsuit-to-end-uncertainty-about-tribal-gaming-compact/ .................................................... 15

Sean Murphy, *3 Tribes in Oklahoma Sue Governor Over Casino Gambling*, ABC News (Dec. 31, 2019, 4:54 PM), https://abcnews.go.com/Business/wireStory/tribes-oklahoma-sue-governor-casino-gambling-68008517 ............................................. 15

Storme Jones, *Stitt: Gambling "Illegal" if Gaming Compact Agreement Not Made*, News9 (Dec. 17, 2019 8:15 PM), https://www.news9.com/story/5e346b57527dcf49dad6cba3/stitt:-gambling-illegal-if-gaming-compact-agreement-not-made ...................................................................................................... 15

164260-2

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 54(b), the Plaintiffs Cherokee Nation, Chickasaw Nation, and Choctaw Nation, and Plaintiffs-in-Intervention Citizen Potawatomi Nation, Delaware Nation, Muscogee (Creek) Nation, Quapaw Nation, and Wichita and Affiliated Tribes (collectively, "Nations"), hereby respectfully request that this Court certify that its Partial Summary Judgment Order of July 28, 2020, ECF No. 149, is a final judgment on all claims related to renewal of the Nations' Compacts, and all claims and counterclaims made by and against Plaintiffs and Plaintiffs-in-Intervention, except for Counts XIII and XIV brought by the Wichita and Affiliated Tribes ("Wichita Tribe") in its First Amended Complaint, *see* ECF No. 103 at 53-56, ¶¶ 201-210, Defendant's claim and related prayer for relief that the Wichita Tribe "fail[ed] to remit all substantial exclusivity fees owed to the State pursuant to Part 11.A. of the Wichita Gaming Compact," *see* ECF No. 109 at 54, ¶ 54; *id.* at 57, ¶ 70, and Defendant's and Wichita Tribe's requests for attorney's fees and costs, *see, e.g.*, *id.* at 58, ¶ 76; ECF No. 103 at 58, ¶ 3.  The Nations also respectfully request that this Court determine that there is no just reason for delay in entering final judgment with respect to all claims finally resolved by the Order of July 28, 2020, ECF No. 149.

Counsel for the Nations have discussed this filing with counsel for Defendant. Counsel for Defendant has represented that Defendant does not oppose Rule 54(b) certification consistent with his Notice of August 7, 2020, ECF No. 151.  Defendant will clarify his position on the relief requested here and the scope of certification in a subsequent filing.

164260-2

For the reasons described below, the Court should grant the Nations' requested relief.

## BACKGROUND

On April 23, 2020, the Court issued an order directing the parties to

> simultaneously file cross-motions for partial summary judgment on the issue of whether the Tribal Gaming Compact entered between each Plaintiff or Intervenor and the State of Oklahoma automatically renewed or terminated pursuant to Part 15.B. The parties shall include in their respective motions any and all grounds related to the renewal/termination issue on which they seek a declaratory judgment in their favor.

ECF No. 122 at 2. Thereafter, the parties filed their motions and briefs, ECF Nos. 125, 125-1, 126, 128, and response briefs, ECF Nos. 140, 141, 142, 145, 146. On July 28, 2020, the Court issued its Partial Summary Judgment Order, ECF No. 149, finding that the "Plaintiffs' and Intervenors' Compacts with the State of Oklahoma automatically renewed for an additional 15-year term on January 1, 2020, by operation of the unambiguous terms of Part 15(B)," *id.* at 9. In that Order, the Court also directed the parties to "inform the Court by filing written notices not later than August 7, 2020, regarding what issues remain for decision, if any, under the existing pleadings." *Id.* at 10.

As the Parties' filings in response to that Order show, all of the Nations' claims regarding Compact renewal and their right to conduct Class III gaming under the Compacts, including the Defendant's counterclaims relating to these issues, were fully resolved by the Court's Partial Summary Judgment Order. We refer to these fully resolved claims as the "Renewal Claims."

The Parties' filings also reflect agreement that certain claims asserted only by the Wichita Tribe (Counts XIII and XIV of the Wichita Tribe's Amended Complaint) and responsive counterclaims asserted by the Defendant only against the Wichita Tribe were not resolved by the Partial Summary Judgment Order.  We refer to these remaining issues as the "Exclusivity Claims."

## ARGUMENT

**I.     The Partial Summary Judgment Order Resolved All Claims That the Compacts Renewed or Terminated and That the Nations Have a Federal-Law Right to Conduct Class III Gaming Under the Compacts.**

On August 7, the Nations and the Defendant filed notices "regarding what issues remain[ed] for decision, if any, under the existing pleadings."  *Id*.; *see* ECF Nos. 150, 151, 152 ("August 7 Notices").  The Parties' filings indicate agreement that the Renewal Claims had, or likely had, been resolved.  Specifically, the Nations said the Court's Partial Summary Judgment Order "resolved all of the [Nations'] claims concerning the renewal or termination of the Compacts."  ECF No. 150 at 2.[1]  Defendant agreed the Nations' claims that the Compacts renewed were resolved, ECF No. 151, at 1-2, and said the Nations' claims that they have a federal right to conduct Class III gaming and that Defendant's actions contrary to the Nations' rights were void may have been "resolved by implication in the Order," *id.* at 2-3.  As the pleadings show, all these claims were necessarily resolved by the Court's Partial Summary Judgment Order, which resolved all issues and claims in

---

[1] The Wichita Tribe joined in the Notice filed by the other Plaintiffs and Intervenors and also filed a separate Notice, reiterating its belief that the Court's resolution of the Compact renewal issue was final and should be certified under Rule 54(b) and describing its remaining claims.  ECF No. 152.

the case relating to the <u>renewal</u> of the Compacts, including, necessarily, those premised on the Defendant's contention that the Compacts had not renewed.

In the Complaint that initiated this case, the Plaintiffs sought "a declaratory judgment of the legal effect of the 'shall automatically renew' clause of Part 15.B. of a Tribal-State gaming compact . . . that the State of Oklahoma . . . offered to federally recognized Indian Tribes in 2004." ECF No. 1 at 1 ¶ 1. Plaintiffs emphasized that "the single question on which this complaint seeks declaratory relief is whether the Compact 'shall automatically renew' on January 1, 2020 under Part 15.B.," *id.* at 2 ¶ 3, and only requested that the Court issue a declaratory judgment that: Plaintiffs possess a federal-law right to game under their renewed Compacts; the Compacts "shall automatically renew" on January 1, 2020 if the conditions for renewal were met; the conditions for renewal were actually met; the Compacts would renew on January 1, 2020 for another fifteen-year term; and Defendant had no right to interfere with the Plaintiffs' conduct of gaming under those Compacts, *id.* at 21. Because the Indian Gaming Regulatory Act ("IGRA") establishes that tribes have a federal-law right to engage in gaming pursuant to tribal-state compacts that comport with IGRA, 25 U.S.C. § 2710(d)(2)(C); *Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226, 1239 n.17 (10th Cir. 2018), if the Compacts renewed, it would entirely resolve the Plaintiffs' claims and determine whether they were entitled to the requested relief.

The same is true for the other Nations' complaints-in-intervention raising the renewal issue. When each Plaintiff-in-Intervention that remains in the case intervened, it asserted that the Compacts had renewed and sought the same declaratory relief as the

4

Plaintiffs.  *See* ECF No. 29 at 14-18 (Citizen Potawatomi Nation making renewal claim and seeking declaratory judgment); ECF No. 30 at 1, ¶ 1 (Muscogee (Creek) Nation adopting the averments and authorities of Plaintiffs' complaint); *id.* at 4-5 (making renewal claim and seeking declaratory judgment); ECF No. 62 at 2, ¶ 1 (Quapaw Nation adopting the averments and authorities of Plaintiffs' complaint); *id.* at 6-8 (making renewal claim and seeking declaratory judgment); ECF No. 68 at 1-2, ¶ 1 (Delaware Nation adopting the averments and authorities of Plaintiffs' complaint); *id.* at 5-8 (making renewal claim and seeking declaratory judgment); ECF No. 74 at 1-2 (Seminole Nation adopting the averments and authorities of Plaintiffs' complaint); *id.* at 4-6 (making renewal claim and seeking declaratory judgment); ECF No. 103 at 15-53, ¶¶ 52-200 (Wichita Tribe's allegations of renewal); *id.* at 56-58, ¶¶ 1(a)-(b), 2 (seeking declaratory relief on renewal and joining other Plaintiffs and Plaintiffs-in-Intervention's prayers for declaratory relief). As with the Plaintiffs' claims and relief sought, these claims and prayers for relief would be entirely resolved by a ruling that the Compacts had renewed.

In the August 7 Notices, the Parties also agreed that Defendant's counterclaims relating to renewal, including those premised on Defendant's claim that the Compacts had not renewed, had been resolved.  *See* ECF No. 150 at 2; ECF No. 151 at 4 (stating Defendant "requested relief in [his] counterclaims similar to that requested by the various tribes" and "[t]hese claims for relief are resolved in the order"); ECF No. 152 at 1.  The pleadings confirm that is so.  Defendant's Answer, filed after the renewal date, asserted counterclaims against the Plaintiffs alleging that their Compacts had not renewed on January 1, 2020, and that the Plaintiffs' conduct of Class III gaming in the absence of valid

5

gaming Compacts violated federal and state law and Oklahoma's sovereignty.  ECF No. 15 at 37-39, ¶¶ 64-73.  Defendant  sought relief on those claims in the form of a judicial declaration that the Compacts did not automatically renew and that the Plaintiffs' conduct of gaming is illegal, an injunction prohibiting the Nations from conducting Class III electronic gaming until they had effective Class III compact, and a constructive trust on their Class III gaming revenue "to prevent the Tribes from being unjustly enriched in the absence of an effective gaming compact by and between the Tribes and Oklahoma." *Id.* at 39, ¶¶ 74-77.  As with Plaintiff's claims, these counterclaims were all resolved, and the relief they sought is necessarily foreclosed, by the Court's determination that the Compacts had renewed – since that determination establishes that the Nations have a federal-law right to conduct gaming pursuant to their renewed Compacts and to obtain revenue from that gaming.

Defendant's answers to each complaint-in-intervention raised the same counterclaims and asked for the same relief as he had against Plaintiffs.  ECF No. 87 at 31-33, ¶¶ 60-73 (counterclaims against Citizen Potawatomi Nation); ECF No. 88 at 22-25, ¶¶ 55-68 (counterclaims against Muscogee (Creek) Nation); ECF No. 98 at 24-27, ¶¶ 62-75 (counterclaims against Quapaw Nation); ECF No. 105 at 25-27, ¶¶ 59-72 (counterclaims against Delaware Nation); ECF No. 107 at 23-26, ¶¶ 62-75 (counterclaims against Seminole Nation); ECF No. 109 at 55-57, ¶¶ 60-69, 71-74 (counterclaims against Wichita Tribe).[2]  As with his claims against the Plaintiffs, these claims were entirely resolved by

---

[2] Defendant also sought disgorgement of the Wichita Tribe's revenue earned from Class III gaming after January 1, 2020, ECF No. 109 at 57, ¶ 75, which request apparently derived

the Court's determination that the Compacts renewed.  The Order established that all the Plaintiffs-in-Intervention have valid Compacts; they are, therefore, legally conducting gaming pursuant to those Compacts and have a right to keep the revenues earned from such gaming.

Thus, the Renewal Claims have been fully resolved by the Partial Summary Judgment Order, leaving only the Wichita Tribe's Exclusivity Claims (and related counterclaims by Defendant against the Wichita Tribe) remaining.

As Defendant and the Wichita Tribe indicate in their Notices, *see* ECF No. 151 at 3-4; ECF No. 152 at 2-3, the only remaining issues in the case are claims asserted by the Wichita Tribe in its First Amended Complaint, and a responsive allegation and related prayer for relief by Defendant in his Answer and Counterclaims to that First Amended Complaint – claims that deal with the question of <u>exclusivity</u> to conduct gaming under the Compacts, including the payment due for that <u>exclusivity</u>, not the <u>renewal</u> of those Compacts.[3]  In Count XIII of its First Amended Complaint, the Wichita Tribe alleged that the State violated the exclusivity provisions of Part 11.A. of the Compact and that, as a result, the Wichita Tribe is relieved from the obligation to pay exclusivity fees under Part

---

from his allegation that the Compacts expired on January 1, 2020 and tribal Class III revenue earned after that date was earned illegally.  The Court's determination that the Compacts renewed resolved Defendant's disgorgement claim.

[3] Defendant and the Wichita Tribe also asked for attorney's fees and costs. *See, e.g.*, ECF No. 15 at 39, ¶ 78; ECF No. 103 at 58, ¶ 3.  Parties may seek fees and costs by motion up to 14 days after entry of final judgment.  Fed. R. Civ. P. 54(d)(2)(B)(i); LCvR 54.1, 54.2. Thus, the pendency of the claims for fees and costs does not prevent the Court from certifying a final judgment.

164260-2

11.A and the State owes the Wichita Tribe liquidated damages under Part 11.E. of the Compact.  ECF No. 103 at 53-55, ¶¶ 201-205.  In Count XIV, the Wichita Tribe alleged the Defendant failed to satisfy the State's obligation under the Compact, and his own obligation under the Oklahoma Constitution, to defend the validity of the Compact.  *Id.* at 55-56, ¶¶ 206-210, and sought a declaratory judgment to that effect, *id.* at 57, ¶ 1(c)-(e).  In his counterclaim against the Wichita Tribe, Defendant alleged the Wichita Tribe had not remitted all substantial exclusivity fees to the State owed before January 1, 2020, ECF No. 109 at 54, ¶ 54, and sought a declaration that the Wichita Tribe had thereby breached Part 11.A. of the Compact, *id.* at 57, ¶ 70.  As described below, these claims are separate from the renewal claims; accordingly, the Court should certify that the renewal claims have been disposed of by a final judgment.

## II.    The Court Should Certify that the Renewal Claims Were Disposed of by a Final Judgment.

Under Federal Rule of Civil Procedure 54(b), "[w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim— or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  To certify an order as final, a court must "make two explicit determinations."  *New Mexico v. Trujillo*, 813 F.3d 1308, 1316 (10th Cir. 2016); *see also Continental Materials Corp. v. Valco, Inc.*, 740 F. App'x 893, 896 (10th Cir. 2018).

164260-2

First, the court must determine that the judgment is final.  "To be final for purposes of Rule 54(b), an order must be 'final in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action.'"  *Jordan v. Pugh*, 425 F.3d 820, 826 (10th Cir. 2005) (quoting *Curtiss-Wright Corp. v. GE Co.*, 446 U.S. 1, 7 (1980) (internal quotation marks omitted)).  "[A] judgment is not final for the purposes of Rule 54(b) unless the claims resolved are distinct and separable from the claims left unresolved."  *Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236, 1243 (10th Cir. 2001).  Second, the court must determine "there is no just reason for delay of entry of its judgment."  *Trujillo*, 813 F.3d at 1316; *accord Valco*, 740 F. App'x at 896.  "In making these determinations, the district court should act as a 'dispatcher' weighing Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal."  *Stockman's Water Co. v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005) (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8).  "Factors the district court should consider are 'whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [are] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.'"  *Id.* (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8) (alterations in original).

The Court should certify the Partial Summary Judgment Order as a final judgment because the order meets both elements of this test.  The Order was final as to the Renewal Claims because it found that the Compacts renewed, ultimately disposing of all claims based on the renewal or alleged termination of the Compacts.  Also, there is no just reason

9

for delay.  The balancing of factors in the application of this test shows that the Renewal Claims decided by the Partial Summary Judgment Order are entirely separable from the remaining Exclusivity Claims, and if this Court's certification led to separate appeals, the appellate court would not have to decide the same issues to dispose of the appeals.

**A.    The Court's Partial Summary Judgment Order Was Final.**

A judgment is "final" when it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."  *Curtiss-Wright Corp.*, 446 U.S. at 7. When the Court decided that the Compacts renewed under the terms of Part 15.B., it ultimately disposed of the Nations' claims that the Compacts renewed, that the Nations have a right to conduct Class III gaming under their Compacts, that those rights are protected by IGRA from interference caused by Defendant's claims that their gaming is not legal, and that the Nations are entitled to a declaration to that effect.  *See, e.g.*, ECF No. 1 at 19-20, ¶¶ 67-79; *id.* at 21, ¶ 1.  It also disposed of all Defendant's counterclaims that the Nations are violating federal and state law because their Compacts did not renew and that they are allegedly conducting gaming that is not authorized by a compact, *see, e.g.*, ECF No. 15 at 36-39, ¶¶ 55-72, and his requests for declarations to that effect, *see, e.g.*, *id.* at 39, ¶¶ 74-75.  The Court's Order also mooted Defendant's counterclaims and claims for relief that would prevent the Nations from conducting gaming or collecting revenue from it, as those contentions were all grounded in Defendant's claim that the compacts had not renewed.  *See, e.g.*, *id.* at 38-39, ¶¶ 72-73, 76-77.  Therefore, the Court's order resolved all elements of the case that were legally dependent on the issue of renewal under Part 15.B.

of the Compacts for their vitality.  *See Bruner*, 259 F.3d at 1242 ("[A] 'claim' is generally understood to include all factually or legally connected elements of a case.").

The Exclusivity Claims do not affect the finality of the Renewal Claims, which were resolved by the Partial Summary Judgment Order.  The Partial Summary Judgment Order resolved the fundamental question of whether or not the Compacts still exist.  In contrast, the Wichita Tribe's claims against the Defendant, and the Defendant's counterclaims against the Wichita Tribe, are primarily concerned with the exclusivity provisions of the Wichita Tribe's Compact and the obligations arising therefrom – they are therefore distinct legal claims, which are not asserted by or against the other Nations as part of this litigation.[4]

In its Count XIII and related prayers for relief, the Wichita Tribe alleged that the State violated the exclusivity provisions of Part 11.A. of the Compact, *see* Okla. Stat. tit. 3A, § 281, and sought related declaratory relief regarding its obligation to pay fees to the State under Part 11.E. of the Compact.  ECF No. 103 at 53-55, ¶¶ 201-205; *id.* at 57, ¶ 1(d)-(e).  In contrast, the Renewal Claims are governed by Part 15.B. of the Compact, the terms of which require a different inquiry to determine whether that Part of the Compact has been triggered.  *See Curtiss-Wright Corp.*, 446 U.S. at 8 (court should consider whether

---

[4] The Wichita Tribe's claim in Count XIV that Defendant failed to defend the validity of the Compact as required under Part 13.B., *see* ECF No. 103 at 55-56, ¶¶ 206-210; *id.* at 57, ¶ 1(c), does not relate to exclusivity.  But, like the Exclusivity Claims, it also has nothing to do with renewal under Part 15.B, because it has no relationship to the question of whether the State authorized gaming to be conducted on January 1, 2020 by a governmental action following the effective date of the Compact.

adjudicated claims are separable from those remaining in case and certification would require appellate court "to decide the same issues more than once").

Part 15.B. provides that the Compact term renews on January 1, 2020 if the following condition is met: "at that time, . . . organization licensees or others are authorized to conduct electronic gaming in any form other than pari-mutuel wagering on live horse racing pursuant to any governmental action of the state or court order following the effective date of this Compact." In contrast, Part 11.A. addresses the substantial exclusivity fees that, if the Compact is in effect, the signatory tribe is required to pay:

> so long as the state does not change its laws after the effective date of this Compact to permit the operation of any additional form of gaming [other than covered games] by any such organization licensee, or change its laws to permit any additional electronic or machine gaming within Oklahoma.

In sum, Part 15.B. is triggered when the State takes a "governmental action" to authorize electronic gaming in any form other than pari-mutuel horse track wagering, while Part 11.A. is operative only if the Compact is in effect and is triggered if the State "change[s] its laws" to permit organization licensees to conduct games other than "covered games" as that term is defined in the Compact, *see* Compact Part 3.5., or "any additional electronic or machine gaming within Oklahoma," *id.* Part 11.A.

As the Court determined in its Partial Summary Judgment Order, "governmental action" under Part 15.B. does not only mean state legislative action. ECF No. 149 at 8-9. The Court further held that the State took such "governmental action" by issuing licenses allowing organization licensees to conduct gaming that was already authorized by the State-Tribal Gaming Act, not by passing legislation. *Id.* at 9. That governmental action

did not change the State's laws, and thus plainly would not trigger Part 11.A.  Thus, the legal question of whether the State has taken an action triggering Part 15.B., which has already been resolved, is distinct from the question of whether the State has taken an action triggering Part 11.A.[5]

Under Part 11.E., which is also the subject of the Wichita Tribe's Count XIII, the State must pay liquidated damages to the signatory tribe if, "during the term of this Compact," the State "permit[s] the nontribal operation of any machines or devices to play covered games or electronic or mechanical gaming devices otherwise presently prohibited by law within the state in excess of the number and outside of the designated locations authorized by the State-Tribal Gaming Act."  Thus, Part 11.E. requires that the Compact be in effect, and is triggered if the State "permit[s] the nontribal operation" of certain gaming by any nontribal entity that is "otherwise presently prohibited by law" in a number and at locations not authorized by the State-Tribal Gaming Act.  In contrast, the Court determined that renewal under Part 15.B. occurs if the State authorizes the conduct of gaming that is presently expressly authorized by the State-Tribal Gaming Act.  ECF No. 149 at 9.  These are distinct legal questions.

In sum, the Renewal Claims under Part 15.B. are fundamentally different from the Exclusivity Claims under Parts 11.A. and E.  The Renewal Claims asserted by all Plaintiffs

---

[5] Defendant's counterclaims against the Wichita Tribe relating to payment of exclusivity fees before January 1, 2020, see ECF No. 109 at 54, ¶ 54, and his related prayer for relief, id. at 57, ¶ 70, are, as with the other Exclusivity Claims, distinct from the Renewal Claims resolved by the Partial Summary Judgment Order.

164260-2

allege that the Compacts renewed.  The Exclusivity Claims asserted by the Wichita Tribe allege the State has violated its exclusivity obligations under a live and operational Compact.  Resolving the questions of whether Parts 11.A. or 11.E. have been triggered also involves distinctly different inquiries, for distinctly different purposes, than those already decided under Part 15.B.

Therefore, the Exclusivity Claims remaining in the case are not "so intertwined" and do not "have so much factual overlap[] as to be inseparable" from the Renewal Claims. *Bruner*, 259 F.3d at 1243.  The former are instead so factually and legally distinct from the latter that the pendency of the Exclusivity Claims does not affect the finality of the Court's decision on the Renewal Claims.  Certification is justified under the first factor because the Renewal Claims are "distinct and separable from the claims left unresolved," *id*.

## B.    There is No Just Reason for Delay.

"Once having found finality, the district court must go on to determine whether there is any just reason for delay. . . .  It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Curtiss-Wright Corp.*, 446 U.S. at 8.  "The purpose of Rule 54(b) 'is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available.'" *Bruner*, 259 F.3d at 1241 (quoting 10 Charles A. Wright et al., *Federal Practice and Procedure: Civil 2d* § 2654 at 33 (2d ed. 1982)).  More specifically, district courts enter Rule 54(b) orders "to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships." *Id.* at 1242 (quoting

14

*Gas–A–Car, Inc. v. Am. Petrofina, Inc.*, 484 F.2d 1102, 1105 (10th Cir. 1973)) (internal quotation mark omitted).

In this case, delaying certification would result in undue hardship and inequity. First, delay would sideline all but one of the Nations while claims they have not sought to adjudicate – namely, the Exclusivity Claims – are litigated. Second, certifying the Court's Partial Summary Judgment Order regarding the Renewal Claims as a final judgment now would benefit both the Nations and the Defendant. Doing so would promote stability in Oklahoma tribal gaming – from which the State receives revenue sharing payments -- and hasten the ultimate resolution of that question in the event of an appeal. That benefits not only the Nations, but also the State and the people of Oklahoma.

Finally, the Nations brought this suit in part to resolve the cloud of uncertainty arising from the Defendant's claims regarding Compact renewal and the lawfulness of Class III Indian gaming.[6] Indeed, Defendant premised his demand that a new compact be

---

[6] *See* Storme Jones, *Stitt: Gambling "Illegal" if Gaming Compact Agreement Not Made*, News9 (Dec. 17, 2019 8:15 PM), https://www.news9.com/story/5e346b57527dcf49dad6cba3/stitt:-gambling-illegal-if-gaming-compact-agreement-not-made ("Governor Kevin Stitt said class three gaming, like slot machines, blackjack, craps and roulette, will become illegal January 1 if tribes don't agree to a compact extension."); Sean Murphy, *3 Tribes in Oklahoma Sue Governor Over Casino Gambling*, ABC News (Dec. 31, 2019, 4:54 PM), https://abcnews.go.com/Business/wireStory/tribes-oklahoma-sue-governor-casino-gambling-68008517 ("Oklahoma's new Republican Gov. Kevin Stitt contends the gaming compacts expire on Jan. 1 and that casino gambling after that date will be illegal."); *Tribal Leaders File Federal Lawsuit to End Uncertainty by Tribal Gaming Compact*, Okla.'s News 4 (Dec. 31, 2019 3:30 PM) https://kfor.com/news/tribal-leaders-file-federal-lawsuit-to-end-uncertainty-about-tribal-gaming-compact/ ("On Tuesday, officials announced that the Cherokee, Chickasaw, and Choctaw Nations filed a federal lawsuit 'to bring an end to the uncertainty Oklahoma Governor J. Kevin Stitt has attempted to cast over Tribal gaming operations.'").

negotiated on supposed uncertainty and illegality that would result if such negotiations did not begin and conclude by January 1, 2020.[7]   Defendant's actions caused sufficient uncertainty among the Nations' lenders, vendors, and patrons to prompt this litigation.[8] The Court's Partial Summary Judgment Order resolved these issues and should be certified as a final order so that these issues are put to rest.

## CONCLUSION

For the foregoing reasons, the Nations respectfully request the Court certify its Partial Summary Judgment Order as a final judgment on all claims in the case, except for: the Wichita Tribe's Counts XIII and XIV, ECF No. 103 at 53-56, ¶¶ 201-210, and associated prayers for relief; Defendant's allegation and prayer for relief in Paragraphs 54 and 70 of his Counterclaims to the Wichita Tribe's First Amended Complaint, ECF No. 109 at 54, 57; and Defendant's and Wichita Tribe's requests for attorney's fees and costs, *see, e.g.*, ECF No. 109 at 58, ¶ 76; ECF No. 103 at 58, ¶ 3.

Respectfully submitted,

---

[7] *See* Hicham Raache, *Gov. Stitt Files Response in Court to Tribal Gaming Compacts Lawsuit*, Okla.'s News 4 (Jan. 22, 2020 8:32 PM), https://kfor.com/news/gov-stitt-files-response-in-court-to-tribal-gaming-compacts-lawsuit/ ("'We do not want gaming to be illegal, and we do not want vendors to be operating illegally,' Stitt said last month."); Tres Savage, *Dueling Pressers: Stitt, Tribes Talk Gaming Negotiations*, NonDoc (Nov. 14, 2019), https://nondoc.com/2019/11/14/stitt-tribes-talk-gaming-negotiations/ ("'This compact was signed 15 years ago, and the fact is it expires on Jan. 1, 2020,' Stitt said. 'This is going to cause extreme uncertainty if we don't have a new compact by 2020.'").

[8] *See* Jenelle Stecklein, *State Businesses in Limbo with Tribes' Gaming Compact Impasse*, Enid News & Eagle (Dec. 26, 2019), https://www.enidnews.com/news/state-businesses-in-limbo-with-tribes-gaming-compact-impasse/article_b79fc87a-f11c-5504-be97-34f451c6def7.html.

164260-2

Dated: August 28, 2020       By:  */s/ Robert H. Henry*
                                              Robert H. Henry, OBA No. 4111
                                              512 N. Broadway, Suite 230
                                              Oklahoma City, OK 73102

Robert H. Henry, OBA No. 4111
512 N. Broadway, Suite 230
Oklahoma City, OK 73102
Lead Counsel for the Cherokee,
   Chickasaw and Choctaw Nations
Phone no.: 405-516-7824
Fax no.: 405-516-7859
E-mail:  rh@rhhenrylaw.com

Frank S. Holleman, *pro hac vice*
Douglas B. L. Endreson
Sonosky, Chambers, Sachse,
   Endreson & Perry, LLP
1425 K Street, NW, Suite 600
Washington DC 20005
Counsel for the Cherokee, Chickasaw
   and Choctaw Nations
Phone no.: 202-682-0240
Fax no.: 202-682-0249
E-mail:  fholleman@sonosky.com
          dendreson@sonosky.com

Sara Hill, OBA No. 20072
P.O. Box 1533
Tahlequah, OK 74465
Counsel for Cherokee Nation
Phone no.: 918-207-3836
Fax no.: 918-458-6142
E-mail:  sara-hill@cherokee.org

Stephen Greetham, OBA No. 21510
4001 N. Lincoln Blvd
Oklahoma City, OK 73105
Counsel for Chickasaw Nation
Phone no. 580-272-5236
E-mail:  stephen.greetham@chickasaw.net

*Additional Counsel on Following Page*

17

164260-2

Bradley Mallett, OBA No. 15810
P.O. Box 1210
Durant, OK 74702
Counsel for Choctaw Nation
Phone no.: 580-380-3024
E-mail:  bmallett@choctawnation.com

Gregory M. Quinlan, NM Bar # 4450
                              Colo. Bar # 21605
George J Wright, OBA # 21873
1601 S Cooper Dr
Shawnee, OK 74801
Counsel for Citizen Potawatomi Nation
Phone no. 405-275-3121
Email:   george.wright@potawatomi.org

Leslie D. Taylor, OBA No. 19469
P.O. Box 2206
Ada, OK 74821
Counsel for Delaware Nation
Phone no.: 580-279-0068
Fax no.: 580-279-0070
E-mail:  leslietaylorlaw@gmail.com

Roger F Wiley, OBA No. 11568
Kyle B. Haskins, OBA No. 12694
PO Box 580
Okmulgee, OK 74447
Counsel for Muscogee (Creek) Nation
Phone no.: 918-295-9720
Fax no.: 918-756-2445
Email:   rwiley@mcnag.com
              khaskins@mcnag.com

*Additional Counsel on Following Page*

18

Stephen R. Ward, OBA No. 13610
R. Daniel Carter, OBA No. 30514
C. Austin Birnie, OBA No. 31942
Conner & Winters, LLP
4000 One Williams Center
Tulsa, OK 74172-0148
Counsel for Quapaw Nation
Phone no.: 918-586-8605
Fax no.: 918-586-8605
E-mail:  sward@cwlaw.com
         dcarter@cwlaw.com
         abirnie@cwlaw.com

William R. Norman, OBA No. 14919
Kirke Kickingbird, OBA No. 5003
Michael D. McMahan, OBA No. 17317
W. Gregory Guedel, OBA No. 33317
Zachary T. Stuart, OBA No. 32517
101 Park Avenue Suite 700
Oklahoma City, OK 73102
Counsel for Wichita & Affiliated Tribes
Phone no.: 405-602-9425
Fax no.: 405-602-9426
Email:  wnorman@hobbsstraus.com
        kkickingbird@hobbsstraus.com
        mmcmahan@hobbsstraus.com
        gguedel@hobbsstraus.com
        zstuart@hobbsstraus.com

164260-2

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2020, I electronically filed the above and foregoing document with the Clerk of Court via the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the parties registered to receive such notice.

*/s/ Frank S. Holleman*
Frank S. Holleman

164260-2